

Ryan Dolan<br>
rdolan@gerardfoxlaw.com<br>
September 12, 2022

<u>*VIA CM/ECF*</u>
Hon. Magistrate Sarah Netburn
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

  Re: *Norris v. Goldner et al.*  Civil Action No. 1:19-CV-05491 - PAE

Dear Hon. Judge Netburn,

  I am writing to you pursuant to your September 8, 2022 Order requesting Defendants to file a letter detailing the specific counterclaims Defendants intend to file, as well as the additional discovery that is anticipated with respect to those counterclaims.

### *Breach of Contract*

  After reviewing the discovery, speaking with the Defendants, and conducting a deposition of Plaintiff, it is clear that Plaintiff breached several material provisions of the Collaboration Agreement executed by the parties on August 10, 2017.

  The first is Plaintiff's failure to provide final game files to Defendants. Section 3(B) of the collaboration agreement clearly states "It is contemplated that the WORKS will be completed by the ARTIST. Each of the WORKS will have a set timeline attached to it such as ie. "Webcomic Name Game" to be completed by February 17, 2018." Not only has Plaintiff failed to complete the game by the required deadline of over four years ago, he has yet to deliver even final game files. Of the files of playing cards Plaintiff has provided, such files are not final in that they are not properly colored or lined, and not sufficient for production of a game. Further, the playing card files only consist of art for the front of the card, and no art for the back of the card was ever provided. Further, Plaintiff only provided 353 of the approximate 500 cards needed for the game. Norris, after delivering the 353 cards, even states in an October 1, 2018 email to Defendants "[n]ot all of the print-ready files have been delivered yet (most of them have been, except the 45 new cards to make up the punchline cards to 150)."

  In addition to the incomplete playing cards provided by Plaintiff, numerous other files were never provided at all, including a rule book, art for the game tokens, and art for the side and back of the box. While Plaintiff did provide art for the front of the box, it was similarly provided in a



file that was not final, in that it still had to be properly lined and colored, and was not a format that was print ready. Ultimately, Norris failed to deliver the necessary files to complete the game, resulting in a clear breach of his duties under the contract.

Another material portion of the Agreement which Plaintiff failed to abide by is Section 3(D), which granted Defendants an option to publish Plaintiff's next "book-length" work. Despite this clear provision of the contract, Plaintiff entered into a publishing agreement with Andrews McMeel Publishing two months **after** entering into the Agreement with Defendants. As Plaintiff admitted in his deposition, at no point did he reach out to defendants to offer them the opportunity to publish the book offered to Andrews McMeel, despite the provision of the Agreement requiring him to do so. Andrews McMeel published "Oh No," a compilation of Webcomic Name comics on April 2, 2019. Not only was the publication of this book a violation of Section 3(D), it violated Sections 1(C) and 3(C), which contemplate subsequent works using the characters who were set to appear in the game and the stuffed animals. Upon information and belief, all five of the characters/sayings from the stuffed animals, as well as nearly all of the characters appearing in the incomplete files for the game, appear in the "Oh No" book.

In October of 2018, Plaintiff finally reached out to Defendants to offer them an option on a book titled "Animals," which Plaintiff wished to self-publish, but recognized the option contained in the Agreement. After being informed by Defendants that they would be exercising said option, Plaintiff refused to provide the files for the book. As Plaintiff admitted in his deposition, he never had any intention of providing Defendants the files or allowing them to publish the book.

Further, Section 2(D) of the Agreement states "COMPANY and ARTIST shall share access to all Social Media accounts with administrative privileges…." Throughout the entirety of the Agreement, Plaintiff has refused to provide **any** access to any social media accounts, in direct violation of this Section. Such a breach is material, as it severely limits Defendants' ability to directly advertise the game and the stuffed animals to the most effective audience, fans of Plaintiff's Webcomic Name comics.

Additionally, Section 4(E) makes clear that Plaintiff is not to "make any statements, written or verbal, or cause or encourage others to make any statements, written or verbal, that defame, disparage, or in any way criticize the personal or business reputation, practices or conduct of COMPANY…." Despite this clause, Plaintiff has made such remarks through social media. Additionally, upon information and belief, Norris has made similar remarks privately. Norris' comments are not only in direct violation of Section 4(E) of the Agreement, they have caused irreparable harm to Defendants' reputation throughout the webcomic community.

### *Tortious Interference with Prospective Economic Advantage*

In addition to Plaintiff's disparaging comments being in direct violation of the Agreement, they also interfered with business operations of Defendants. Upon information and belief, Plaintiff,



along with Jason Wiseman, made disparaging comments to an individual who goes by the name EnzoComics, another figure in the webcomic community. Alongside Wiseman, Defendants were developing a game based on EnzoComics comic "Dungeon Construction," and were on the verge of signing EnzoComics to a similar collaboration agreement to the one executed with Plaintiff. Upon information and belief, based on Plaintiff's disparaging social media comments and direct communications with EnzoComics, EnzoComics informed Golden Bell he was no longer interested in developing the game, and refused to sign the agreement.

However, EnzoComics wasn't the only third part to whom Plaintiff made disparaging remarks. Upon information and belief, Plaintiff's continually made such remarks to Jason Wiseman also. In fact, the same day that Plaintiff posted the disparaging social media posts, Wiseman emailed Defendants just hours later, informing Defendants that he was terminating their agreements. Upon information and belief, Wiseman's decisions was directly influenced by Plaintiff's disparaging remarks.

### *Copyright Infringement*

Section 1(A) of the Agreement notes that "ARTIST shall retain 0% of the copyright, 0% of the trademark, 0% of the patent and 5% of the net sales of WORKS for the first 18 months then it will revert to 4% of the net sales of the WORKS thereafter, and COMPANY shall retain 100% of the copyright, 100% of the trademark, 100% of the patent, and 95% of the net sales of WORKS for the first 18 months then it will revert to 96% of the net sales of the WORKS thereafter. ARTIST assigns to COMPANY their initial rights of the WORKS as stated above in this section 1A upon the signing of this AGREEMENT."

As previously mentioned, the Agreement also contemplated any subsequent works performed by Plaintiff which would include characters featured in the game or stuffed animals. Specifically, the agreement explicitly states in Section 3(C) "ARTIST shall submit to COMPANY all sequels to the WORKS or other works using characters that appear in the WORKS and any other unrelated characters. COMPANY will take due diligence to copyright all said works with the same percentages and profit splits as discussed above for future works relating to the WORKS above."

As the agreement makes clear, 100% of the copyright is maintained by Defendants. 3(C) also requires Plaintiff to provide any work which contains the same characters as the game or stuffed animals to Defendants, and will be done under the same percentage split, i.e. Defendants will retain 100% of the copyright of the subsequent works as well.

Despite this portion of the agreement, Plaintiff has and continues to publish material containing the copyrighted characters, both by virtue of webcomics, and his April 2, 2019 book titled "Oh No." Each instance in which Plaintiff publishes a new work containing characters set to appear in the stuffed animals or the game constitutes blatant copyright infringement.

1880 Century Park East | Suite 1410 | Los Angeles, CA 90067 | 310-441-0500 | www.gerardfoxlaw.com



*Anticipated Discovery*

      With respect to the anticipated discovery for the above stated causes of action, Defendants believe that limited RFP's, Special Interrogatories, and two to three third-party depositions or subpoenas are appropriate and sufficient to allow Defendants' to prove their causes of action. It should be noted that Defendants' previously served RFP's on Plaintiff that would have been sufficient, however Plaintiff chose to ignore those requests, failing to provide any response at all.

      Best Regards,

      /s/ Ryan Dolan
GERARD FOX LAW P.C.

1880 Century Park East | Suite 1410 | Los Angeles, CA 90067 | 310-441-0500 | www.gerardfoxlaw.com