UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALEXANDER NORRIS d/b/a WEBCOMIC NAME<br><br>Plaintiff,<br><br>v.<br><br>Marc Goldner, individually and as officer of GOLDEN BELL ENTERTAINMENT LLC and GOLDEN BELL STUDIOS, LLC and GOLDEN BELL ENTERTAINMENT, LLC and GOLDEN BELL STUDIOS, LLC<br><br>Defendants. | No.<br><br>ECF Case<br><br>DECLARATION OF ALEXANDER NORRIS |

I, ALEXANDER NORRIS, declare as follows:

1. I am the plaintiff in the above captioned action and as such, I am fully familiar with the facts and circumstances set forth below and submit this Declaration in support of my Complaint against defendants.

2. I am, and at all times hereinafter mentioned was, a resident of the United Kingdom.

3. I am a visual artist and a comics illustrator and have authored short stories, webcomics, comic books and strips. Initially I was known as the creator of *Dorris McComics*, a pseudonym under which I share entertaining and funny comics through social media.

4. I am also known as the mind behind the viral webcomic "Webcomic Name" which has captured the heart of over half a million social media followers with its main character, the disappointed "Blob" and its resigned "Oh No" phrase which has become a

recognizable mark, tapping into the current internet zeitgeist of self-conscious pessimism to hilarious and heartbreaking effect.

5. In 2015, I introduced my "Oh No" character through a series of comic strips and ever since I have popularized and commercialized it, including through my "Oh No" web store. **Ex. 1**.

6. In 2016, I launched my *Webcomic Name* comic strip, which rapidly became popular and as a result, it has been featured in various internet websites such as *Comics Blog*, *Bored Panda*, *GoComics, It's Nice That* and *The Nib*. *Webcomic Name* started as a weekly comic strip, which soon became the brand under which I popularized my visual and literary works and workshops.  **Ex. 2**.

7. Also in 2016, I acquired the domain name webcomicname.com to promote my works and related workshops. Ever since I have been promoting my works under "*Webcomic Name*." In 2018, I copyrighted some of my Webcomic Name comic strips and illustrations under registration No. VAu 1-337-956 **Ex. 3**.

8. In early 2017, my colleague Jason Wiseman ("Wiseman"), a well-known card and table game creator, and I agreed to join forces to create a table card game (the "Game") based on the illustrations and characters of my webcomic, "*Webcomic Name*". Since the Game would incorporate the style, concept and characters of "Webcomic Name" we used Webcomic Name Game as a placeholder reference.

9. Wiseman and I planned to jointly publish the Game via Kickstarter and commercialize it through Wiseman's distribution channels including until Wiseman informed me that he was considering defendants to publish and distribute the Game.

2

10. Wiseman and I agreed that defendants would publish and distribute the Game through their larger distribution network because it would lead to sales of at least 25,000 units per year and we did not have to deal with the logistics related to marketing, distribution and shipping costs.

11. Upon information and belief on February 11, 2017, Wiseman signed an agreement with defendant Golden Bell Entertainment, LLC ("GB Entertainment") pursuant to which Golden Bell agreed to purchase four table card games from Wiseman, three of which were either in their conceptual or in development phase. Having collaborated before and shared mutual respect and friendship, Wiseman recruited me to develop the game we had envisioned and deliver it to GB Entertainment and the company would, in turn, take care of all of the publishing, printing and commercializing needs. Wiseman and I would have the freedom to create the Game and receive the benefit of a small advance and future royalties from GB Entertainment with a $500,000 cap in revenue.

12. In the summer of 2017, I commenced my work on a book project conformed by a well curated selection of my most popular *Webcomic Name* comics. In the summer of 2017, my editor and I negotiated a publishing agreement with Andrews McMeel Publishing, LLC, a division of Andrews McMeel Universal, a Kansas based renowned publisher of comic strips and producer of book collections including *Calvin and Hobbes*, *Peanuts*, the *Far Side* and other significantly popular comics ("McMeel"). Following the negotiations, I signed a publishing agreement with McMeel, and my book, entitled "Oh No" was published on April 2, 2019.

13. On June 26, 2017 defendant Marc Goldner approached me insisting that I sign a separate Collaboration Agreement with GB Entertainment to formally engage my services to illustrate the Game with Wiseman. Goldner explained he wanted to make and sell plush toys of

3

the main character in the Game and wanted permission from me to do so. Goldner referred to the plush dolls as *the "Webcomic Name Stuffed Animals"*.

14. On July 3, 2017 Marc Goldner sent me the proposed Collaboration Agreement. After reviewing it, I informed Goldner that I did not want the Agreement to jeopardize in any way my existing negotiations with McMeel for the publication of my upcoming comics compilation book. Further, I unequivocally explained Goldner that the Game "will heavily feature elements that are part of Webcomic Name already," and that consequently, I needed "to make it clear that in no way does Golden Bell take ownership of any of the characters, images or story content except in its application in a tabletop game." **Ex. 4.**

15. In response to my July 3, 3017 inquiry, Marc Goldner sent me an email on July 11, 2017, assuring me that I was "in the free to and clear to work on your property outside of the context of our contract" and explained that the contract is specifically for the Game and stuffed animal. To further address my concern, Goldner included the following language in the Collaboration Agreement, "Artist has the right to pursue his Comic "Webcomic Name" outside of the context of this agreement". **Id.**

16. Relying on Goldner assurances that I was "free and clear" to exploit my property outside the context of the Collaboration Agreement, which was limited to the game and the stuffed animals, I executed the Collaboration Agreement in good faith on August 10, 2017. See **Ex. 5.**

17. Based on my email exchanges with Goldner, his assurances, my specific requests and review of the Collaboration Agreement, my understanding is that I was merely contracting with GB Entertainment to develop the Game with Wiseman and authorizing GB Entertainment to commercially exploit the Game and make one plush toy for promotional purposes in

4

connection to the Game. It was clear to me that I was retaining all my intellectual property rights to pursue my "Webcomic Name" webcomics outside of the context of the Collaboration Agreement which was limited to the Game.

18. I began to work on the illustrations for the Game after I signed the Collaboration Agreement. I had never used my trademarks "Webcomic Name" and "Oh No" in connection to table-top games or plush toys.

19. Goldner made multiple and oftentimes unreasonable requests and changes to the Game. I did my best to accommodate each and every demand. On October 2, 2018, I provided Goldner with the final files of the Game, which included 400 panels. See **Ex. 6**.

20. Even though I completed the work required from me in connection to the Game and GB Entertainment received all 400 illustration panels on or about October 2, 2018, I was never paid for my work and have not received any advances or free copies. I charge between $500.00 to $1,000.00 for a single illustration.

21. In exchange for the right to use my illustrations in connection to the Game and plush toy, GB Entertainment agreed to advance $3,125.00 within 30 days of delivery of the final Game files and another advance of $2,500.00 upon delivery of the final print-ready files, the PSD files, the AI files and the InDesign files as well as royalties and 725 copies of the Game. I have not received any benefit from the Collaboration Agreement.

22. Unbeknownst to me on November 30, 2017, GB Entertainment applied for the registration of the trademark "Webcomic Name" in international class 028 for Board games; Card games; Game cards; Party games; Plush dolls; Plush toys; Stuffed dolls and animals; Stuffed toy animals; Tabletop games; Soft sculpture plush toys; Stuffed and plush toys. See **Ex. 7**.

5

23. In support of its application, Goldner falsely stated that GB Entertainment is the owner of the trademark sought to be registered. Marc Goldner made this statement knowing that I never intended to assign or in fact assigned "Webcomic Name" to Golden Bell. Id and **Ex. 7-B**.

24. Based on Goldner multiple fraudulent statements, the USPTO issued a registration for *Webcomic Name* on December 11, 2018, Reg. No. 5629281 in favor of GB Entertainment. **Ex. 8**.

25. On October 9, 2018 Defendants also filed application Serial. No. 88147369 for the mark "Webcomic Name" for Comic books; Comic strips; Comic strips' comic features; Comics; Newspaper comic strips in class 016 and T-shirts in class 025, claiming first use as of July 26, 2017, and has filed as specimen of Golden Bell's use screenshots of my Facebook page and my Patreon account. See **Ex. 9**. This application is currently pending.

26. On November 8, 2018 unbeknownst to me, GB Entertainment filed yet another trademark application, this time for "OH NO" (Application Serial No. 88/975,215), which is the punchline that the "Blob" character on "Webcomic Name" delivers at the end of each joke and the name of my e-commerce website http:// theohnoshop.com.

27. In the "OH NO" application, Goldner fraudulently claims that Golden Bell has been using the mark "OH NO" since July 26, 2016 in connection to "Bookmarkers; Bookmarks; Comic books; Comic magazines; Comic strips; Comic strips' comic features; Comics; Stickers; Newspaper comic strips, T-shirts; Graphic T-shirts; Short-sleeved or long-sleeved t-shirts. Plush toys; Stuffed toy animals; Stuffed and plush toys; Toy stuffed animals."  Golden Bell offers screen shots of my Facebook page and my website as purported specimens of use. See **Ex. 10**. The application is currently pending.

6

28.     In November 2018, I learned for the first time that GB Entertainment had pursued these applications without my knowledge and consent. Thereafter, I proceeded to apply for the registration of "Webcomic Name" before the USPTO for the services of "providing online non-downloadable webcomics and comic strips, books, reviews, periodicals and magazines in international class 041 and for comic books; comic strips and comic strip's comic features, appearing in print media, namely, comic books, books, newspapers, magazines" in international class 016, Application Serial No. 88/216,127. **Ex. 11.**

29.     The USPTO has refused registration my application because of the likelihood of confusion with Golden Bell's fraudulent application. The office action is currently pending. **Ex. 12**.

30.     On March 25, 2019, I commenced a cancellation proceeding before the Trademark Trial and Appeal Board, which Golden Bell moved to dismiss. See **Exs. 13 and 14**.

31.     GB Entertainment not only sought fraudulent registration of my marks, but also copied without my authorization several of my illustrations from my social media websites, which I have never offered for sale or lease to the public. **Ex. 15**.

32.      For instance, I made Illustration #1 for the "Webcomic Name" Facebook profile banner and have not used it for anything else. Similarly, Illustration #2 was made specifically for use as "Webcomic Name" Facebook profile image. I have never used these two illustrations anywhere else.

33.     Additionally, I have never sold, licensed or offered for download the webcomics "Invasive" and "New Life", Illustration #3 and #6 respectively.

7

34. Illustration #4 featuring the Blog character with the hearts and stars is a banner I created exclusively for my Patreon page. I have never sold, licensed or offered for download this illustration. **Id.**

35. Moreover, at least one illustration used by GB Entertainment in support of its fraudulent trademark applications is a reproduction of my work registered with the United States Copyright Office under registration No. VAu 1-337-956. **Exhibit 3**.

36. GB Studios also copied Illustration #1 and used my trademarks "Oh No" and "Webcomic Name" to promote merchandize on its website http://www.goldenbellstudios.com and at conventions (for instance at the PAX East Convention) without my knowledge or consent. **Ex. 16**.

37. Goldner knew before I sign the Collaboration Agreement that I had been working on my publishing deal with McMeel. However, regardless of Goldner's knowledge and his assurances that the Collaboration Agreement would not interfere with my publishing contract with McMeel, on March 28, 2019, Andrea Timpone of Garson, Segal, Steinmetz, Fladgate LLP., as counsel for Defendants, sent a letter to McMeel demanding that McMeel refrains from publishing my book and claiming that the book infringes on Defendants trademark "Webcomic Name." See **Ex. 17**.

38. The next day on March 29, 2019 Ms. Timpone also sent a letter to my attorneys at Chinta, Perdomo, Berks & Fratangelo, LLP claiming that Golden Bell was the rightful owner of the "Webcomic Name" and that somehow Golden Bell had acquired trademark rights over the mark "Oh No" and that the copyright registration of my webcomic strips compilation was invalid. Id. The Collaboration Agreement does not even mention the mark "Oh No" but that doesn't stop Defendants from interfering with my publishing deal which is essentially my

breakthrough opportunity to further succeed in the United States market as a coveted illustrator and comic strip artist. **Ex. 18**.

39. In response to defendants' multiple threats to McMeel, my attorneys sent a letter to Defendants on April 1, 2019 terminating the "Collaboration Agreement" with Golden Bell, to the extent the Collaboration Agreement is enforceable because I am convinced that Goldner used the Collaboration Agreement as an excuse to misappropriate my intellectual property.

40. On April 4, 2019, Ms. Timpone sent yet another letter to McMeel threatening legal action if McMeel moved forward with the publication of my "Oh No" book. See Exhibit 16. After careful consideration and in consultation with their own counsel as well as mine, McMeel published the "Oh No" book on April 2, 2019. **Ex. 19**.

41. I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and accurate.

Dated: June 12, 2019
London, United Kingdom

*Alexander Norris*

_____
ALEXANDER NORRIS