**UNITED STATES DISTRICT COURT**
**SOURTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x

|  |  |  |
|---|---|---|
| ALEXANDER NORRIS | : | |
| | : | |
| *Plaintiff*, | : | Case No.: 19-cv-05491-PAE-SN |
| | : | |
| v. | : | |
| | : | |
| Marc Goldner, Individually and as Officer | : | |
| of GOLDEN BELL ENTERTAINMENT, | : | |
| LLC, a California company and GOLDEN | : | |
| BELL STUDIOS, LLC, GOLDEN BELL | : | |
| ENTERTAINMENT, LLC., a Nevada | : | |
| Company and GOLDEN BELL STUDIOS, | : | |
| LLC, | : | |
| | : | |
| *Defendants*. | | |

---------------------------------------------------------x

## PLAINTIFF'S MEMORANDUM OF POINTS
## AND AUTHORITES IN OPPOSITION TO
## DEFENDANTS' MOTION TO AMEND ANSWER

INTRODUCTION

Plaintiff Alexander Norris ("Norris"), in accordance with the Court's Individual Practice Rule III(A) and the Court's September 7, 2022 Order, ECF Doc. No. 104, and the Court's September 16, 2022 Order, ECF Doc. No. 110, hereby submits this memorandum of points and authorities in opposition to Defendants' motion to amend their answer to assert counterclaims.

FACTUAL HISTORY

**1.   The Defendants' Proposed Counterclaims and their Purported Factual Basis.**

Defendants seek to assert three counterclaims: breach of contract, tortious interference with prospective economic advantage and copyright infringement.

Defendants claim Plaintiff breached the Collaboration Agreement by (1) refusing to send final files of the Webcomic Name Game;[1] (2) entering into a publishing agreement with McMeel;[2] (3) refusing to provide access to social media accounts;[3] and (4) making disparaging comments about Golden Bell.[4]

Defendants' tortious interference cause of action is based on vague, unspecified "disparaging comments" that Plaintiff made to EnzoComics and Jason Wiseman, which allegedly caused EnzoComics to back out of a proposed development deal with Golden Bell, and caused Wiseman to terminate his agreement with Golden Bell. Defendants further allege that Plaintiff created a post which also disparaged them, but allege no damages caused by that post.[5]

---

[1] ECF Doc. 113 at ¶¶50-53.
[2] *Id.* at ¶¶54-56.
[3] *Id.* at ¶57.
[4] *Id.* at ¶¶58-59.
[5] *Id.* at ¶¶45-46.

1

Finally, Defendants' cause of action for copyright infringement is based upon Defendants' allegation that Plaintiff continues to publish comics online containing characters that are "intended to appear" in the WORKS.[6]

**2. Defendants learned of – and threatened Plaintiff with – their proposed counterclaims three and half years ago, months before this action was filed.**

Defendants prior counsel, Garson, Segal, Steinmetz, Fladgate LLP ("GS2 Law"), threatened Plaintiff with the exact same claims which are now at issue on March 29, 2019 - nearly three months *before* the Complaint was even filed on June 12, 2019.[7]

In their March 2019 letter, GS2 Law wrote to Plaintiff's counsel claiming that Plaintiff breached the Collaboration Agreement by (1) refusing to send "final" files; (2) entering into an agreement with McMeel; (3) refusing to provide access to social media accounts; and (4) making "disparaging" comments about Defendants:

> "As Mr. Norris is aware, the files that were provided in September 2018 are incontrovertibly not final files."[8]
>
> ….
>
> "It has recently come to our attention that your client, Alex Norris, has made substantial efforts to publish the work entitled "Oh No" with the publishing company Andrews McMeel in approximately one week. As Mr. Norris is aware, this conduct is a breach of his agreement with Golden Bell…"[9]
>
> "It is clear that Mr. Norris' engagement with Andrews McMeel and efforts to independently publish 'Oh No,' an undisputed commercial development of Webcomic, is in breach of the Agreement."[10]
>
> ….

---

[6] *Id.* at ¶¶69-77.
[7] *Declaration of Francelina M. Perdomo in Opposition to Defendants' Motion to Amend ("FMP Decl."),* ¶2, <u>Exhibit A</u>.
[8] *Id.* at pg. 3.
[9] *Id.* at pg. 1.
[10] *Id.* at pg. 1.

"In contravention of Section 2.D. of the Agreement, Mr. Norris has prevented Golden Bell's access to certain social media accounts, such as Facebook, Twitter, and Instagram…"[11]

….

"In furtherance of the foregoing, we direct Mr. Norris to the confidentiality and non-disparagement clauses agreed to in Section 4 of the Agreement and demand that Mr. Norris immediately cease posting and communicating harmful remarks, images, and emoticons, which constitute, at the very minimum, defamatory, or perceivably threatening remarks."[12]

Defendants went on to claim, again as they do in their proposed counterclaims, that Norris

made vague, undescribed disparaging comments and posted "harmful … emoticons" about Golden

Bell, which injured its business and gave "rise to claims for tortious interference":

"we … demand that Mr. Norris immediately cease posting and communicating harmful remarks, images, and emoticons, which constitute, at the very minimum, defamatory, or perceivably threatening remarks. It is clear that Mr. Norris has made these statements with the intent to harm Golden Bell's reputation and business, as well as, Golden Bell's contracts and relationships giving rise to claims for tortious interference and defamation."[13]

Finally, Defendants went on to claim, as they do in their proposed counterclaims, that the

McMeel agreement constitutes copyright infringement:

"Moreover, as set forth in Sections 1.A., 1.C., 1.D. of the Agreement, Golden Bell is the exclusive owner of the copyrights to Webcomic and 'Oh No.' Therefore, Mr. Norris' unauthorized reproduction, license, distribution, and sale of 'Oh No' constitutes copyright infringement under Section 106 of the U.S. Copyright Act of 1976, as amended, 17 U.S.C. § 106."[14]

---

[11] *Id.* at pg. 2.
[12] *Id.* at pg.'s 2-3.
[13] *Id.*
[14] *Id.* at pg. 2.

3

### 3. The Procedural Posture of this Lawsuit and Defendants' Motion.

Plaintiff filed the complaint on June 12, 2019[15] and, after Plaintiff provided Defendants with an extension,[16] GS2 Law filed Defendants' answer[17] on August 2, 2019.

On December 2, 2019, the Court issued its Scheduling Order, requiring any amendments to pleadings within 30 days from the date of that order.[18] Plaintiff thereafter moved to amend his complaint on February 24, 2020,[19] which the Court granted as unopposed on July 13, 2020.[20] Plaintiff's amended complaint was filed August 6, 2020,[21] and GS2 Law again filed Defendants' answer to the amended complaint on August 21, 2020.[22]

Though the parties attempted to settle this matter, the parties engaged in discovery and Plaintiff moved to amend his complaint. Plaintiff responded to Defendants' requests for production on July 10, 2021.[23] To date, Plaintiff has produced hundreds of pages of documents.

Shortly after Plaintiff's supplemental document production, on September 9, 2021, GS2 Law moved to withdraw as Defendants' counsel due to Defendants' inability pay for legal services and because Defendants "have taken, and wish to continue taking, courses of action with which we, as their lawyers, fundamentally disagree."[24]

Despite GS2 Law's withdrawal, the parties continued settlement discussions and attended numerous settlement conferences. Defendants' current counsel, Gerard Fox Law, P.C., noticed its appearance on July 1, 2022,[25] five days before the parties' last settlement conference.[26]

---

[15] ECF Doc. No. 1.
[16] ECF Doc. No. 18.
[17] ECF Doc. No 21.
[18] ECF Doc. No. 26, ¶5.
[19] ECF Doc. No. 27.
[20] ECF Doc. No. 37.
[21] ECF Doc. No. 39.
[22] ECF Doc. No. 40.
[23] *FMP Decl.,* ¶3, <u>Exhibit B</u>.
[24] ECF Doc. No 65, ¶¶7-8.
[25] ECF Doc. No. 89.
[26] ECF Doc. No. 88.

4

Thereafter, settlement discussions collapsed, and on July 21, 2022, the Court ordered the parties to provide a discovery schedule, identify any outstanding discovery issues and the Court informed the parties that discovery would be completed by August 24, 2022.[27] The parties responded to the Court's order, but Defendants never informed the court of their intent to file counterclaims or claimed a need to conduct any discovery on their proposed counterclaims.[28] Defendant claimed that their principal, Marc Goldner, was only available for a deposition on the last day of discovery – August 24, 2020.[29]

On the afternoon of August 23, the day before that deposition, Defendants more than 3,000 documents. Defendants had never informed Plaintiffs that those documents would be forthcoming. The following evening, after Goldner's deposition had already been conducted, Defendants served more than 600 additional documents.[30] Discovery then ended on August 24, 2020.

Two weeks later, on September 7, 2022, the parties filed pre-motion for summary judgment letters pursuant to the Court's rules.[31] In Defendants' letter, for the first time, Defendants claimed they would move to amend their answer to assert counterclaims – the very same claims that Defendants threatened Plaintiff with on March 29, 2019.[32]

The Court ordered Defendants to identify their proposed counterclaims with more specificity and further ordered Defendants to identify what discovery was needed on those proposed counterclaims.[33] Defendants provided their proposed counterclaims – again, identical to those threatened in March 2019 – and claimed that the anticipated discovery would consist of,

> "Defendants believe that limited RFP's, Special Interrogatories, and
> two to three third-party depositions or subpoenas are appropriate

---

[27] ECF Doc. No. 91.
[28] ECF Doc. No.'s 92 and 94.
[29] ECF Doc. No. 94.
[30] *FMP Decl.,* ¶5, <u>Exhibit B</u>.
[31] ECF Doc. No. 91.
[32] ECF Doc. No. 106.
[33] ECF Doc. No. 107.

and sufficient to allow Defendants' to prove their causes of action."[34]

To deflect attention from their improper request, Defendants claimed the further discovery needed was Plaintiff's fault:

"It should be noted that Defendants' previously served RFP's on Plaintiff that would have been sufficient, however Plaintiff chose to ignore those requests, failing to provide any response at all."[35]

Defendants' claim that Plaintiff simply ignored Defendants' requests for production is particularly galling, given that Plaintiff responded to those requests and produced responsive documents more than a year ago.

**Standard**

The Court should deny the motion to amend under Fed. R. Civ. Proc. 16(a) because it was filed years after the deadline set forth in the Court's Scheduling Order and Defendants failed to act with good cause, i.e., diligence. *Parker v. Columbia Pictures Indus.,* 204 F.3d 326, 340 (2d Cir. 2000) ("We now join these courts in holding that despite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause. Moreover, we agree with these courts that a finding of 'good cause' depends on the diligence of the moving party.").

Alternatively, the Court should deny the motion to amend, pursuant to Fed. R. Civ. Proc. 15(a), for "good reason," because there is undue delay in seeking amendment, there will be substantial and undue prejudice to Plaintiff if amendment is granted, and amendment would be futile since the proposed amendments would not withstand a motion to dismiss. *McCarthy v. Dun*

---

[34] ECF Doc. No. 109, pg. 4.
[35] *Id.*

*& Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (*citing Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

**Argument**

**1.   Defendants Have Not Established Diligence in Seeking Amendment and have Unduly Delayed this Motion.**

A party seeking to amend their pleading after the deadline set forth in the Court's scheduling order must establish "good cause." The Second Circuit has held that in determining good cause "the primary consideration is whether the moving party can demonstrate diligence[,] [but] [i]t is not ... the only consideration." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007). Rather, the district court, "in the exercise of its discretion under Rule 16(b), also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice [the answering party]." *Mohegan Lake Motors, Inc. v. Maoli*, 2018 WL 4278352, at *5 (S.D.N.Y. June 8, 2018).

Defendants do not claim they acted diligently. Instead, Defendants simply list all of the reasons they were delayed. Importantly, Defendants do not provide any specifics establishing that they acted diligently when each of these supposed barriers to amendment were removed. On this basis alone, Defendants' motion should be denied.

There is an additional reason why Defendants' motion should be denied - Defendants do not support their claims or arguments with any evidence. No declarations or affidavits have been submitted by Defendants to support their claim of delay, nor are any exhibits filed. In fact, there are no evidentiary citations in Defendants' motion whatsoever. Seemingly unable to muster any evidence, Defendants fail to meet their burden on this motion.

But as Plaintiff will establish below, Defendants' claims of delay are provably false. Defendants claim that

> "[t]he combination of advanced settlement talks, the Covid-19 pandemic, and the pro se representation of Defendants for a large portion of the case presents enough good cause for the Court to allow Defendants to amend their pleadings for the purposes of adding counterclaims."

Defendants also go on to claim that it was their newly-hired attorneys that "realized" that Defendants had viable counterclaims after they were hired, three months ago – despite GS2 Law's letter laying out Defendants' position well before this lawsuit even started.

   a.   *Delay Due to Settlement Discussions.*

Defendants' claim that settlement discussions delayed the prosecution of this action is demonstrably false. Defendants claim that this is one of three "related" cases, all of which Defendants were attempting to settle, and "[b]ecause the settlement talks encompassed three individual cases, the progress throughout the case was slow as well."

This is not true. While the parties began settlement discussions shortly after this case was filed, they nonetheless pushed this case forward. As shown above, Plaintiff amended his Complaint, which Defendants answered in August 2020.

Defendants claim that Plaintiff "simply ignored" Defendants' Requests for Production, which is another demonstrably false statement. Plaintiff responded to Defendants' requests in July 2021. The parties even met-and-conferred over those discovery issues and Plaintiff supplemented his document production. In fact, Plaintiff has produced thousands of pages of documents.[36] Clearly, the parties were moving the case forward while settlement discussions continued.

---

[36] *FMP Decl.,* ¶3.

Still, even if Defendants' claim that they "eschewed counterclaims with the hopes of finding a resolution" were true, [Defendants' Memorandum at pg. 5], the Second Circuit has expressly rejected this excuse. In *Gullo v. City of New York*, 540 F. App'x 45, 47 (2d Cir. 2013), the Second Circuit affirmed the District Court's order denying the plaintiff's motion to amend, where the delay was purportedly due to ongoing settlement discussions,

> "Plaintiffs reference ongoing settlement discussions to excuse the delay, maintaining 'no willful intent to delay and no pattern of neglect.' The district court acted well within its discretion in concluding that plaintiffs' three-month failure to move for amendment after learning the officers' names failed to demonstrate the diligence necessary to satisfy Rule 16."

Settlement discussions may only be sufficient reason where those discussions prevented the moving party's "ability to discover the facts supporting the proposed cause of action." *Enzymotec Ltd. v. NBTY, Inc.*, 754 F. Supp. 2d 527, 537 (E.D.N.Y. Dec. 7, 2010). Defendants make no claim that settlement prevented their ability to learn the relevant facts, nor could they. Instead, Defendants admit that they received a document production from Plaintiff in advance of the October 28, 2021 settlement conference. Defendants claim that production contained "a publishing agreement between Plaintiff and Andrews McMeel publishing, dated two months after the agreement between the parties. It was then Defendants learned of the breach of the 'book option' provision of the agreement." Defendants' Memorandum at pg. 5.[37]

As is clear from GS2 Law's March 2019 letter, Defendants knew of the facts supporting their proposed counterclaims before this action was even filed – they cannot claim that settlement

---

[37] Defendants' claim that they only realized Plaintiff's deal with McMeel in October 2021 is just one more demonstrably false statement. Defendants new of the McMeel agreement in March 2019, nineteen months before the October 2021 production, and claimed that "It is clear that Mr. Norris' engagement with Andrews McMeel and efforts to independently publish 'Oh No,' an undisputed commercial development of Webcomic, is in breach of the Agreement." *FMP Decl.*, ¶2, Exhibit A at pg. 1.

discussions which commenced after this action started prevented their ability to learn of the facts at issue.

    b.  *Delay Due to Covid-19.*

Almost as an afterthought, Defendants claim that the Covid-19 pandemic delayed their ability to file counterclaims: "the Covid-19 pandemic quickly ground court proceedings to a halt." Defendants never identify the "proceeding" that was halted in this matter that prevented Defendants from filing their counterclaims – nor can they, since this is one more demonstrably false statement.

This Court did not "halt." In fact, this Court and its staff continued to work on this matter during and through the very height of the pandemic, as is readily clear from just a glance at the docket.[38] Among other things, the Court extended the parties' discovery schedule and granted Plaintiff's motion to amend his Complaint.

Defendants fail to explain why they did not include their counterclaims when they filed their amended answer in August 2020, or how the Covid-19 pandemic prevented them from doing so. Nor were Defendants themselves prevented from acting during this time – in fact, Defendants applied for and were granted a $300,000 loan from the Small Business Administration in June 2020, and, as will be shown below, filed motions in the Southern District of New York.

One would think that the seriousness of the Covid-19 pandemic and the death it caused would not be so casually and baselessly thrown around as an excuse for Defendants' delay.

---

[38] ECF Doc. No.'s 27-42.

  *c. Delay Due Defendants' Pro Se Status.*

  Defendants allude to their status as *pro se* litigants as a reason for their delay, but do not describe how that created a delay. Nonetheless, defendant Goldner is more than capable of filing pleadings in the Southern District of New York.

  For example, Goldner filed a complaint, seeking injunctive relief in this Court on March 19, 2020.[39] According to that filing, Goldner was attempting to stop an airing of "The People's Court," where Goldner was found to have improperly refused to pay a content creator. Though unsuccessful, Goldner's filing establishes two facts that completely undermine Defendants' current claims of that they were delayed: first, that Goldner has the ability to file such pleadings and could have filed the counterclaims while he was unrepresented, and second, that the Covid-19 pandemic did not prevent this Court from accepting nor Defendants from filing any pleadings. Goldner even admitted that he drove to New York City to file that complaint: "Now, after all the hardships the defendants have put me thorough, they have forced me to drive to the hotbed of the COVID-19 Pandemic, New York City, in order to file this complaint in order to save my future."[40]

  Nonetheless, Defendants' *pro se* status does not establish "good cause." *Feuer v. Cornerstone Hotels Corp.*, 2017 WL 3841841, at *4 (E.D.N.Y. Aug. 4, 2017), *report and recommendation adopted*, 2017 WL 3842350 (E.D.N.Y. Aug. 31, 2017) (*citing Smith v. New York City Dep't of Educ.*, 524 Fed. Appx. 730, 733 (2d Cir. 2013) ("*Smith*") ("…a district court does not abuse its discretion by denying a *pro se* litigant's motion to amend if the *pro se* litigant cannot show good cause.").

  In *Smith,* the Second Circuit affirmed the district court's order, denying the *pro se* plaintiff's motion to amend in circumstances similar to this case, when that plaintiff waited "six

---

[39] *Goldner v. Ralph Edwards/Stu Billet Productions, et. al.*, 20-cv-02764-AT-BCM, ECF Doc. No. 1.
[40] *Id.* at pg. 8.

months after the November 5, 2010 deadline to amend pleadings, one month after the April 22,

2011 deadline for fact discovery, and two weeks after defendants filed their motion for summary

judgment." *Smith*, 524 F. Appx at 733.

Similarly, Defendants' status as *pro se* litigants does not establish diligence.

    d.  *Delay Where it Was Only Defendants' Newly-hired Counsel that Realized Defendants Had Viable Counterclaims.*

Finally, Defendants claim that it was only their newly-hired counsel, Gerard Fox Law,

P.C., that "realized Defendants possessed valid, previously unpursued counterclaims." As is clear

from GS2 Law's March 29, 2019 letter, this claim is simply false. Defendants threatened the exact

same claims against Plaintiff more than three-and-a-half years ago.

That these claims went "unpursued" by Defendants' former counsel and were only

"realized" by Gerard Fox, P.C., is insufficient to establish diligence and has been squarely rejected

by the Second Circuit. *Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir.

1985) ("Ansam alleges that it was only after new counsel was substituted in March, 1983, that it

discovered the information that formed the basis of its newly proposed claim. However, this is

simply an insufficient reason for prejudicing Cola by forcing it to proceed to trial, post-discovery,

on a new complaint.").

**2.  The Prejudice to Plaintiff is Apparent.**

When amendment is sought after discovery has closed and summary judgment is pending,

prejudice to the non-moving party is obvious and has been consistently recognized in this Court

and the Second Circuit for decades. *Werking v. Andrew*s, 526 F. App'x 94, 96 (2d Cir. 2013) ("We

are particularly likely to find prejudice where the parties have already completed discovery and

the defendant has moved for summary judgment."); *AEP Energy Servs. Gas Holding Co. v. Bank

of Am., N.A.,* 626 F.3d 699, 727 (2d Cir. 2010); *Krumme v. WestPoint Stevens Inc.*, 143 F.3d 71,

88 (2d Cir. 1998); *Ansam Associates v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir.1985) ("[a] proposed amendment ... [is] especially prejudicial ... [when] discovery had already been completed and [non-movant] had already filed a motion for summary judgment."); *NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*, 262 F. Supp. 2d 134, 151 (S.D.N.Y. 2003); *Cahill v. O'Donnell*, 75 F.Supp.2d 264, 279 (S.D.N.Y.1999) ("Our Circuit has consistently found prejudice and denied amendments where discovery has already been completed and summary judgment motions have been filed."). Plaintiff faces the same prejudice – new discovery encompassing issues much broader than the initial litigation, at a point in the case when discovery has ended and Plaintiff's motion for summary judgment is pending.

Defendants struggle to distinguish the clear precedent which requires denial of this motion due to the prejudice that Plaintiff faces. Rather, Defendants make the threadbare argument that they moved to amend while the parties had filed pre-motion letters seeking summary judgment, and that therefore, motions for summary judgment were not "pending." This is inaccurate – such letters begin summary judgment practice, and, in this Court, those letters can be deemed to be fully submitted motions for summary judgment. *United States Sec. & Exch. Comm'n v. Collector's Coffee Inc.*, 2021 WL 2476515, at *2 (S.D.N.Y. June 17, 2021) ("…the Court will treat the parties' premotion letters as        fully        submitted      cross motions for summary judgment."). Nonetheless, Defendants filed this motion shortly before the deadline for Plaintiff to file his motion for summary judgment, which is now pending.[41]

Defendants once more claim that the prejudice that Plaintiff faces through further discovery is Plaintiff's fault:

> "Plaintiff bears the fault of a substantial portion of any burden in undertaking additional discovery. As Defendants informed the Court in their September 12, 2022 letter, prior to the end of the

---

[41] ECF Doc. No.'s 117-120.

13

> discovery deadline, Defendants served on Plaintiff's Requests for
> Production. (Dkt 108). Rather than bothering to even send back
> objections to the Requests, Plaintiff chose to simply ignore them.
> Plaintiff acknowledged failure to respond in their September 14,
> 2022 letter stating, 'Plaintiff is not required to respond to discovery
> that is relevant to unfiled counterclaims.' (Dkt 109)."

This is just one more false claim by Defendants. Plaintiff replied to Defendants' requests more than a year ago and worked with Defendants' then-counsel to resolve discovery issues and produce even more information. Clearly, if Defendants had further issues with Plaintiff's responses, then they would have addressed them, but they did not.

Defendants cite to this Court's decision in *Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193 (S.D.N.Y. 2014) for the proposition that "even when a party is required to expend additional time, effort, and expenses, the burden of undertaking discovery alone does not amount to substantial prejudice."

But Defendants do not go into the facts of *Scott*, which distinguish that case from this one. Indeed, in *Scott*, that motion to amend was filed when "discovery has barely begun," and therefore this Court held that the defendant "is not prejudiced *because discovery has not yet concluded. A court is more likely to find an amendment prejudicial if discovery has closed*." *Id.* at 200 (*citing Davis v. Lenox Hill Hosp.,* 2004 WL 1926086, at *4 (S.D.N.Y. Aug. 31, 2004)) (Emphasis added).

Here, Defendants waited until two weeks after discovery had closed to even alert the Court (or Plaintiff) to the possibility of amendment, even though the Court prompted the parties to raise any discovery issues before the discovery deadline expired, and then expressly warned that no further extensions would be granted:

> "By July 25, 2022, the parties shall file a letter detailing any
> outstanding discovery and setting a schedule for any remaining

depositions. All discovery shall be complete by August 24, 2022. No extensions will be granted."[42]

Defendants were content to lay back in the weeds and simply not mention these proposed counterclaims until after discovery ended in this case.

Now, however, Defendants claim that

"With respect to the anticipated discovery for the above stated causes of action, Defendants believe that limited RFP's, Special Interrogatories, and two to three third-party depositions or subpoenas are appropriate and sufficient to allow Defendants' to prove their causes of action."[43]

And this proposed discovery by Defendants says nothing of the costs that Plaintiff would incur defending against those claims. Plaintiff will clearly be prejudiced by these late-filed and frivolous claims.

### 3. Defendants Intention to File a Separate Lawsuit.

Defendants claim they will file a new lawsuit if their motion to amend is not granted. Defendants made this same claim in March 2019, threatening litigation. But as Defendants have admitted, their proposed counterclaims are "compulsory counterclaims":

"An extensive review of the case file, numerous interviews with the Defendants and individuals involved, extensive legal research, and depositions of the Plaintiff Alex Norris revealed that Defendants had viable *compulsory counterclaims* that previous counsel neglected to file."[44]

Compulsory counterclaims filed during the pendency of a related action are either stayed or dismissed outright under the so-called "first-to-file" rule: '[W]here there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience ... or ... special circumstances ... giving priority to the second.'" *Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir.

---

[42] ECF Doc. No. 91.
[43] ECF Doc. No. 108, pg. 4.
[44] ECF Doc. No. 106, pg. 1 (Emphasis added).

1991) (*citing First City Nat'l Bank and Trust Co. v. Simmons,* 878 F.2d 76, 79 (2d Cir.1989)). "Ideally, once a court becomes aware that an action on its docket involves a claim that should be a compulsory counterclaim in another pending federal suit, it will stay its own proceeding." *Id*. at 93 (*citing* 6 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1418, at 143 (2d ed. 1990 & Supp.1991)).

This is true even where the second action is filed in a different jurisdiction. In *Nat'l Equip. Rental, Ltd. v. Fowler*, 287 F.2d 43, 46 (2d Cir. 1961), the Second Circuit affirmed the district court's order enjoining the parties from litigating a second lawsuit in Alabama,

> "We believe it to be important that there be a single determination of a controversy between the same litigants and, therefore, a party who first brings an issue into a court of competent jurisdiction should be free from the vexation of concurrent litigation over the same subject matter, and an injunction should issue enjoining the prosecution of the second suit to prevent the economic waste involved in duplicating litigation which would have an adverse effect on the prompt and efficient administration of justice unless unusual circumstances warrant."

This is especially true here because a decision in this case will decide the proposed counterclaims, since among other things Plaintiff claims that the Collaboration Agreement was effectively terminated. *Nat'l Equip. Rental, Ltd.,* 287 F.2d at 46 ("… a final adjudication upon the New York action would leave nothing for determination in Alabama.").

Despite Defendants' threat of a second lawsuit, such a lawsuit would be either stayed or dismissed. The cases cited by Defendants in support of this argument do not compel a different result – in neither of those cases did the moving party admit they were filing compulsory counterclaims, nor was the first-to-file rule raised. *See Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, 304 F.R.D. 170 (S.D.N.Y. 2014); *Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 2002 WL 31014833 (S.D.N.Y. Sept. 10, 2002).

**4. Defendants' Proposed Counterclaims are Meritless.**

Defendants' proposed counterclaims could not withstand a motion to dismiss, and on that additional basis their motion to amend should be denied. *Kiarie v. Dumbstruck, Inc.*, 473 F. Supp. 3d 350, 356 (S.D.N.Y. 2020).

    a. *Breach of Contract.*

Defendants' breach of contract action is premised on, among others, paragraphs 3(D) and 2(D) of the Collaboration Agreement.

3(B) states:

> "It is contemplated that the WORKS will be completed by the ARTIST. Each of the WORKS will have a set timeline attached to it such as i.e.. "Webcomic Name Game" to be completed by February 17, 2018; Other works will be discussed as far as deadlines for each of the above WORKS cited.

3(D) states:

> "The ARTIST agrees to give the COMPANY a 365-Day option on the ARTIST's next game-length work and book-length work and manuscript-length work *on the same terms as this agreement*, which option period shall begin on the day the completed manuscript for such work is received by the publisher or 1-Year after the publication of the WORKS covered by the entirety of this agreement."

Each of those provisions are dependent on the "WORKS" actually existing, and because the WORKS do not exist, there can be no breach.

Defendants further claim that Plaintiff was delayed in completing Webcomic Name Game, which "caused Golden Bell to miss solicitation deadlines and to miss not one but two Quarter 4 sales periods which is when most sales take place in this industry."[45] Defendants do not allege any lost sales, but rather allege they lost the opportunity to make sales – a category of damages so

---

[45] ECF Doc. No. 113, ¶35.

speculative that they have been barred in New York for nearly 150 years. *Jill Stuart (Asia) LLC v. Sanei Int'l Co.*, 2013 WL 3203893, at \*4 (S.D.N.Y. June 17, 2013), *aff'd*, 566 F. App'x 29 (2d Cir. 2014) (*citing Baker v. Drake*, 53 N.Y. 211, 221 (1873)).  ("Hypothetical damages 'based upon the supposed loss of an opportunity' to sell the product are not compensable.").

Defendants vaguely claim that they suffered reputational damages due to the delay: "Further, this made Golden Bell look untrustworthy and unable to meet the deadlines that they set due to Norris' failure to perform that lost Golden Bell sales and customers."[46] But reputation damages are not recoverable pursuant to a breach of contract under New York law. *Smith v. Positive Prods.*, 419 F. Supp. 2d 437, 453 (S.D.N.Y., Sept. 28, 2005) ("Damages to reputation generally are not recoverable in a breach of contract action under New York law.").

In sum, Defendants fail to allege any actionable breach of the Collaboration Agreement, nor do Defendants adequately allege any damages from the supposed breach.

  b.  *Tortious Interference and Breach of the Non-disparagement Clause*.

Defendants make the same vague, conclusory allegations in support of their claims that Plaintiff breached the Collaboration Agreement's non-disparagement clause and committed tortious interference. Those claims rest on the allegations that Plaintiff made a disparaging post on Facebook and "made similarly disparaging comments in private communications":

> "ALSO if you get approached for a project with a publisher etc, do not go with them simply because you have seen that one of us has worked with them in the past. Always reach out to the other artist to ask their experience of working with those people, as they might have had a negative experience and got stuck in a contract [golden bell emoji with a red slash through it].

---

[46] ECF Doc. No. 113, ¶35.

> "Upon information and belief, Norris has made similarly disparaging comments in private communications."[47]

Defendants do not allege any damages that occurred due to Plaintiff's post, a prerequisite under New York law. *Arts4all, Ltd. v. Hancock,* 5 AD3d 106, 110 (1st Dept.2004). And Defendants' allegation that Plaintiff made "disparaging" statements to EnzoComics and Jason Wiseman are completely insufficient. To survive a motion to dismiss, a disparaging statement must be "specified." *BDCM Fund Adviser, L.L.C. v. Zenni*, 103 A.D.3d 475, 478, 962 N.Y.S.2d 11, 15 (1st Dept. 2013). Defendants' mere claim that the "on information and belief, Norris made similarly disparaging comments" is completely insufficient.

For these reasons, Defendants' claims that Plaintiff breached the non-disparagement clause and tortiously interfered with their prospective business lack merit.

### c. *Copyright Infringement.*

Defendants failed to satisfy a pre-condition of their copyright infringement claim because Defendants fail to allege that have registered any copyright. *See* 17 U.S.C. § 411(a) ("*no action* for infringement of the copyright in *any* United States work *shall be instituted* until preregistration or registration of the copyright claim has been made in accordance with this title.") (Emphasis added).

Defendants will never be able to satisfy that precondition because the Collaboration Agreement is insufficient to vest ownership of any copyright in Defendants. A non-creator may own a copyright where the work is made for them, i.e., a "work made for hire." There are only two ways for Defendants to establish the works are "made for hire" (1) the copyright was created as part of an employee's regular duties; or (2) the work is created as a result of an express written

---

[47] ECF Doc. No. ¶¶44-45.

agreement.[48] Defendants do not allege that Plaintiff was their employee, and the Collaboration Agreement does not contain the required language to vest ownership of any copyright in Defendants.

A "work made for hire" is a work specially ordered or commissioned for use as an (1) atlas, (2) a test, (3) answer material for a test , (4) a translation, (5), a part of a motion picture or other audiovisual work, (6) a compilation, (7) a contribution to a collective work , (8) a supplementary work and/or (9) an instructional test.[49] The "WORKS" at issue in this case, a board game and a plush toy, do not fall within any of these categories and thus cannot be a work made for hire. Further, the parties' agreement must expressly contain a provision that the works are "works made for hire."[50] If a work fails to satisfy any of these requirements, it is not a work made for hire pursuant to the Copyright Act, and ownership has not been transferred.

Defendants allege copyright infringement because the "Agreement between the parties states that Golden Bell retained 100% of the copyright related to the WORKS, *which is defined as a tabletop game and stuffed animals based upon Norris' Webcomic Name*."[51]   However, in the Collaboration Agreement, the parties never agreed the WORKS were "works made for hire." This means that, to the extent the WORKS are copyrightable, Plaintiff remains the author. For instance, in *Est. of Kauffmann v. Rochester Inst. of Tech.*, 932 F.3d 74, 78 (2d Cir. 2019), the Second Circuit reversed the District Court and held that the copyright remained with the author of the works at issue, because the agreement between the parties did not meet 17 U.S.C. § 101(2)'s criteria.

---

[48] See Circular 30 Works Made For Hire (copyright.gov), pg. 1.
[49] *Id.* at pg. 5.
[50] *Id.; see also* 17 U.S.C. § 101(2).
[51] ECF Doc. No. 113 ¶70.

Defendants further note that "COMPANY shall have sole ownership of the original artwork used and created for the WORKS."[52] But Defendants do not claim that Plaintiff *created* the tabletop game or stuffed animals, i.e., the WORKS, as a work made for hire. Rather, Defendants seek to broadly construe the "WORKS" to extend to every possible medium of expression and anything even related to the Webcomic Name series – which is prevented by the plain terms of the Collaboration Agreement. In fact, the Collaboration Agreement expressly provides that "[Plaintiff] has the right to pursue his Comic 'Webcomic Name' outside of the context of this agreement." This provision belies Defendants' over-broad construction of the Collaboration Agreement.

## Conclusion

For the aforementioned reasons, Defendants' motion to amend their answer to file counterclaims should be denied.

Dated: November 16, 2022
New York, New York

Respectfully submitted,

*/s/ Francelina M. Perdomo*
Francelina M. Perdomo, Esq.
Kyle G. Kunst, Esq.
GALLET DREYER & BERKEY, LLP
845 Third Ave., 5th Floor
New York, NY 10022-6601
Phone: (212) 935-3131
Fax: (212) 935-4514
fmp@gdblaw.com
kgk@gdblaw.com

*Attorneys for Plaintiff*
*Alexander Norris*

---

[52] ECF Doc. No. 113 ¶72.

21

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 16th day of November 2022, I caused to be served a copy of

the foregoing via the Court's ECF filing system, on the following:

Gerard Patrick Fox
Gerard Fox Law, P.C.
1880 Century Park East
Suite 1410
Los Angeles, CA 90067
310-441-0500
Email: gfox@gerardfoxlaw.com

Ryan Dolan
Gerard Fox Law P.C.
1345 Sixth Avenue
33rd Floor
10105
New York, NY 10006
661-364-7254
Email: rdolan@gerardfoxlaw.com

*Attorneys for Defendants*

*/s/ Kyle G. Kunst*
Kyle G. Kunst

22