**GS2LAW**
GARSON, SEGAL, STEINMETZ, FLADGATE LLP
Tel: (212) 380-3623 | Fax: (347) 537-4540

| | | |
|---|---|---|
| **Robert Garson** ◊ | **John Lane** ¶ | **Kevin Kehrli** |
| **Thomas Segal** ˆ | **Timothy Kendal** ◊ | **Michael Smaila** |
| **Michael Steinmetz** * ¶ | **Ilan Ben Avraham** ▽ | **Rushelle Bailey** |
| **Chris Fladgate** ° | **Stephen Greenwald** | **Andrea Timpone** |
| **Kevin Murphy** | | |

ADDITIONAL BAR MEMBERSHIPS:
◊  England and Wales
ˆ  Paris
*  New Jersey
¶  Patent Bar
°  Victoria (Australia)
▽  Israel

Email: at@gs2law.com

March 29, 2019

**VIA FIRST-CLASS MAIL & EMAIL**

Francelina M. Perdomo
Chinta Perdomo Berks & Fratangelo LLP
17 State Street, Suite 4000
New York, New York 10004
Email: fperdomo@chintaperdomo.com

    Re:    Unauthorized Use of the Work Entitled "Oh No" and "Webcomic Name" Trademark

Dear Ms. Perdomo:

This firm represents and is instructed by the Golden Bell entities, their subsidiaries and affiliates, including, Golden Bell Entertainment, LLC. ("Golden Bell" or our "Client").

It has recently come to our attention that your client, Alex Norris, has made substantial efforts to publish the work entitled "Oh No" with the publishing company Andrews McMeel in approximately one week. As Mr. Norris is aware, this conduct is a breach of his agreement with Golden Bell and as such, we request that Mr. Norris immediately and permanently cease all efforts to publish "Oh No" with Andrews McMeel or any other publisher without the written consent of Golden Bell.

On August 10, 2017, Mr. Norris knowingly and willfully entered into an Agreement (the "Agreement") relating to the properties Webcomic Name Game and Webcomic Name Stuffed Animals ("Webcomic"). Pursuant to the Agreement Mr. Norris granted Golden Bell, *inter alia,* full title, right, and interest to Webcomic and any tie-ins, spinoffs, or other commercial development of the same such as sequels, prequels, reboots, remakes, and expansions. Importantly, as set forth in Sections 2.E and 2.M of the Agreement, Mr. Norris agreed that Golden Bell would be the exclusive agent for any sale or disposition with any publisher and that Mr. Norris would not publish, monetize, or reproduce the aforementioned works without Golden Bell's consent.

It is clear that Mr. Norris' engagement with Andrews McMeel and efforts to independently publish "Oh No," an undisputed commercial development of Webcomic, is in breach of the Agreement.

Moreover, as set forth in Sections 1.A., 1.C., 1.D. of the Agreement, Golden Bell is the exclusive owner of the copyrights to Webcomic and "Oh No." Therefore, Mr. Norris' unauthorized reproduction, license, distribution, and sale of "Oh No" constitutes copyright infringement under Section 106 of the U.S. Copyright Act of 1976, as amended, 17 U.S.C. § 106. The remedies for such infringing conduct include not only injunctive relief against Mr. Norris' unauthorized publication of "Oh No," but also recovery of Golden Bell's lost profits and damages.

The copyright registrations that you filed on behalf of Mr. Norris for Webcomic works subsequent to the Agreement are invalid and Golden Bell will seek to enforce its rights and cancel such registrations pursuant to 37 C.F.R. §201.7. In particular, Copyright Registration Number VAu001337956, which was filed on December 4, 2018 and after Mr. Norris transferred all right and title to Webcomic Name, is factually and deliberately inaccurate, as Mr. Norris is named rather than Golden Bell as the sole claimant to Webcomic Name works therein.

Additionally, Golden Bell is the rightful owner of the mark "Webcomic Name" and the corresponding federal trademark Registration Number 5629281 (the "Mark"). Therefore, the proceeding (Cancellation No. 92970899) initiated to cancel the Mark is patently improper. As Mr. Norris is aware, Section 1.A. of the Agreement explicitly transfers full right and title to all Webcomic trademarks to Golden Bell. Indisputably, the face of the Agreement confirms that Golden Bell, not Mr. Norris, has rights to the Mark. The Petition of Cancellation acknowledges the existence of the Agreement, but alleges that it is void. Based on those allegations, you seek cancellation of Golden Bell's Mark. This places the cart before the horse, seeking the remedy for a finding in your client's favor, before your allegations are proven. Since the Trademark Trial and Appeal Board ("TTAB") is not the appropriate venue to evaluate the Agreement, it is imperative that Mr. Norris immediately withdraw the cancellation proceeding.

As Mr. Norris has no right or interest in the Mark, his unpermitted use of the Mark in connection with the reproduction, publication, adverting, promotion, and sale of "Oh No" violates Golden Bell's trademark rights under 15 U.S.C. §1125, which may expose Mr. Norris to liability and significant damages for trademark infringement. Mr. Norris would also be subject to claims for unfair competition for violation of numerous state unfair competition statutes, which exposes Mr. Norris to liability for monetary damages, an injunction, and repayment of Golden Bell's attorneys' fees incurred enforcing its rights.

In contravention of Section 2.D. of the Agreement, Mr. Norris has prevented Golden Bell's access to certain social media accounts, such as Facebook, Twitter, and Instagram, while the Agreement explicitly states, that Golden Bell is to exclusively handle social media and that Golden Bell and Mr. Norris would share access to all social media accounts. Golden Bell is eager to promote the objectives of the Agreement and Webcomic. Therefore, it is essential that Golden Bell have access to social media accounts for Webcomic in order to successfully advertise, promote, and exercise pre-market strategies. It is crucial that Mr. Norris comply with his obligations under the Agreement and share access to all social media accounts relating to Webcomic with Golden Bell immediately. Should Mr. Norris fail to comply with his obligations, Golden Bell may notify Facebook, Twitter, and Instagram of the continuing infringement of Golden Bell's intellectual property rights, which may result in suspension or deletion of such social media accounts.

In furtherance of the foregoing, we direct Mr. Norris to the confidentiality and non-disparagement clauses agreed to in Section 4 of the Agreement and demand that Mr. Norris immediately cease posting

and communicating harmful remarks, images, and emoticons, which constitute, at the very minimum, defamatory, or perceivably threatening remarks. It is clear that Mr. Norris has made these statements with the intent to harm Golden Bell's reputation and business, as well as, Golden Bell's contracts and relationships giving rise to claims for tortious interference and defamation.

Ultimately, Golden Bell is intent to resolve this matter and continue the objectives as set forth in the Agreement. To date, Mr. Norris has failed to meet his obligations pursuant to Sections 1.G., 2.A., 3.B. of the Agreement to facilitate the timely completion of the Webcomic works. As Golden Bell has communicated to Mr. Norris and Mr. Norris acknowledged in or around early July 2018, Webcomic still requires necessary design and editorial changes to ensure the functionality and commercial success of the game; such as, replacing tokens with "oh no" panel cards, revisions to the "oh no" cards, creation of the box and rulebook, and completion and provision of the final files to Golden Bell. As Mr. Norris is aware, the files that were provided in September 2018 are incontrovertibly not final files. In addition, while Golden Bell has held its obligations under the Agreement, and in reliance on Mr. Norris, by completing certain plush items such as, the "Oh No Plush Pillow," Mr. Norris has neglected to share the tag files for the new plush toys so that they may be sold. While the Agreement is entitled "Collaboration Agreement," Mr. Norris has sought to prevent and impede its terms rather than collaborate.

Toward this end, Golden Bell is optimistic that Mr. Norris will work to complete the "Webcomic Name: The Webcomic Game" within thirty (30) days as Golden Bell has previously agreed to extend the original deadline from February 17, 2018 for this work on numerous occasions. Mr. Norris has yet to implement numerous and necessary edits to reach a finished product. If Mr. Norris is unable to facilitate these reasonable requests in furtherance of the Agreement, Mr. Norris' inaction will be deemed an effective withdrawal from the Agreement pursuant to Section 2.I and Golden Bell may proceed with Webcomic independently.

While Golden Bell has sufficient evidence at this stage to pursue its remedies through the courts against Mr. Norris personally, in order to resolve this matter, we demand that Mr. Norris immediately:

(i)     Terminate any agreements with and refrain from publication of "Oh No" with McMeel;
(ii)    Immediately withdraw the petition for cancellation (Cancellation No. 92970899);
(iii)   Refrain from publishing any Webcomic work or "Oh No" with any publisher without Golden Bell's written consent;
(iv)    Cease and refrain from displaying, reproducing, distributing, licensing, or offering for sale, any Webcomic work or "Oh No" without Golden Bell's written consent;
(v)     Grant access to all social media accounts relating to the works contemplated in the Agreement, including, without limitation, Webcomic or "Oh No;"
(vi)    Delete and refrain from communicating any threatening or defamatory statements relating to Golden Bell;
(vii)   Cease contacting individuals or entities known to Mr. Norris to have an existing relationship or contract with Golden Bell;
(viii)  Take down all unauthorized online posts of the infringing items and cease unauthorized use of the Mark; and
(ix)    Confirm in writing that Mr. Norris will comply with these demands.

We look forward to your prompt reply within five (5) days of the date of this letter. Mr. Norris is expected to comply with the demands in paragraph (i) no later than **April 1, 2019** and paragraph (ii) no later than **April 11, 2019.**

GS2 LAW

CONTINUATION PAGE

This communication does not contain an exhaustive list of Golden Bell's rights or remedies against Mr. Norris, all of which are reserved.

Yours sincerely,


    /s/ Andrea T. Timpone
Andrea Terese Timpone

4