# EXHIBIT – 6 –

**GOLDEN BELL AND ALEX NORRIS COLLABORATION AGREEMENT**

This AGREEMENT (hereinafter called the Agreement), made this 11 day of July, 2017, between Alex Norris ("ARTIST") and Golden Bell Entertainment, LLC ("COMPANY") (collectively, the "Parties") with respect to the production of the properties tentatively entitled "Webcomic Name Game" and "Webcomic Name Stuffed Animals" (the "WORKS") to be created by ARTIST, and any tie-ins, spinoffs, or other commercial development of the WORKS such as Sequels, Prequels, Reboots, Remakes, and Expansions.

NOW, THEREFORE, in consideration of the execution of the Agreement, and the undertakings of the Parties, as hereinafter set forth, it is agreed as follows:

1. COPYRIGHT ASSIGNMENT

    A.  Percentage, ownership, registration and assignment of "WORKS" with the United States Copyright Office and United States Patent and Trademark Office are defined and clarified as the joint work of the parties. Thus, ARTIST shall retain 0% of the copyright, 0% of the trademark, 0% of the patent and 5% of the net sales of WORKS for the first 18 months then it will revert to 4% of the net sales of the WORKS thereafter, and COMPANY shall retain 100% of the copyright, 100% of the trademark, 100% of the patent, and 95% of the net sales of WORKS for the first 18 months then it will revert to 96% of the net sales of the WORKS thereafter. ARTIST assigns to COMPANY their initial rights of the WORKS as stated above in this section 1A upon the signing of this AGREEMENT.

    B.  Copyright maintained by the ARTIST in the WORKS CANNOT be transferred without the express written consent of the COMPANY. This Agreement shall be binding on any successors of the parties. ARTIST shall not have the right to assign its interests in this Agreement to any other party without the prior written consent of COMPANY.

    C.  If ARTIST creates a new work with a character or storyline that infringes on any of COMPANY's copyrighted properties, ARTIST agrees to transfer any copyright he may have in that new work to COMPANY.

    D.  All future derivative works created by the parties will be defined by the percentages of the copyright and of the net profits defined in Section 1a of this Agreement listed above.

    E.  The ARTIST owns 0% of COMPANY or any COMPANY properties not created by ARTIST.

    F.  The ARTIST hereby confirms that all rights, interests, and licenses relating to the multi-media property "Webcomic Name Game" has been transferred to the COMPANY upon the signing of this agreement and the contract signed between Jason Wiseman and the COMPANY. The ARTIST acknowledges that any money earned on the property "Webcomic Name Game" will be covered by the contract signed between the COMPANY and Jason Wiseman. The ARTIST further agrees that it will be the ARTIST's responsibility to collect any payments potentially due for the property "Webcomic Name Game" from Jason Wiseman whom the COMPANY has already a pre-established agreement and contract signed with. It will be up to the ARTIST to determine with Jason Wiseman what the ARTIST will receive in relation to any royalty payments due from Jason Wiseman in a separate agreement that does not include COMPANY.

    G.  The ARTIST will receive a $3,125 upfront advance against net sales royalties within 30 days of the COMPANY receiving the final files noted above for "Webcomic Name Game" for a game developed with Jason Wiseman and the ARTIST known as Alex Norris of Webcomic Name tentatively titled "Webcomic Name Game" by the COMPANY. The COMPANY will then pay an additional $2,500 to the ARTIST upon delivery to the COMPANY of the final print-ready files, the PSD files, the AI files, the InDesign Files, and any other files pertaining to the game created by the ARTIST and Jason Wiseman.
    H.  ARTIST has the right to pursue his Comic "Webcomic Name" outside of the context of this agreement.

2.  RIGHTS ASSIGNED, CREDITS, AND SERVICES

**GOLDEN BELL AND ALEX NORRIS COLLABORATION AGREEMENT**

A. The Parties shall collaborate in the writing, drawing, illustration, animation if applicable, and sketches of the WORKS.

B. It is understood and agreed that the Parties shall share hereunder, without limit to, unless otherwise herein stated, the proceeds from the sale or any and all other disposition of the WORKS and the rights, interest, and licenses therein and with respect thereto, including but not limited to the following: Comic Book Rights, Motion Picture Rights, Animation Rights, Graphic Rights, Sequel Rights, Remake Rights, Television Rights, Gaming Rights, Film Rights, Stage Rights, Radio Rights, Publication Rights, Interactive Rights, Music Rights, Merchandising Rights, and Digital Rights. ARTIST shall receive 5% of the net profits from the WORKS in relation to the different mediums it will be produced in as stated above. Additionally, COMPANY will also receive 95% net profits from the WORKS in relation to any mediums produced.

C. COMPANY will have the right to exclusively tour select pieces of each of the WORKS to be used for promotion of the WORKS, and also the COMPANY shall have sole ownership of the original artwork used and created for the WORKS by either ARTIST or by COMPANY. Authorship of the WORKS as far as accreditation and creative credits will be determined by COMPANY on a per project basis as other parties may become involved at a future date to help expand the WORKS.

D. COMPANY will exclusively handle all worldwide distribution, production, marketing, reprinting, sales, logistics, warehousing, social media, and publication of the WORKS. COMPANY and ARTIST shall share access to all Social Media accounts with administrative privileges and COMPANY shall be the Domain Registrant and Administrator of any domains.

E. COMPANY shall be the exclusive agent of the Parties for the purposes of sale or other disposition of the WORKS or any rights, interests, or licenses therein. COMPANY will represent all of the Parties in any such sale or disposition with any studio, publisher, agency, distributor, or similar entity.

F. ARTIST and COMPANY will jointly credit each party on all forms of publicity for WORKS, such as on social media, and accreditation.

G. Any proprietary information, trade secrets, and working relationships between ARTIST and COMPANY and its clients must be considered strictly confidential, and may not be disclosed to any third party, either directly or indirectly without prior written consent of COMPANY.

H. ARTIST grants the exclusive license to COMPANY in perpetuity of the WORKS.

I. If, prior to the completion of the WORKS, any of the Parties shall voluntarily withdraw from the collaboration, then the other Party or Parties shall have the right to complete the WORKS alone or in conjunction with another collaborator(s), and ownership of the WORKS will revert solely to that Party or Parties. However, if both parties agree to have an agreement to terminate this agreement, both parties have to be in mutual agreement. This contract can not be broken without the express approval of all parties in a new written contract unless otherwise stated by COMPANY hereinafter.

J. The failure of either party to exercise any of its rights under this Agreement for a breach thereof shall not be deemed to be a waiver of such rights, and no waiver by either party, whether written or oral, express or implied, of any rights under or arising from this Agreement shall be binding on any subsequent occasion; and no concession by either party shall be treated as an implied modification of the Agreement unless specifically agreed in writing.

K. No addendum, amendment of, addition to or modification of this Agreement shall be effective unless reduced to writing and signed by the parties hereto.

**GOLDEN BELL AND ALEX NORRIS COLLABORATION AGREEMENT**

L. Characters in the WORKS may make cameo appearances in COMPANY properties that are owned exclusively by COMPANY such as in promotional material to increase awareness of the WORKS. Characters appearing in WORKS may be used in other properties of COMPANY with no financial obligations to or expectations by ARTIST.

M. ARTIST may not publish, monetize, or reproduce the WORKS without the consent of COMPANY.

A. CREATOR may not create any unaffiliated work that has the potential to damage the WORKS. This will be subjectively decided by the COMPANY based on whether any unaffiliated work is either inappropriate, damaging to the brand, or may potentially impede on any sales of WORKS or properties of COMPANY.

N. COMPANY shall have the right to use, publicly perform, and to license others to use, the ARTIST's name, image, likeness and biographical material for advertising, promotion, publishing publicizing, marketing, distribution, packaging and other exploitation of the WORKS and the other rights granted under this Agreement. COMPANY shall also have the right to use, and to license others to use, the WORKS image, likeness and biographical material for any use.

O. COMPANY has the right to enforce WORKS through legal action on any outside third party without permission from ARTIST.

P. COMPANY has the authority to handle and manage the WORKS in the best interest of the parties. COMPANY may appoint an outside third party such as an attorney or trustee to manage, protect, and enforce the WORKS.

Q. COMPANY may protect, enforce, and pursue any legal action on behalf of the parties in relation to and in any aspect of the WORKS such as the titles, interest, licenses, and rights of WORKS. The COMPANY will hereby take due diligence in protecting the WORKS.

3. SAMPLES AND COMPLETION OF WORKS AND FUTURE WORKS

A. The beginning and samples of the WORKS have been provided by ARTIST to COMPANY as seen attached below.

B. It is contemplated that the WORKS will be completed by the ARTIST. Each of the WORKS will have a set timeline attached to it such as ie. "Webcomic Name Game" to be completed by February 17, 2018; Other works will be discussed as far as deadlines for each of the above WORKS cited.

C. ARTIST shall submit to COMPANY all sequels to the WORKS or other works using characters that appear in the WORKS and any other unrelated characters. COMPANY will take due diligence to copyright all said WORKS with the same percentages and profit splits as discussed above for future works relating to the WORKS above. If COMPANY acquires the NEW WORK, the provisions of this Agreement shall apply to the NEW WORKS.

D. The ARTIST agrees to give the COMPANY a 365-Day option on the ARTIST's next game-length work and book-length work and manuscript-length work on the same terms as this agreement, which option period shall begin on the day the completed manuscript for such work is received by the publisher or 1-Year after the publication of the WORKS covered by the entirety of this agreement.

4. WARRANTIES

A. ARTIST certifies that any material he contributes to the WORKS is their own, that ARTIST has good title to the copyright for that material, free of all liens and encumbrances, and/or ARTIST is authorized to contribute that material to the WORKS. ARTIST certifies that rights herein are not subject to a prior agreement and that the WORKS is original and not in public domain; that it does not violate the right of privacy of any person; that it contains no libelous, obscene, or other unlawful matter; and that it does not infringe upon the copyright or violate any other right of any person or party. ARTIST will indemnify COMPANY from any damage or loss, including attorney's fees, arising out of breach of this warranty. Additionally, ARTIST certifies is the owner of all the rights granted to the COMPANY, and

**GOLDEN BELL AND ALEX NORRIS COLLABORATION AGREEMENT**

has full power to enter into this agreement. The ARTIST agrees to hold the COMPANY harmless against any damages, including attorney's fees, finally sustained in any suit involving the COMPANY or its licensees by reason of a violation of any of these warranties. ARTIST represents and warrants to COMPANY that the ARTIST concepts, ideas, copy sketches, artwork, electronic files, and other materials produced do not infringe on any copyright or personal or proprietary rights of others, and that ARTIST has the unencumbered right to enter into this AGREEMENT.

B. ARTIST agrees that during the existence of this Agreement, ARTIST will not prepare or cause to be prepared or published in ARTIST name or otherwise under a potential pen name, any work that shall interfere with or injure the sale or distribution of the WORKS herein specified, unless such work is offered to the COMPANY to publish. This includes any styles created by the ARTIST or other unassociated work that the ARTIST is involved with at any point in time now or later.

C. ARTIST recognizes that ARTIST has and will have information regarding the COMPANY activities and the WORKS and other vital information items (collectively, "INFORMATION") which are valuable, special and unique assets of COMPANY. ARTIST agrees that ARTIST will not at any time or in any manner, either directly or indirectly, divulge, disclose, or communicate any INFORMATION to any third party without the prior written consent of COMPANY. ARTIST will protect the INFORMATION and treat it as strictly confidential. A violation by ARTIST of this paragraph or agreement shall be a material violation of this agreement and will justify legal and/or equitable relief.

D. If it appears that ARTIST has disclosed (or has threatened to disclose) INFORMATION in violation of this agreement, COMPANY shall be entitled to an injunction to restrain ARTIST from disclosing, in whole or in part, such INFORMATION, or from providing any services to any party to whom such INFORMATION has been disclosed or may be disclosed. COMPANY shall not be prohibited by this provision from pursuing other remedies, including but not limited to a claim for losses and damages.

E. The ARTIST agrees not to make any statements, written or verbal, or cause or encourage others to make any statements, written or verbal, that defame, disparage or in any way criticize the personal or business reputation, practices, or conduct of COMPANY, its employees, directors, officers, licensors, licensees, services, products, or any other affiliated or third party related in some way to the COMPANY. Any posts made public or private by ARTIST must be submitted for approval by COMPANY. The ARTIST acknowledges and agrees that this prohibition extends to statements, written or verbal, made to anyone, including but not limited to, the news media, investors, potential investors, any board of directors or advisory board or directors, industry analysts, competitors, strategic partners, vendors, employees (past and present), and the ARTIST understands and agrees that this paragraph is a material provision of this agreement and that any breach of this paragraph or otherwise herein this agreement shall be a material breach of this agreement and will justify legal and/or equitable relief by the COMPANY due to the understanding that one of the parties would be irreparably harmed by violation of this provision.

F. ARTIST understands that in the event ARTIST breaches this agreement, COMPANY may suffer irreparable harm and will, therefore, be entitled to injunctive relief including legal fees without the posting of a bond or other guarantee, to enforce this agreement. This provision is not a waiver of any other rights which the ARTIST has given to the COMPANY in this agreement, including the right to recover attorney's fees and costs to cover the expenses it incurs in seeking to enforce this agreement, as well as to any other remedies available to it, including money damages.

G. The parties agree to enter into a confidential relationship with respect to the disclosure of certain proprietary and CONFIDENTIAL INFORMATION specifically relating to properties including but not limited to the WORKS, or new ventures managed and wholly or solely owned by the COMPANY. For purposes of this Agreement, "CONFIDENTIAL INFORMATION" shall include all information or material that has or could have commercial value or other utility in the business in which the ARTIST is engaged by the COMPANY, or if the ARTIST approaches COMPANY about either the WORKS or other related and unrelated creations and intellectual property; this also will apply to anything that is divulged to the ARTIST by the COMPANY either written, oral, or otherwise. The ARTIST shall hold and

maintain the CONFIDENTIAL INFORMATION in strictest confidence for the sole and exclusive benefit of the COMPANY. ARTIST shall carefully restrict access to CONFIDENTIAL INFORMATION to employees, contractors, and any third parties as is required or requested by the COMPANY, and the ARTIST shall require those said persons to sign nondisclosure restrictions and agreements at least as protective as those in this agreement for the COMPANY and delivered to COMPANY. However, no such third party agreements may be entered or otherwise brought to the attention of a third party without the ARTIST first consulting and requesting permission by the COMPANY which will be signed in writing prior to any approval. ARTIST shall return to COMPANY any and all records, notes, files, and any other written, printed, digital, tangible, or intangible materials in ARTIST's possession pertaining to CONFIDENTIAL INFORMATION or any other requested materials immediately at the request of the COMPANY. This provision is not a waiver of any other rights which the ARTIST has given to the COMPANY, including the right to recover attorney's fees and costs to cover the expenses it incurs in seeking to enforce this agreement, as well as to any other remedies available to it, including money damages. The ARTIST understands and agrees that this paragraph is a material provision of this agreement and any breach of this paragraph or in this agreement shall be a material breach and will justify legal and/or equitable relief by the COMPANY. This provision and the entirety of Section 4 (Warranties) shall survive the termination of this agreement in perpetuity.

5. CHOICE OF LAW

    A.   This Agreement shall be interpreted according to the laws and statutes of the United States of America and of the State of New York, except that its conflicts of law provisions shall not apply. Any litigation relating to this Agreement shall be pursued in the State of New York.

    B.   In the event one or more clauses of this Agreement are declared invalid, void, unenforceable or illegal, that shall not affect the validity of the remaining portions of this Agreement.

    C.   This Agreement sets forth the entire agreement of the parties, and replaces and supersedes any previous agreement between the parties on the subject, whether oral or written, express or implied.

    D.   Should any part of this agreement be held by a court of law to be invalid, that specific part of the agreement should be severed from the remainder of this Agreement and that remainder shall remain in force and operation between the parties. No allowance by either ARTIST or COMPANY shall be seen as a waiver of any rights contained in this agreement nor novation thereof. This agreement cannot be altered save in writing, same being signed by both ARTIST and COMPANY.

    E.   Any of the PARTIES or signatory of the PARTIES that signs this AGREEMENT is bound to this AGREEMENT.

6. COMPLIMENTARY COPIES

    A.   Complimentary copies of the WORKS will be sent at the expense of COMPANY to any and all awards shows that are deemed appropriate by COMPANY for that work, as well as advance copies to News Sites and other media affiliated companies that will be decided upon by COMPANY.

    B.   The ARTIST will be given a reasonable number of items of each product produced free of charge courtesy of the COMPANY at the time of the WORKS release. This will range from at least 725 physical copies of each of the game "Webcomic Name Game" in printed form, as well as the ARTIST will receive only 10 free copies of a licensed property relating to the WORKS and not any free copies of other properties produced by COMPANY that are not related to the WORKS.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement the day and year first above written and shall be interpreted under the laws of the State of New York. Signed:

_____                             _____

**GOLDEN BELL AND ALEX NORRIS COLLABORATION AGREEMENT**

Golden Bell Entertainment, LLC                                Alex Norris, Artist
By: Marc Goldner



 Audit Trail

| | |
|---|---|
| **TITLE** | Webcomic Name Game Contract |
| **FILE NAME** | Webcomic Name Game.pdf |
| **DOCUMENT ID** | 62ab6d4a34a2243eb2d915f954b1d00c6f2e74d2 |
| **STATUS** | ● Completed |

## Document History

**07/11/2017**
15:27:14 UTC-5
Sent for signature to Golden Bell (marc@goldenbell.tv) and Alex Norris (alexanderdnorris@gmail.com)
IP: 184.53.0.71

**07/11/2017**
15:43:25 UTC-5
Viewed by Alex Norris (alexanderdnorris@gmail.com)
IP: 147.147.155.47

**08/10/2017**
09:49:41 UTC-5
Signed by Alex Norris (alexanderdnorris@gmail.com)
IP: 37.152.208.178

**08/10/2017**
14:14:07 UTC-5
Viewed by Golden Bell (marc@goldenbell.tv)
IP: 107.5.155.204

**08/10/2017**
14:27:57 UTC-5
Signed by Golden Bell (marc@goldenbell.tv)
IP: 107.5.155.204

**08/10/2017**
14:27:57 UTC-5
The document has been completed.