UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ALEXANDER NORRIS, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action No.  1:19-CV-05491 – PAE |
| | : | |
| Marc Goldner, Individually and as Officer of | : | |
| GOLDEN BELL ENTERTAINMENT, LLC, a | : | |
| California company and GOLDEN BELL | : | |
| STUDIOS, LLC, GOLDEN BELL | : | |
| ENTERTAINMENT, LLC., a California | : | |
| Company and GOLDEN BELL STUDIOS, | : | |
| LLC., | : | |
| | : | |
| Defendants, | : | |
| | : | |
| | : | |


**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR REPLY
MOTION FOR LEAVE TO AMEND ANSWER AND TO ADD COUNTERCLAIMS**

## <u>TABLE OF CONTENTS</u>

ARGUMENT ..........................................................................................................................1

    I.    Defendants have established Good Cause to Amend the Complaint. ...................................1

    II.   There is no Prejudice to Plaintiff. ......................................................................................2

    III.  The "First to File Rule" is not Applicable. .........................................................................3

    IV.  Defendants' Proposed Counterclaims are not Meritless. .....................................................4

    V.   Ongoing Breaches. ............................................................................................................9

CONCLUSION ....................................................................................................................10

# TABLE OF AUTHORITIES

Cases

*Adam v. Jacobs*,
    950 F.2d 89 (2d Cir. 1991)..................................................................................... 3

*BDCM Fund Adviser, L.L.C. v. Zenni*,
    103 A.D.3d 475, 962 N.Y.S.2d 11 (1st Dept. 2013)................................................ 6

*Cahill v. O'Donnell*,
    75 F.Supp.2d 264 (S.D.N.Y.1999) ........................................................................ 2

*City of New York v. Exxon Corp.*,
    932 F.2d 1020 (2d Cir. 1991)................................................................................. 4

*Enzymotec Ltd. v. NBTY, Inc.*,
    754 F. Supp. 2d 527 (E.D.N.Y. Dec. 7, 2010) ...................................................... 2

*Feuer v. Cornerstone Hotels Corp.*,
    2017 WL 3841841 (E.D.N.Y. Aug. 4, 2017)......................................................... 2

*Gullo v. City of New York*,
    540 F. App'x 45 (2d Cir. 2013) .............................................................................. 2

*Jill Stuart (Asia) LLC v. Sanei Int'l Co.*,
    2013 WL 3203893 (S.D.N.Y. June 17, 2013) ....................................................... 5

*Kassner v. 2nd Ave. Delicatessen Inc.*,
    496 F.3d 229 (2d Cir. 2007).................................................................................... 1

*Mohegan Lake Motors, Inc. v. Maoli*,
    2018 WL 4278352 (S.D.N.Y. June 8, 2018) ......................................................... 1

*Morrison v National Broadcasting Co.*,
    19 NY2d 453 [1967] ............................................................................................... 9

*NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*,
    262 F. Supp. 2d 134 (S.D.N.Y. 2003).................................................................... 2

*Nat'l Equip. Rental, Ltd. v. Fowler*,
    287 F.2d 43 (2d Cir. 1961)..................................................................................... 3

*Penn Warranty Corp. v. DiGiovanni*,
    10 Misc. 3d 998, 810 N.Y.S.2d 807 (Sup. Ct. 2005)............................................. 9

*Scott v. Chipotle Mexican Grill, Inc.*,
    300 F.R.D. 193 (S.D.N.Y. 2014) ........................................................................... 3

*Smith v. New York City Dep't of Educ.*,
    524 Fed. Appx. 730 (2d Cir. 2013)......................................................................... 2

*Smith v. Positive Prods.*,
    419 F. Supp. 2d 437 (S.D.N.Y., Sept. 28, 2005) ................................................... 6

*Topps Co., Inc. v. Cadbury Stani S.A.I.C.*,
    2002 WL 31014833 (S.D.N.Y. Sept. 10, 2002)..................................................................... 4

*United States Sec. & Exch. Comm'n v. Collector's Coffee Inc.*,
    2021 WL 2476515 (S.D.N.Y. June 17, 2021) ...................................................................... 2

Defendants Marc Goldner, Golden Bell Entertainment, LLC and Golden Bell Studios, LLC (collectively, hereinafter "Defendants"), by and through their undersigned counsel, hereby submits this memorandum of law in reply in further support of Defendants' motion for leave to amend their answer and assert counterclaims.

## ARGUMENT

### I.      Defendants have established Good Cause to Amend the Complaint.

Rather than viewing the reasons for delay as Defendants' presented them, as a cumulative effort, Plaintiff has improperly parsed each reason out to stand on its own. The reasons for delay each aided and built on top of each other. Further, Plaintiff's arguments often fall short of their intended result. For instance, in response to Defendants' opting to pursue settlement rather than pursue counterclaims and increase the tension between parties, Plaintiff's note that progress was made on the case because Plaintiff amended their complaint in August of 2020 and Defendants' answered. ECF Doc 122 at 8. One pleading in over two years hardly constitutes "pushing the case forward." With respect to Plaintiff's assertions about Covid-19 and Defendants' operating *pro se*, Plaintiff improperly attempts to point to actions taken well beyond the scope of this case, as if they are somehow relevant to pursuing counterclaims. For instance, Plaintiff notes that Defendants' applied for a loan for the Small Business Administration in June of 2020. *Id.* at 10. Plaintiff additionally points to filings by Defendant Goldner in other matters in S.D.N.Y., as if that somehow has a bearing on the matter at hand. *Id*. at 11.

Additionally, none of Plaintiff's cited authorities compel the Court to deny Defendants' motion, but rather insist that Court's were within their discretion in doing so. See *Mohegan Lake Motors, Inc. v. Maoli*, 2018 WL 4278352, at *5 (S.D.N.Y. June 8, 2018);*Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007);*Gullo v. City of New York*, 540 F. App'x 45, 47

1

(2d Cir. 2013);*Feuer v. Cornerstone Hotels Corp.*, 2017 WL 3841841, at \*4 (E.D.N.Y. Aug. 4, 2017), *report and recommendation adopted*, 2017 WL 3842350 (E.D.N.Y. Aug. 31, 2017) (*citing Smith v. New York City Dep't of Educ.*, 524 Fed. Appx. 730, 733 (2d Cir. 2013); *Enzymotec Ltd. v. NBTY, Inc.*, 754 F. Supp. 2d 527, 537 (E.D.N.Y. Dec. 7, 2010). Defendants' believe they have shown good cause to amend the complaint, and that the Court is well within their discretion to allow them to do so.

## II.  There is no Prejudice to Plaintiff.

Plaintiff's attempts to show prejudice fall short both as a matter of fact and a matter of law. First, Plaintiff's state that the pre-motion letters filed with the court can amount to summary judgment motions being filed. However, the case cited to support this argument does not stand for the proposition that Plaintiff is asserting. In *Collector's Coffee*, the Court assessed the merits of the parties positions that were stated in the pre-motion letters, and determined that there was a clear dispute of fact, and that neither party would succeed on summary judgment. *United States Sec. & Exch. Comm'n v. Collector's Coffee Inc.*, 2021 WL 2476515, at \*2 (S.D.N.Y. June 17, 2021). The Court therefore decided to deem the pre-motion letters as fully submitted motions rather than engage in lengthy motion practice. *Id*. That is not the scenario at hand in this matter. If the Court had deemed the pre-motion letters as fully submitted motions, then there would be no need for the motion practice order by the Court on September 16, 2022. See ECF Doc 110. As such, Plaintiff cannot allege that summary judgment motions had been submitted. Even "starting the summary judgment process" does not amount to "filing" a summary judgment motion, as was the case in Plaintiff's cited authorities. *NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*, 262 F. Supp. 2d 134, 151 (S.D.N.Y. 2003); *Cahill v. O'Donnell*, 75 F.Supp.2d 264, 279 (S.D.N.Y.1999). At the time Defendants' sought leave to amend, summary judgment motions had yet to be filed.

Plaintiff's argument that further discovery will result in prejudice is similarly misguided. First, Plaintiff's attempt to deflect from ignoring Defendants' request for production, by stating that "Plaintiff responded to those requests and produced responsive documents more than a year ago." However, this does not acknowledge the Requests for Production served on Plaintiff on August 12, 2022. Rather than acknowledge these requests by way of response or objection, Plaintiff simply chose to ignore them. However, in contradiction to Plaintiff's current position, Plaintiff acknowledged these requests prior in their September 14, 2022 letter to the court. While Plaintiff is correct that the stages of discovery in *Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193 (S.D.N.Y. 2014) is different from where the current matter is at, it does not affect the logic of the holding, which states "even when a party is required to expend additional time, effort, and expenses, the burden of undertaking discovery alone does not amount to substantial prejudice." *Id*. Because Plaintiff has rested on this issue to show prejudice, they have fallen short.

### III.     The "First to File Rule" is not Applicable.

Plaintiff asserts that a separate lawsuit cannot proceed as a result of the "first-to-file" rule. However, Plaintiff's argument shows a clear misunderstanding of how this rule is applied. Indeed, Plaintiff's state that the rule is invoked "even where the second action is filed in a different jurisdiction," while pointing out that the authorities originally cited by defendants do not discuss the "first to file" rule at all. See *Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir. 1991); *Nat'l Equip. Rental, Ltd. v. Fowler*, 287 F.2d 43, 46 (2d Cir. 1961). However, the reason these authorities do not discuss the rule is because the rule is **only** applied where the subsequent case is filed in another district. "The 'first filed' rule states that 'where an action is brought in one federal district court and a later action embracing the same issue is brought in **another** federal court, the first court has jurisdiction to enjoin the prosecution of the second action." *City of New York v. Exxon Corp.*, 932 F.2d 1020,

3

1025 (2d Cir. 1991). The "first-to-file" rule was meant to prevent forum shopping and impede parties from relieving courts of jurisdiction of already filed cases. However, it is inapplicable in the current situation, as Defendants' intend to file a parallel suit in this Court. Indeed, every authority cited by Plaintiff involves two cases filed in separate districts. Plaintiff has failed to cite an applicable case, nor is Defendant aware of one, in which the case was stayed or dismissed under the first to file rule where both cases were filed in the same district court.

Because the "first-to-file" rule is inapplicable, there is no reason why Defendants' parallel suit would not be allowed to proceed. Thus, the Court must balance any potential prejudice to Plaintiff, "against the court's interest in litigating all potential claims in a single action." *Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 2002 WL 31014833 (S.D.N.Y. Sept. 10, 2002).   Indeed, another suit would not only involve substantial discovery beyond what Plaintiff is claiming as prejudice currently, but additional motion practice, witness prep, trial preparation, as well as the expenditure of additional judicial resources. Rather, it is clear that the Court's interest in litigating all potential claims in a single action far outweighs any alleged prejudice to Plaintiff.

## IV.    Defendants' Proposed Counterclaims are not Meritless.

### *Breach of Contract*

Plaintiff's argument that Defendants' breach of contract claims are meritless can be summed up as illogical. First, Plaintiff cherry picks just two of the several contract provisions at issue. Specifically, Plaintiff points to provisions 2(D) and 3(D) of the Agreement. Plaintiff then alleges that there can be no breach of these provisions because "each of those provisions are dependent on the 'WORKS' actually existing, and because the WORKS do not exist, there can be no breach." First, Plaintiff patently ignores provision 3(B) of the agreement which required Plaintiff to complete the WORKS, a requirement he failed to perform.

With respect to section 2(D) of the contract, Plaintiff is again confusing the words "exist" with the words complete. The WORKS indeed existed in several forms, such as draft files of the game and prototypes of the stuffed animals and plushies. Though the game may not have been complete, as Plaintiff failed to deliver the necessary final files, it did indeed 'exist.' Further, the stuffed animals and plushies were complete, but had not yet been mass produced for distribution. Nonetheless, there is nothing in Section 2(D) which requires that the WORKS be completed prior to Plaintiff sharing social media access. Rather, that section states simply "COMPANY and ARTIST shall share access to all Social Media accounts with administrative privileges and COMPANY shall be the Domain Registrant and Administration of any domains." Basic contract interpretation makes clear that there is no requirement of completion of the WORKS as Plaintiff seems to allege, but rather that this provision took effect immediately upon the execution of the contract. See Goldner Decl. at ¶ 8.

Plaintiff's arguments with respect to Section 3(D) of the Agreement are similarly misguided. Despite alleging that the WORKS need to exist for this provision to take effect, the basic interpretation of the provision says otherwise. Indeed, as Plaintiff even quotes, the one year option on Plaintiff's next book-length or manuscript-length work "shall begin on the day the completed manuscript for such work is received by the publisher **or** 1-Year after the publication of the WORKS covered by the entirety of this agreement." *Id*. at ¶ 7. Plaintiff clearly chose to ignore the obvious structure of the sentence, only giving weight to what came after the word 'or'.

Finally, Plaintiff's argument that Defendants' have failed to allege sufficient damages is rebutted by their own authorities. First, *Jill Stuart (Asia) LLC v. Sanei Int'l Co.*, 2013 WL 3203893, at *4 (S.D.N.Y. June 17, 2013), was decided at the summary judgment stage, when discovery had been exchanged and the parties had the opportunity to present full proof of damages. Second, *Jill*

5

*Stuart*, makes clear that lost or future profits are recoverable provided they are "proven with reasonable certainty and 'be capable of measurement based upon known reliable factors without undue speculation." *Id*. Defendants' are confident in their ability to meet this burden, not only through lost profits from sale of the WORKS, but also from sales of "Oh No," which rightfully belonged to Defendants' before Plaintiff allowed Andrews McMeel to publish the book.

Plaintiff similarly contradicts themselves with respect to reputational damages. Plaintiff's cite *Smith v. Positive Prods.*, 419 F. Supp. 2d 437, 453 (S.D.N.Y., Sept. 28, 2005) for the proposition that reputation damages are not recoverable in breach of contract claims, only to contradict themselves in the parenthetical, quoting the case that "[d]amages to reputation ***generally*** are not recoverable in a breach of contract action under New York law." See ECF Doc 122(emphasis added). Indeed, as Smith makes clear, reputation damages are recoverable in breach of contract when a party can prove "specific business opportunities lost as a result of its diminished reputation," as Defendants' allege here. *Smith* at 453.

### Tortious Interference & Non-Disparagement Claim

Plaintiff's have failed to show why both the tortious interference and breach of the non-disparagement clause in the agreement are meritless. Plaintiff's Facebook post is clearly disparaging to Defendants, in violation of the non-disparagement clause. This satisfies the "specificity" requirement spelled out in *BDCM Fund Adviser, L.L.C. v. Zenni*, 103 A.D.3d 475, 478, 962 N.Y.S.2d 11, 15 (1st Dept. 2013) for non-disparagement clauses. With respect to the damages sustained by Plaintiff's breach of the non-disparagement clause, Defendants' have suffered reputational damages, which as discussed above, are recoverable provided that specific business opportunities can be proven as lost as a result of the diminished reputation. The partnership with EnzoComics is one such example. Jason Wiseman terminating his working relationship with

Defendants', with whom Defendants had a number of projects with, the day Plaintiff posted disparaging comments is another.

In addition to the specified statement above, Plaintiff intentionally interfered with a prospective economic opportunity to work with EnzoComics. Plaintiff's cited authorities do not seem to support this notion that alleging disparaging comments on information and belief, in addition to the disparaging Facebook post, is insufficient. *BDCM Fund Adviser* does not seem to impart the same specificity requirement to a tortious interference of a prospective economic advantage cause of action. *Id.*

### Copyright Infringement

Despite Plaintiff's assertion that there can be no copyright infringement because the WORKS were not a "work made for hire," Plaintiff is mistaken that the Collaboration Agreement does not vest ownership of the copyright to the Defendants. Section 1(A) clearly transfers 100% of the copyright and trademark in the WORKS to Defendants. Section 1(C) notes that any work with a character or storyline that infringes on any of Defendants' copyrighted property is created by Plaintiff, Plaintiff agrees to transfer the copyright of the new work to Defendants. Goldner Decl. at ¶ 9. Section 1(D) states that "all future derivative works created by the parties will be defined by the percentages of the copyright and of the net profits defined in Section 1a of this Agreement listed above." *Id* at ¶ 10.  Section 2(B) assigns intellectual property rights to a number of mediums to Defendants including but not limited to comic rights, book rights, movie rights, and animation rights, among others. *Id.* At ¶ 13. Section 2(C) states that "COMPANY shall have sole ownership of the original artwork used and created for the WORKS by either ARTIST or by COMPANY." *Id*. at ¶ 15. Section 2(I) states that "if, prior to the completion of the WORKS, any of the Parties shall voluntarily withdraw from the collaboration, then the other Party or Parties shall have the

right to complete the WORKS alone or in conjunction with another collaborator(s), and ownership of the WORKS will revert solely to that Party or Parties." *Id*. at ¶ 17. Section 3(C) states that "ARTIST shall submit to COMPANY all sequels to the WORKS or other works using characters that appear in the WORKS…COMPANY will take due diligence to copyright all said WORKS with the same percentages and profit splits as discussed above for future works relating to the WORKS above." *Id*. at ¶ 13. These provisions make clear that all of the artwork, characters, and storylines meant for the WORKS were the property of Defendants. It is also clear that all sequels or derivative works containing art or characters meant for the WORKS belong to Defendants. The lack of completion and publication does not prevent this, as the art, characters, and storylines were indisputably created and are in existence.

### *Trademark Infringement*

Defendants' inadvertently omitted causes of action for trademark infringement in their initial proposed counterclaims, yet nonetheless believe there is a valid cause of action for such under the same line of reasoning for that of copyright infringement, as well as discussed in their motion in opposition for summary judgment and cross motion for summary judgment. As has been established, Defendants applied for and were granted a trademark under Mark 281 by the USPTO. Despite Plaintiff attempting to cancel this mark, this is indeed a valid trademark. By way of the Agreement, Defendants are the lawful owner of the mark. Additionally, it has been used in commerce. The characters the "pink blob" and "orange blob," who also appear in artwork meant for both the game and stuffed animals, are seen uttering the phrase "Oh No" alongside a tag "artwork courtesy of Webcomic Name" on a card contained in the game Pretending to Grownup. Goldner Decl. ¶ 18. This card is one of the main game cards in the Pretending to Grownup card game *and* is also featured in products used by Golden Bell Studios to promote the Pretending to

Grownup game, such as being displayed on Amazon.com alongside the game. Pretending to Grownup has sold no less than 7,940 units to date with a gross revenue of $204,474.75 and is still available for purchase from a number of different outlets, such as goldenbelldirect.com, amazon.com, walmart.com, and was once stocked in physical retail stores such as Hot Topic. *Id.*

## V.   Ongoing Breaches.

Since the filing of the initial motion, it has come to Defendants' attention that Plaintiff continues to engage in actions that can be deemed a breach of the non-disparagement clause contained within the Agreement, in addition to amounting to a cause of action for defamation, libel, and trade libel. Defamation is the injury to one's reputation, either by written expression (libel) or oral expression (slander). (*Morrison v National Broadcasting Co.*, 19 NY2d 453 [1967].) The elements of libel are: (1) a false and defamatory statement of fact; (2) regarding the plaintiff; (3) which is published to a third party; and which (4) results in injury to plaintiff. *Penn Warranty Corp. v. DiGiovanni*, 10 Misc. 3d 998, 1003, 810 N.Y.S.2d 807, 814 (Sup. Ct. 2005). Statements that tend to injure a party's business, trade, or profession are considered libelous per se. *Id*. Further, trade libel occurs when Trade libel is the knowing publication of false and derogatory material regarding one's business, that is calculated to prevent others from doing business with the defamed party or otherwise interferes with one's business relationships. *Id.*

Plaintiff is currently operating a GoFundMe in attempts to obtain funds to pay for his legal fees in this matter. In the description of the GoFundMe, Plaintiff states that "[i]t arose out of an agreement to make a boardgame based on my webcomic in 2017 but the publishing company has used this as an opportunity to take all of my intellectual property…." See Goldner Decl. at ¶ 19. Plaintiff is incorrectly characterizing and accusing, in a public forum, Defendants' of being thieves, when in reality they were merely operating pursuant to a validly executed agreement.

Plaintiff's false accusations have led to thousands of hateful emails being sent to Defendants' and have irreparably harmed their relationship within the community. *Id* at ¶ 20. The 'reach' of this message had reached an estimate of millions of people based on the follower counts of the influencers who shared it, the retweets, posts, and other forms of interaction with the posts relating back to the GoFundMe.

Plaintiff has and continues to show a willful disregard for abiding by the terms of the Collaboration Agreement and seems intent on continuing to try the matter in the court of public opinion, where Defendants have little to no recourse. As a result, new evidence is continuing to accrue almost daily. Plaintiff's actions further show the need for the Court to grant Defendants' request to amend their answer and add counterclaims, allowing them some recourse against Plaintiff's false and disparaging statements, amongst other causes of action.

## **CONCLUSION**

For the above stated reasons, Defendants respectfully request that the Court grant their motion for leave to amend the pleadings for the purposes of adding counterclaims.

Dated: December 16, 2022         GERARD FOX LAW P.C.
New York, New York

        */s/ Ryan P. Dolan*
        Ryan P. Dolan
        Gerard P. Fox
        1345 Sixth Avenue, 33rd Floor
        New York, New York 10105
        Telephone: (310) 441-0500
        Facsimile: (310) 441-4447
        gfox@gerardfoxlaw.com
        rdolan@gerardfoxlaw.com

        *Attorneys for Defendants*

10