EXHIBIT – 4 –



# AGREEMENT

**THIS AGREEMENT** made as of ___OCT. 31___, 2017, between Andrews McMeel Publishing, a division of Andrews McMeel Universal, 1130 Walnut Street, Kansas City, Missouri 64106 ("Publisher"), and Alex Norris c/o The Bent Agency, 19 W. 21st St. #201, New York, NY 10010 ("Author"), with respect to a book tentatively entitled *oh no* consisting of collection of installments of *oh no* comic strips ("Work").

1.      **Grant of Rights.** The Author grants to the Publisher, throughout the world and during the full term of copyright of the Work and all renewals and extensions, the sole and exclusive rights (i) to publish, republish, distribute, transmit, and sell the Work, including any derivative works authorized hereunder, in book form, and (ii) to license others to do all of the foregoing. The rights granted to Publisher hereby include, without limitation, the following rights throughout the world (and the right to license others to exercise or exploit such rights):

(a)      The right to publish and distribute the Work, or any portion thereof, in non-dramatic electronic or digital form, whether on floppy disks, CD-ROM, via download or display on the internet, or handheld or similar devices, or by any other method or manner now known or hereafter devised for distribution by electronic, digital, or other similar means intended to make the Work available in non-game, non-dramatic visual form for reading without enhancement or inclusion of other audible or visual material (the "Electronic Rights");

(b)      Foreign language rights;

(c)      Periodical or newspaper rights prior to or following book publication, including syndication rights; and

(d)      Non-dramatic audio recording rights subject to Author's approval of the narrator of any such edition, said approval not to be unreasonably withheld, conditioned, or delayed.

All rights not specifically granted to the Publisher herein are reserved to the Author for the Author's sole use and disposition. Such reserved rights include, but are not limited to, motion picture, television, cable, DVD, radio, video, live stage, and ancillary dramatic adaptation rights, interactive multimedia rights and commercial and merchandising rights, and the right to publish or cause to be published in any form (except in readable form for sale to the public), excerpts from and/or summaries of the Work and/or novelizations of dramatized versions of the Work such as "made-for-television" movies or motion pictures; such

AN3622

excerpts, summaries and/or novelizations shall be used only for advertising and exploitation of such dramatizations, television movies and/or motion pictures and shall not exceed ten percent (10%) of the text of the Work.

2. **Delivery of Manuscript; Alterations.**

(a)     The Author shall deliver to the Publisher on or before October 2, 2017, one computer disk or other electronic format and/or one printed copy of the complete manuscript of the Work, in each case in content, form, and specification prescribed by the Publisher.  The Author shall provide promptly at their own expense, all drawings, photographs, maps, charts, or indexes essential to the Work and, if Author does not provide such mutually agreed upon material, it may be supplied by the Publisher and charged to the Author at cost following Publisher's delivery to Author of documentation of such third-party costs.  The Author shall secure at their own expense the necessary permissions to reprint any material provided by the Author, textual or graphic, and shall deliver such permissions in form and content acceptable to the Publisher with the final manuscript.  Should the Author fail to deliver the Manuscript and all mutually agreed upon illustrations, supplementary materials, and permissions in the manner specified herein within fourteen (14) days of being notified of such failure by the Publisher, the Publisher may decline to publish the Work.  The provisions as to content and form of the Work are material terms of this Agreement and the time of delivery of such manuscript shall be of the essence.

(b)     The Author shall read and return promptly to the Publisher the proofs of the Work. The printer's charges for Author's proof corrections exceeding ten percent (10%) of the cost of composition (excluding the cost of correcting printer's and Publisher's errors) shall be chargeable to the Author.  If the Author fails to read the proofs and return them promptly to the Publisher, the Publisher may, in its discretion, either arrange to have the proofreading done by others at Publisher's expense or decline to publish the Work.

(c)     The Publisher shall exercise the same care of any manuscripts, illustrations, or other similar property belonging to the Author received by it under this Agreement as it would take of its own property. Author shall retain a copy of all such material and Publisher shall not be liable for any loss or damage to same.  Publisher may retain the Manuscript (in whatever form delivered to Publisher) for archival purposes.

(d)     Within ninety (90) days of the delivery to Publisher of the manuscript, supplementary materials, and permissions, Publisher shall notify

AN3623

Author whether the manuscript is, in the Publisher's editorial judgment, complete and satisfactory and, if not, the changes that Publisher seeks Author to make. If Author does not make such changes within thirty (30) days after receipt of such request, or if any such changes are not deemed editorially satisfactory to Publisher, then Publisher may decline to publish the Work.

(e)     If Publisher declines to publish pursuant to any provision of this Section 2, then promptly upon demand by Publisher, Author shall return to Publisher any monies advanced by Publisher to Author. If the Publisher chooses to terminate the agreement pursuant to any provision of this Section 2, the Author shall use their best efforts to sell the Work or any portion of it elsewhere and shall repay any and all sums paid to them under this Agreement out of the first and subsequent payments due them when and if they enter into an agreement with another publisher for the Work. (Such payments from another publisher, up to the total amount of any and all sums paid to the Author under this Agreement, are "First Proceeds.") The Author hereby (1) assigns and transfers to the Publisher the Author's right to receive First Proceeds and (2) authorizes and directs any other publisher from whom the Author is entitled to receive First Proceeds to pay such sums directly to the Publisher. The Author shall repay the Publisher the full amount owed with twelve (12) months of termination regardless of any First Proceeds received.

3.     **Publication.** Subject to the terms and conditions hereof, the Publisher shall publish the Work within one year from the date on which the Publisher, in its discretion, accepts the manuscript as being complete and determines to publish it. Publisher shall make no material changes to the final manuscript without Author's approval (which shall not be unreasonably withheld, delayed, or conditioned). Publisher shall in such event publish the Work, at its own expense, in such style, manner and editions, and at such prices, as Publisher deems advisable. However, Publisher shall provide meaningful consultation with Author regarding the cover, cover copy, and interior design The title shall be subject to Author's approval, which shall not be unreasonably withheld, delayed, or conditioned. Publisher intends to publish the Work as a physical print edition simultaneously with an eBook edition, unless otherwise mutually agreed. Publisher shall also have complete discretion regarding the manner and channels of distribution of the Work (including the manner and means, if any, of exercise of the Electronic Rights). In no event shall the Publisher be required to publish a manuscript that in its opinion contains libelous, obscene or otherwise unlawful matter or that Publisher determines to be unsatisfactory pursuant to subsection 2(d) above. The Publisher shall not be responsible for delays caused by any force majeure events.

AN3624

No third-party advertisements shall be included in the Work without Author approval, which shall not be unreasonably withheld, conditioned, or delayed.

4.     **Marketing.** Publisher shall market the Work to customers in such manner as Publisher determines to be reasonable.  Author shall cooperate with Publisher in marketing the Work as may be reasonably requested by Publisher from time to time.  If Publisher requests that Author travel for the purpose of marketing the Work, the Publisher shall pay for the reasonable, pre-approved expenses of Author in connection with such services and the schedule for such activities will be mutually agreed.  In marketing the Work, Publisher may itself publish or display, or may license others to publish or display, portions of the Work (including without limitation illustrations, covers, designs, and copy from the Work) for such purpose.  Such marketing may include posting of portions of the Work on Publisher's website or via links to websites of others.  Author retains the right to, in consultation with Publisher, to similarly post not more than ten percent (10%) of the Work on Author's website or via links to websites of others.  In the event that Publisher receives revenue in connection with such marketing, Publisher shall pay Author fifty percent (50%) of the Publisher's Net Receipts, as defined below.

5.     **Royalties.** The Publisher shall pay the Author the following royalties:

(a)     On sales in the United States of America of copies of the regular trade edition(s) of the Work in print (except as set forth below for Special Sales):

i.     As to the hardcover edition, if any, twenty percent (20%) of the Net Receipts on the first 25,000 copies and twenty-five percent (25%) thereafter;

ii.     As to the paperback edition, if any, twenty percent (20%) of the Net Receipts on the first 25,000 copies and twenty-five percent (25%) thereafter;

(b)     With respect to the following sales of the Work in print, (i) sales for proprietary or customer branded versions of the Work subject to Author approval, which shall not be unreasonably withheld, conditioned, or delayed; (ii) premium sales (that is, sales for packaging and/or resale in combination with other products or as a marketing specialty item) subject to Author approval, which shall not be unreasonably withheld, conditioned, or delayed; (iii) non-returnable sales at substantial discounts (more than seventy percent (70%) off list price); (iv) sales by direct mail or circularization; (v) sales through newspapers; and (vi) sales by mail order (sales identified in this subsection 5(b) shall be referred to as "Special Sales"), five percent (5%) of the Publisher's Net Receipts;

AN3625

(c)     On sales of print versions of the Work through Publisher's website, twenty percent (20%) of the Net Receipts on the first 25,000 copies and twenty-five percent (25%) thereafter;

(d)     On sales of electronic versions (per Section 1(a)) of the Work through Publisher's or a third-party website, twenty-five percent (25%) of the Publisher's Net Receipts.   If at any time during the term of this Agreement, the standard royalty rate paid by the Publisher to its authors for electronic versions (per Section 1(a)) is more favorable to the Author than the rate provided for herein, such more favorable rate shall apply to the Author's electronic versions (per Section 1(a)) subsequently sold under the terms of this Agreement.  For sake of clarity, said more favorable rate, if any, would be applied beginning at the start of the first accounting period coming after the standard royalty rate were to become more favorable to Author.  Further, The Publisher will, at Author's request, but no sooner than two (2) years from first publication of the Work, renegotiate said royalty rate in good faith;

(e)     On copies sold for export, including to Canada, ten percent (10%) of the Publisher's Net Receipts;

(f)     On reprint edition rights licensed to another publisher subject to Author approval, which shall not be unreasonably withheld, conditioned, or delayed, fifty percent (50%) of the Publisher's Net Receipts;

(g)     On all copies sold by the Publisher to book clubs, the Publisher shall pay Author ten percent (10%) of the Net Receipts received by Publisher in connection with such sale.  If the Publisher grants to a book club a sublicense of book club rights to permit the book club to print its own copies of the Work Publisher shall pay Author fifty percent (50%) of any rights or similar fee received under any such sublicense;

(h)     On sales of anthology*, selection, abridgment*, condensation*, digest*, and second serial rights (unless such rights have been retained by the purchaser of first serial rights), fifty percent (50%) of the Publisher's Net Receipts (*subject to Author approval, which shall not be unreasonably withheld, conditioned, or delayed);

(i)     On copies damaged or destroyed, or given to the Author, or to reviewers, or for samples or advertising, or to booksellers in connection with such offers as one free copy for each ten purchased, or for like purposes tending to promote the sale and distribution of the Work, or on license to non-profit

AN3626

organizations for publication in Braille, large type, or by photographing, recording or microfilming of the Work for use by the physically handicapped without compensation, no royalties shall be paid. Should compensation be received from any such distributions, Publisher shall pay Author fifty percent (50%) of the net profit;

(j)  The Publisher shall pay the Author an advance against amounts due the Author hereunder in the amount of $25,000 according to the following schedule: one-half ($12,500) on execution of this Agreement and one-half ($12,500) on Publisher's acceptance of the manuscript; and

(k)    For purposes of this Agreement, the term "Net Receipts" shall mean United States dollar amounts actually received by the Publisher from exploitation of the rights identified herein, less: sales, use, and other taxes; payments received from customers for freight, insurance or similar items, reserves and refunds/credits for returns or markdowns; or similar marketing allowances, bank fees, and agency commissions.

6.    **Statements and Settlements; Reserve for Returns.**  The Publisher will provide the Author semi-annual statements of sales of the Work and Net Receipts (if any) from exploitation of the rights granted Publisher herein, as of June 30 and December 31 of each year, and will forward such statements, with remittances in accordance with this Agreement, within three months after those dates. If any semiannual amount due the Author is less than $25, no payment need be made until the next settlement date after the amounts due the Author have aggregated $25. Where any such statement indicates that the Author has received an overpayment of royalties or is otherwise indebted to the Publisher, the Publisher may (without affecting any other of its rights as to such overpayment) deduct the amount of such overpayment or other indebtedness from any sums then or thereafter due the Author from the Publisher under this or any other agreement, and for this purpose the term "overpayment" excludes unearned advances. Publisher may withhold from each of the first three semi-annual statements to Author a reasonable reserve against future returns.

The Author may, upon written request, hire an independent Certified Public Accountant to examine the books of account of the Publisher in so far as they relate to the Work. Such examination may be conducted no more than once per calendar year during the term of the Agreement, during the regular business hours of the Publisher, and upon ten (10) business days' prior written notice to Publisher. Such examination shall be at the Author's expense unless errors of accounting amounting to five percent (5%) or more of the total sums accrued to the Author shall be found to the Author's disadvantage, in

AN3627

which case the reasonable cost of the examination shall be borne by the Publisher and payment of the amount due shall be made within thirty (30) days thereafter.

7.      **Copyright and Copyright Infringement.**

(a)     The Publisher shall copyright the Work in the United States in the name of the Author within ninety (90) days of Publisher's initial publication of the Work. If the Publisher supplies material, such as illustrations, it may copyright such Publisher's material in its own name or any other name. If copyright of such Publisher's material or of the entire Work including such Publisher's material is registered in the Author's name, the Author will, upon request, assign the copyright of such Publisher's material as Publisher shall direct. If the copyright of the Work or any derivative work shall be infringed, Publisher shall have the right, but not the obligation to pursue a claim for infringement in such manner as it deems appropriate. If it does so, the Publisher shall recoup the expenses incurred from any recovery, and the balance of the proceeds, if any, shall be divided equally between the Publisher and the Author. If the Publisher does not pursue such a claim after being requested by the Author to do so, the Author, at their expense may do so and any recovery, net of such expenses, shall be split equally between the Publisher and the Author.

(b)     A copyright notice shall be placed on the Work itself in substantially the following form:

     [Final title] copyright © [year published] by Alex Norris. All rights reserved.

(c)     The Author represents, warrants, and agrees that the Work is original except for any material for which written permissions have been obtained sufficient to permit the publication of the Work and exploitation of rights as contemplated hereunder; that the Author is the sole author and proprietor thereof; that the Work has not heretofore been published book-length form and that the Author has not entered into or become subject to any contract, agreement, or understanding with respect thereto for the rights granted herein other than this Agreement; that, if published, the Work will not infringe on any proprietary right at common law or any statutory copyright, any right of privacy or publicity, or any other right; and that it contains no matter that is libelous, scandalous, obscene, or otherwise unlawful and that any recipes, formulae, or instructions in the Work have been tested and will not injure the user. The Author shall indemnify and hold harmless the Publisher and the Publisher's distributors, suppliers, and licensees from and against any claim, demand, suit, action, proceeding, or

AN3628

prosecution and any judgment, liability, loss, expense, including without limitation the reasonable fees and disbursements of its counsel, damage, or recovery in consequence thereof, asserted or instituted against, or suffered by the Publisher, by reason of the publication or sale of the Work, the breach by Author of any warranty given herein, or the exploitation by the Publisher of any rights under this Agreement. The Publisher shall have the right, in its discretion, either to defend such claim, demand, suit, action, proceeding, or prosecution by counsel of its choice or, with Author's approval (which shall not be unreasonably withheld, conditioned, or delayed), to settle the same on such terms as it deems advisable. In the event of a final judgment dismissing any such claim, demand, suit, action, proceeding, or prosecution without liability to the Publisher, the obligation of the Author under such indemnity shall be limited to reimbursing the Publisher to the extent of one-half of all such expense incurred by the Publisher in connection therewith.

(d)     The Author's indemnity shall not apply in connection with the following if not approved by the Author: (i) matters inserted in the Work by the Publisher, or in advertising material and material on the Publisher's jacket or cover of the Work (except to the extent that such material is taken directly from the Work), (ii) matters involving solely controversies arising out of or based on commercial transaction between Publisher and its customers, or (iii) other such matters arising from Publisher's activities in marketing the Work. The Publisher shall indemnify against and hold the Author harmless from any claim and all loss, liability, damage, cost and any expense (including reasonable attorneys' fees) in consequence thereof, asserted in connection with such non-Author-approved matters specified in this paragraph.

8.     **Agency Rights and Payments.** The Author hereby appoints the Publisher the duly authorized Agent and attorney-in-fact of the Author solely to negotiate and sell the following subsidiary rights in the Work. The Publisher's Net Receipts from such sales shall be divided between the Author and the Publisher in the following proportions:

(a)     Foreign* publication and translation rights in and to the Work in book or serial form (in full length, condensed#, or abridged# version), seventy-five percent (75%) to the Author;

(b)     All or parts of the Work to newspapers or periodicals before publication in book form#, ninety percent (90%) to the Author;

8

AN3629

(c)    Non-dramatic recording of the Work phonographically, or for the purpose of reading aloud, or by any method now or hereafter known or devised, fifty percent (50%) to the Author;

(d)    Foreign* anthology, selection, abridgment#, condensation#, digest, and second serial rights, seventy-five percent (75%) to the Author; and

(e)    Non-dramatic electronic distribution or other exploitation of the Electronic Rights with respect to all or part of the Work for which a royalty is not established in Section 5 above, fifty percent (50%) to Author.

* Non-dramatic recording and foreign agency and rights listed in Sections 8(c) and 8(d) revert to Author if not sold by Publisher within two (2) years from the first publication of the Work by Publisher.

# Such licenses subject to Author's approval, which shall not be unreasonably withheld, conditioned, or delayed.

The Publisher shall reasonably attempt to notify the Author of the disposition of any of such rights and shall, upon written request of the Author, furnish the Author copies of any agreements that the Publisher may make with any third parties for disposition or exploitation of any subsidiary rights in the Work.

The Publisher may grant permission to others to publish extracts from the Work containing not more than ten percent (10%) of the Work without compensation therefor.

9.    **Author's Copies.**  The Publisher shall furnish to the Author, free of charge, twenty (20) and to the agent five (5) copies of the regular trade edition of the Work, as published and should the Author desire any more copies for personal use; they will be supplied at fifty percent (50%) of the retail price, free of royalty.  Such copies shall be sent directly to the Author and agent, respectively.  The Publisher shall also furnish to the Author two free copies of each sublicensed edition of the Work and one free copy of the electronic version of the Work.  Publisher shall also supply the Proprietor with a final copyedited manuscript in a standard (e.g., Microsoft Word) electronic format for the Proprietor's records.

10.    **Remainders.**  If the Publisher at any time has unsold or returned copies of the Work on hand that, in its judgment, could not be sold on usual terms in a reasonable time, it may sell such copies to such purchaser or purchasers, and for such price or prices, as it deems desirable.  If such stock is sold at or below the Publisher's cost, no royalty

AN3630

shall be paid the Author on such sales.  If such stock is sold above the Publisher's cost, the Publisher shall pay the Author ten percent (10%) of the Publisher's net profit.

11.     **Option on Future Work.**  The Author grants to the Publisher the option to publish Author's next book-length work (consisting of more than forty installments of cartoons) of cartoons under such terms and conditions as the Publisher and the Author may agree.  The Publisher shall have a period of thirty (30) days after the receipt of a reasonably detailed proposal, which period shall not commence running prior to one month after acceptance of the manuscript for this Work, within which to notify the Author in writing whether it desires to publish such manuscript.  If the Publisher does not wish to publish the Author's next such book or if the parties are unable to agree upon the terms and conditions of publication within thirty (30) days of commencement of such negotiation, the Author shall be free to seek publication of the manuscript with another publisher.

12.     **Reversion of Rights.**

(a) If (i) there is no full-length, English-language edition of the Work in print in the United States and no contract (except for the present Agreement) in existence for publication of any full-length, English-language reprint in the United States; (ii) there is no unsatisfied indebtedness of the Author to the Publisher (which, for the purposes of this clause, shall not include unearned advance royalty); and (iii) subsequent to one year from publication date, no earnings have been payable to the Author hereunder during two consecutive accounting periods, then and in such event, the Author may demand in writing at any time thereafter the reassignment to the Author of all rights hereby granted to the Publisher.  If the Author shall make any such demand, the Publisher shall have six (6) months during which it may make arrangements for reprinting a full-length edition of the Work in the United States or may submit other evidence of anticipated earnings from the Work, and upon the submission of satisfactory evidence to such effect this Agreement shall continue in full force and effect as if no such demand had been made; but if at the expiration of such six-month period the Publisher shall not have made any such arrangement or submitted such evidence, all rights hereby granted to the Publisher shall forthwith revert to the Author, excepting only the representations, warranties, covenants, and indemnities made to the Publisher in Section 7.  Notwithstanding the foregoing, the Work shall not be considered in print if only available as an electronic edition and/or print on demand edition and such edition(s) sell less than 250 copies per accounting period in the aggregate for two (2) consecutive accounting periods.

AN3631

(b)      If the Publisher shall fail to publish the Work as required by Section 3; then in such event all rights hereby granted to the Publisher shall forthwith revert to the Author, Author may retain any amounts advanced to Author, and this Agreement shall thereupon terminate.

(c)      If the Publisher shall, during the existence of this Agreement, default in the delivery of semi-annual statements, or in the making of payments as herein provided and shall neglect or refuse to deliver such statements or make such payments within sixty (60) days after written notice of such default, this Agreement shall terminate at the expiration of such sixty (60) days thereafter without prejudice to the Author's claim for any monies that may have accrued to the Author under this Agreement or to any other rights and remedies to which the Author may be entitled.

13.      **Competition**.  For a period of four (4) years from the initial publication of the Work by Publisher, except pursuant to this Agreement, Author shall not, without the prior written consent of the Publisher (said consent not to be unreasonably withheld, conditioned, or delayed), publish or distribute or permit the publication or distribution of the Work or any portion thereof, or any work on the same subject as the Work that will compete directly with the Work, or any other version or revision in any media or manner now known or developed in the future.  For avoidance of doubt, this section does not otherwise prevent Author from exercising any Author-reserved right in and to the Work.

14.      **Notices.**  Any notice or demand permitted or required hereunder shall be in writing and shall be addressed to the party for whom intended at its or their address appearing above or to such other address as either such party shall theretofore have designated for such purpose.

15.      **Governing Law; Dispute Resolution.**  This Agreement shall be construed and interpreted under the laws of the State of Missouri applicable to contracts entered into and performed wholly in the State of Missouri.  Any legal action, suit, or proceeding arising out of or relating to this Agreement or the breach hereof shall be instituted only in a court of competent jurisdiction in Jackson County, Missouri, and each party hereby consents and submits to the personal jurisdiction and venue of such court and consents to service of process by certified mail, return receipt requested, at the last known address of such party.

16.      **Agency Clause.**  Author hereby irrevocably appoints The Bent Agency, 19 West 21st Street, Suite 201, New York, NY 10010, (the "Agent") as Author's sole and exclusive agent with respect to the Work and authorizes and directs the Publisher to make all payments due and/or to become due hereunder to the Author to and in the name of

AN3632

the said Agent and to accept the receipt of the said Agent as a good and valid discharge of all such indebtedness. As sole and exclusive agent of the Author, Agent is authorized to negotiate for the Author throughout the world as to the disposition of all rights in and to the Work including, without limitation, subsidiary and derivative works. For services rendered and to be rendered, it is agreed between the Author and Agent that the Author does hereby irrevocably assign and transfer to said Agent, and said Agent shall retain, a sum equal to fifteen percent (15%), as an agency coupled with an interest, out of all gross monies accruing to the Author's account under this Agreement and from all other rights in and to the Work disposed of with respect to the United States and Canada, prior to deductions from or charges against such monies for any reason whatsoever, and said commission shall be twenty percent (20%) of gross monies paid to the Author from all rights in and to the Work disposed of with respect to all countries of the world other than the United States and Canada, prior to deductions from or charges against such monies for any reason whatsoever. The Agent's rights hereunder may not be revoked by the Author without Agent's prior written consent. The Author hereby confirms that this agency appointment shall be binding upon their heirs, executors, and assigns. The provisions of this paragraph shall survive termination of this Agreement.

Notwithstanding the foregoing, the Author hereby directs that all sums payable to the Author under this Agreement shall be paid as follows:

Eighty-five percent (85%) of all sums payable to the Author under this Agreement shall be paid to and in the name of the Author via wire transfer to the Author's UK bank account; and

Fifteen percent (15%) of all sums payable to the Author under this Agreement shall be paid to and in the same of Agent at the U.S. address set forth above.

17.    **Miscellaneous.** This Agreement shall be binding upon and shall inure to the benefit of the heirs and personal representatives of the Author and the successors and assigns of the Publisher. The Author shall not assign the Author's rights under this Agreement without the prior written consent of the Publisher, except that without such consent the Author may assign any net sums due hereunder subject to the provisions of Section 16 above. The Publisher may assign any right hereby granted to it, but may not, without the prior written consent of the Author, assign this Agreement as an entirety except to an affiliate, or in connection with the sale or transfer of substantially all its business or any division or department thereof. This Agreement contains the complete understanding of the parties, and no modification or waiver of any provision hereof shall be valid unless in writing and signed by the parties. No waiver of any term or condition of this Agreement or of any part hereof shall be deemed a waiver of the same or any other

AN3633

term or condition of this Agreement.  No provision of this Agreement may be amended except pursuant to a writing signed by both parties hereto.

18.   **Confidentiality.**   Except as required by law or with the prior written consent of the Publisher, the Author (including Author's agent) agrees to keep the financial terms and conditions of this Agreement confidential.

**IN WITNESS WHEREOF,** the parties have executed this Agreement as of the date first above written.

**ANDREWS McMEEL PUBLISHING**                    **AUTHOR**

_____                    _____
Kirsty Melville                                                            Alex Norris
President and Publisher

13

AN3634