UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

ALEXANDER NORRIS,

                             **Plaintiff,**

               -against-

MARC GOLDNER, et al.,

                            **Defendants.**

-------------------------------------------------------------------X

19-CV-05491 (PAE)(SN)

**OPINION AND ORDER**

**SARAH NETBURN, United States Magistrate Judge:**

      Defendants Mark Goldner, Golden Bell Entertainment, LLC, and Golden Bell Studios,

LLC (collectively, the "Defendants"), move to amend their Answer to add three counterclaims

against plaintiff Alexander Norris. The deadline to amend the pleadings passed more than three

years ago, and Defendants have not shown good cause for allowing their untimely amendments.

Accordingly, the motion is DENIED.

**BACKGROUND[1]**

**I.    Factual Background**

      Plaintiff is the creator of the webcomic and associated brand "Webcomic Name," whose

main character "Blob" utters the signature phrase "Oh No" in each comic's final frame. Decl. of

Alexander D. Norris ("Norris Decl."), ECF No. 1-1 ¶¶ 4, 6. Plaintiff created Blob in 2015 and

launched Webcomic Name in 2016. Id. ¶¶ 5-6. In early 2017, Plaintiff and Jason Wiseman, a

game creator, agreed to collaborate on a Webcomic Name-themed table card game (the

---

[1] The Court assumes familiarity with the facts and procedural history of this case and recites only those
facts relevant to the resolution of this motion.

"Game"). Id. ¶ 8. The duo initially planned to self-publish the Game via Kickstarter, but

eventually agreed that Defendants would publish and distribute it. Id. ¶¶ 9-10.

In February 2017, Wiseman entered into an agreement with Defendants in which they

agreed to purchase four games from him, one of which was to be the Game. Id. ¶ 11. Defendants

represent that they acquired the rights "to the multi-media property including, but not limited to,

a tabletop game based on Webcomic Name" from Wiseman. Proposed Counterclaims

("Counterclaims"), ECF No. 113 ¶ 4.

On August 10, 2017, the parties executed a contract (the "Agreement") to facilitate

production and distribution of the Game. See Agreement, ECF No. 1-6. Under the Agreement,

Plaintiff assigned certain rights in his creations relating to the Game to Defendants, and in return

he was entitled to a percentage of the sales of the Game and related products. Norris Decl. ¶¶ 14-

16; see also Agreement; Counterclaims ¶ 3. The Agreement also gave Defendants a 365-day

option on Plaintiff's "next game-length work and book-length work and manuscript length-

work." Agreement p. 3.

Defendants allege that while their collaboration with Plaintiff began on good terms, he

ultimately "proved to be an inconsistent communicator and an uncooperative collaborator" and

failed to furnish Defendants with "final game files as required by the Collaboration Agreement."

Counterclaims ¶¶ 5-9. Defendants further allege that Plaintiff has made disparaging comments

about them publicly and entered into a subsequent agreement with a publisher for a book-length

work without allowing Defendants to exercise their option. Id. ¶¶ 9-10.

## II.    Procedural History

Plaintiff commenced this action on June 12, 2019. On December 2, 2019, then-presiding

Judge Alison J. Nathan entered a Civil Case Management Plan and Scheduling Order that

required all motions to amend to be filed within 30 days.[2] On August 6, 2020, after obtaining leave of Court, Plaintiff filed a supplemental complaint alleging the occurrence of relevant facts after the filing of the original complaint. Defendants answered on August 21, 2020. On August 26, 2021, Judge Nathan referred the matter to my docket for general pre-trial supervision.

On September 7, 2022, both parties filed pre-summary judgment letters with the now-presiding Judge Paul A. Engelmayer, who subsequently amended my referral to include dispositive motions. Defendants' letter also sought leave to amend their answer to assert counterclaims. On September 16, 2022, the Court issued an order establishing a briefing schedule for the parties' cross-motions for summary judgment as well as Defendants' motion to amend. ECF No. 110.

## III.   The Proposed Counts

Neither Defendants' initial answer nor their answer to Plaintiff's supplemental complaint contains counterclaims. See ECF Nos. 21, 40. Defendants now seek to amend their answer to assert the following counterclaims.

### A.   Breach of Contract

Defendants allege that Plaintiff breached the Agreement by, *inter alia*, failing to provide them with final game files by February 17, 2018, publishing a book on April 2, 2019, without first giving Defendants an opportunity to exercise their option, refusing to share access to his social media accounts, and making disparaging remarks about Defendants on social media. Counterclaims at ¶¶ 47-59.

---

[2] This date fell on January 1, 2020, a court holiday. Thus, the deadline for amendments to the pleadings was January 2, 2020.

**B.      Tortious Interference with Prospective Economic Advantage**

Defendants allege that Plaintiff made disparaging comments about them to multiple third parties, causing them to discontinue ongoing collaborations with Defendants on or before October 3, 2018. Id. ¶¶ 60-68.

**C.      Copyright Infringement**

Defendants allege that Plaintiff has infringed their rights in certain material developed by Plaintiff for the Game by using that material in his own comics and merchandise. Id. ¶¶ 69-77.

## DISCUSSION

A party may amend its pleading "as a matter of course" within 21 days of service of the complaint or within 21 days of service of either a responsive pleading or certain motions under Rule 12 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 15(a)(1). After that time, an amendment requires either the consent of the opposing party or leave of the court. Fed. R. Civ. P. 15(a)(2). Although the "court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), it may "deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." Holmes v. Grubman, 568 F.3d 329, 334 (2d Cir. 2009) (quoting McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007)); see also Foman v. Davis, 371 U.S. 178, 182 (1962) (discussing the circumstances in which leave may be denied).

When a party files a motion to amend after the pleading deadline set in the scheduling order, "the lenient standard under Rule 15(a) . . . must be balanced against the requirement under Rule 16(b) that the Court's scheduling order shall not be modified except upon a showing of good cause." Holmes, 568 F.3d at 334-35 (internal quotation marks omitted); see Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). It is within the Court's discretion to apply the good cause standard after the deadline to amend. See

4

Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000) ("[A] district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause"); see also Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 243-44 (2d Cir. 2007) ("[A]mendment of a pleading as a matter of course pursuant to Rule 15(a) is subject to the district court's discretion to limit the time for amendment of the pleadings in a scheduling order issued under Rule 16(b).").

I.      **Diligence and Undue Delay**

Because Defendants moved to add counterclaims more than two and a half years after the deadline to amend set in the December 2, 2019 pretrial scheduling order, the Court will not permit amendment absent a showing of good cause.

To show good cause, a movant must demonstrate diligence before filing their motion, such that despite the movant's effort, the deadline to amend the pleadings could not have been reasonably met. Parker, 204 F.3d at 340. While the movant's "diligence" is the "primary consideration," the Court may also inquire whether the amendment will significantly prejudice the nonmoving party. Kassner, 496 F.3d at 244; see also Werking v. Andrews, 526 F. App'x 94, 96 (2d Cir. 2013) ("We will find good cause where the moving party has demonstrated diligence, and the amendment would not significantly prejudice the non-moving party." (internal quotation marks omitted)); Salomon v. Adderley Indus. Inc., 960 F. Supp. 2d 502, 508 (S.D.N.Y. 2013) (considering undue delay and undue prejudice in a Rule 16(b) good cause analysis).

"A party fails to show good cause when the proposed amendment rests on information 'that the party knew, or should have known, in advance of the deadline.'" Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc., 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012) (quoting Sokol

Holdings, Inc. v. BMD Munai, Inc., No. 05-cv-03749 (KMW)(DF), 2009 WL 2524611, at *7-8 (S.D.N.Y. Aug. 14, 2009) (collecting cases)).

"The Rule 16(b)(4) 'good cause' inquiry is primarily focused upon the diligence of the movant in attempting to comply with the existing scheduling order and the reasons advanced as justifying that order's amendment." Ritchie Risk–Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC, 282 F.R.D. 77, 79 (S.D.N.Y. 2012) (citing Kassner, 496 F.3d at 244).

Defendants offer three justifications for their delay: the parties' attempts at settlement, the COVID-19 pandemic, and Defendants' pro se status for a portion of the litigation. None of these reasons, alone or in concert, justifies allowing amendment at such a late date.

First, Defendants argue that "almost immediately after this case was filed" their attention "turned to settlement," and that they therefore "eschewed counterclaims with the hopes of finding a resolution." Defendants' Mem. ("Defs. Mem."), ECF No. 112 p. 5. Defendants cite no authority whatsoever to support the notion that their voluntary withholding of counterclaims, which they readily admit was done for strategic purposes, should have any bearing on the diligence analysis. If anything, Defendants' admission that they made a conscious decision to not seek amendment at an earlier date weighs heavily against them.

Second, Defendants make only passing reference to the COVID-19 pandemic, stating that it "ground court proceedings to a halt" but fail to explain how it stopped them from amending their answer by the deadline of January 2, 2020, several weeks before lockdowns began in the U.S. This argument is particularly unavailing because Defendants answered Plaintiff's amended complaint in August of 2020.

Finally, Defendants note that their counsel withdrew in October 2021, and that they then proceeded *pro se* through a series of ultimately unsuccessful settlement negotiations until new

counsel entered an appearance on July 1, 2022. See ECF Nos. 71, 89. Defendants again cite no authority or even attempt to explain how this relatively brief period in which they lacked counsel—which itself began over 21 months past the deadline for amendments—has any bearing on their diligence in bringing counterclaims.

Defendants also claim that it was not until just before their October 28, 2021 settlement conference that they learned of Plaintiff's book publishing deal with Andrews McMeel that allegedly violated the option term of the Agreement, but that "rather than derail resolution of the case, Defendants decided to carry on with the settlement negotiations . . . ." Defs. Mem. p. 5. Again, Defendants fail to explain why their own strategic decisions should excuse their failure to bring these counterclaims sooner. This also cannot be reconciled with their statement that it was not until they retained new counsel in July of 2022 that it became apparent that they "possessed valid, previously unpursued counterclaims." Id. at 5-6.

Moreover, the agreement for the publishing of that book is dated October 21, 2017, see ECF No. 113-10, and Defendants claim the book was published on April 2, 2019. Counterclaims ¶ 41. Plaintiff attached, as an exhibit to his brief in opposition, a March 29, 2019 cease-and-desist letter from Defendants' then-counsel that detailed the *exact* counterclaims Defendants now seek to pursue and stated that "[i]t has recently come to our attention that your client, Alex Norris, has made substantial efforts to publish the work entitled "Oh No" with the publishing company Andrews McMeel in approximately one week." ECF No. 122-2 p. 1. This letter directly contradicts Defendants' claim that they first learned "of the breach of the 'book option' provision of the agreement" on "the eve of the [October 28, 2021] settlement conference." Tellingly, Defendants' reply brief avoids this subject entirely. This apparent misrepresentation in Defendants' briefing is concerning.

Defendants have failed to demonstrate diligence and have left unrebutted the March 2019 letter showing that their proposed amendments are based entirely on information they knew in advance of the deadline to amend. See Perfect Pearl Co., Inc., 889 F. Supp. 2d at 457. Therefore, Defendants have failed to meet their burden of demonstrating good cause for allowing amendment at this late date.

## II.    Prejudice

While the "burden of demonstrating good cause rests with the movant," Ritchie Risk–Linked Strategies Trading (Ireland), 282 F.R.D. at 79 (citing Holmes, 568 F.3d at 334-35), the burden of demonstrating prejudice rests with the non-movant. Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993). A court assessing prejudice to the non-movant looks to whether the new claim(s) would: "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." Id. "Mere delay, [] absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend." Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008). "However, the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." Id. (internal quotation marks omitted).

Given Defendants' multi-year delay in seeking leave to amend, the burden on Plaintiff to establish prejudice is minimal. See id. Discovery concluded on August 24, 2022, see ECF No. 91, and the parties have cross-moved for summary judgment. At this posture, the prejudice to Plaintiff in re-opening discovery and delaying resolution of this matter is self-evident. See Werking, 526 F. App'x at 96 ("We are particularly likely to find prejudice where the parties have already completed discovery and the [non-movant] has moved for summary judgment.").

Defendants argue that <u>Werking</u> is inapplicable because no motion for summary judgment was "pending" at the time they moved for leave to amend. This is a *de minimis* distinction. Both parties stated an intention to file their respective motions on September 7, 2022, Defendants' motion seeking leave to amend was filed on October 6, 2022, and Plaintiff filed his motion for summary judgment on October 14, just one week later.

Defendants also cite to two non-controlling cases for the proposition that the Court must weigh prejudice against the Plaintiff with the possibility of Defendants filing a separate action should they be denied leave to amend. Both cases are fundamentally distinguishable. In the first, leave to amend was sought "relatively early in the discovery process." <u>Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.</u>, 304 F.R.D. 170, 176 (S.D.N.Y. 2014). In the second, the movant "provided a reasonable justification for [their] delay . . . it was unaware of its claim until it deposed certain parties . . . just prior to its request to make this motion to amend." <u>Topps Co. v. Cadbury Stani S.A.I.C.</u>, No. 99-cv-9437 (CSH)(GWG), 2002 WL 31014833, at *2 (S.D.N.Y. Sept. 10, 2002).

The Court does not look kindly on what is essentially an ultimatum disguised as an appeal to judicial economy. Rule 16 empowers the Court to manage a litigation by identifying and clarifying issues before trial. A chess player simplifies the board by eliminating pieces in anticipation of the endgame. The Federal Rules envision a similar course for federal litigation— the court and the parties must work together to narrow the scope of contested issues before finally presenting them at trial. Defendants seek to add new pieces to the board at the end of the game, simply because it no longer suits them to hold those pieces in abeyance. The Court declines to allow them that opportunity.

The Court will not allow Defendants to further delay *this* litigation because of the mere possibility that they will file an additional suit.

## CONCLUSION

Defendants' motion to amend their answer and add counterclaims is DENIED. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 111.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:      March 7, 2023
            New York, New York