

Francelina M. Perdomo Klukosky
Phone: (212) 980-7206
Francelina.PerdomoKlukosky@saul.com
www.saul.com

April 18, 2023

*VIA ECF*
The Honorable Sarah Netburn
United States District Court, Southern District of New York
40 Foley Square
New York, NY 10007

    Re:    *Alexander Norris v. Marc Goldner, et al.*, Case No. 19-cv-05491-PAE-SN

Dear Judge Netburn,

    Pursuant to Your Honor's April 14, 2023 Order (the "Order"), Plaintiff Alexander Norris ("Norris") respectfully submits the following answers to the questions presented.

    **Response to Question No. 1**: Preliminarily, the material facts set forth in Plaintiff's 56.1 Statement must be deemed admitted because Defendants have not adequately disputed those material facts. (Doc. No. 130 at 2). *See e.g.*, *Green v. Rochdale Vill. Soc. Servs., Inc.*, 2016 WL 4148322, at *1 (E.D.N.Y. Aug. 4, 2016).

    With that background, the Agreement ultimately support's Plaintiff's position in three fundamental ways: (1) the Agreement provides a narrow definition of the term 'WORKS;' (2) any intellectual property rights licensed in Section 1(A) of the Agreement are strictly limited to the WORKS; and (3) any licensed rights to the WORKS *do not* include rights to the underlying characters because the Agreement makes multiple references to Plaintiff's retained intellectual property rights in the underlying Webcomic Name characters.

    Specifically, Section 2(L) of the Agreement expressly provides for ***limited clearance*** to use Webcomic Names' characters for "cameo appearances" and for "promotional and marketing purposes." It is axiomatic that if Defendants had rights on the characters, paragraph 2(L) would have been unnecessary as redundant. What's more, Section 3(C) of the Agreement allows Defendants to sample future works derived from the WORKS, and the provision only applies if (i) Plaintiff completes the WORKS and creates the sequels of the WORKS for Defendants and (ii) submits those sequels to Defendants. It is undisputed that Plaintiff never created sequels for either the Webcomic Name Game or the plush toys, therefore, the future rights contemplated in Section 3(C) do not exist.

    Indeed, the undisputed facts of this case support the sensical interpretation that Defendants never had rights to the underlying characters. On July 11, 2017, Plaintiff wrote to Goldner "I want

1270 Avenue of the Americas, Suite 2005 ♦ New York, NY 10020 ♦ Phone: (212) 980-7200 ♦ Fax: (212) 980-7292

DELAWARE   FLORIDA   ILLINOIS   MARYLAND   MASSACHUSETTS   MINNESOTA   NEW JERSEY   NEW YORK   PENNSYLVANIA   WASHINGTON, DC
A DELAWARE LIMITED LIABILITY PARTNERSHIP

April 18, 2023
The Honorable Sarah Netburn
Page 2

to make it clear that ***in no way does Golden Bell take ownership of any of the characters, images or story content*** except in its application in the [Webcomic Name Game]." (Doc. No. 118 at ¶ 25; Doc. No. 119-4 at pg. 1; Doc. No. 126 at ¶ 3; Doc. No. 129 at ¶ 25). Recognizing Plaintiff's concerns, Defendants submitted a revised version of the Collaboration Agreement to Plaintiff, and relying Defendants' representations, Plaintiff executed the revised version of the Agreement on August 10, 2017. (Doc. No. 118 at ¶ 26; Doc. No. 119-4 at pg. 1; Doc. No. 126 at ¶¶s 4-5; Doc. No. 129 at ¶ 26). As shown above, the Agreement expressly defines WORKS as "the [Webcomic Name Game], and "Webcomic Name Stuffed Animals." (Doc. No. 118 at ¶ 28; Doc. No. 129 at ¶ 28).

**Response to Question No. 2**: Because the definition of the term WORKS in the Agreement is unambiguous, this Court should interpret its meaning as a matter of law. *See e.g.*, *Vetromile v. JPI Partners, LLC*, 706 F.Supp.2d 442,447 (S.D.N.Y. 2010). Consistent with the undisputed, plain language of the Agreement, this Court should interpret the Agreement to mean that Plaintiff only licensed the intellectual property associated with the Webcomic Name Game and the associated plush toys.

Assuming, *arguendo*, that the Court finds that the Agreement is ambiguous as to the definition of the WORKS, ***only*** Plaintiff's interpretation of the Agreement comports with well-established principles of contract interpretation and with the undisputed facts. First, Plaintiff's interpretation of the Agreement harmonizes ***all*** provisions of the Agreement because as detailed above, Sections 2(L) and 3(C) demonstrate that Plaintiff retained full intellectual property rights to his existing works under the Webcomic Name brand and the underlying characters depicted in the Webcomic Name Game. *See e.g.*, *Kinek v. Paramount Communications, Inc.*, 22 F.3d 503, 509 (2d. Cir. 1994). Second, Plaintiff's interpretation of the Agreement comports with the parties' intent. As detailed above, ***both*** Plaintiff and Defendants memorialized their intent that the Agreement only licensed rights to the Webcomic Name Game and the associated plush toys. (Doc. No. 118 at ¶ 25-26; Doc. No. 119-4 at pg. 1; Doc. No. 126 at ¶ 3-5; Doc. No. 129 at ¶ 25; Doc. No. 129 at ¶ 26). *See e.g.*, *Gary Friedrich Enterprises, LLC v. Marvel Characters, Inc.*, 716 F.3d 302,313 (2d. Cir. 2013).

**Response to Question No. 3**: It is well-established that "[t]o make out a prima facie case of copyright infringement, a party must show (1) ownership of a valid copyright in the item and (2) unauthorized copying. *See e.g.*, *Strike 3 Holdings, LLC v. Doe*, 2018 WL 3756453, at *2 (S.D.N.Y. July 19, 2018). Further, copyright infringement is a strict liability offense, meaning "intent or knowledge is not an element of infringement." *See e.g.*, *Fitzgerald Publ'g. Co. v. Baylor Publ'g. Co.*, 807 F.2d 1110,1113 (2d Cir. 1986). As to the second element, "copying" is established by showing "that the defendant had access to the copyrighted work and that there is a substantial similarity of protectable material between the two works." *Faulkner v. Nat'l Geographic Soc'y*, 576 F.Supp.2d 609,613 (S.D.N.Y. 2008). "Copying" cannot be disputed here for two fundamental reasons. One, Goldner admitted that he took screenshots of Plaintiff's copyrighted work ***without*** seeking authorization under the reckless assumption that he did not need to seek permission because Defendants had acquired rights to the WORKS. (Doc. No. 120-2 at 116:4-124:9). Goldner admitted that he never sought permission from Plaintiff. (Doc. No. 120-2 at 116:4-124:9). Goldner's copying was without authorization because at the time the screenshots were taken,

April 18, 2023
The Honorable Sarah Netburn
Page 3

Plaintiff had not yet created the WORKS. Therefore, Defendants attempted to misappropriate Plaintiff's works to overextend the Collaboration Agreement's limited license.

For similar reasons, Plaintiff met its burden in establishing its claim for false designation or origin because Defendants took screenshots of Plaintiff's copyrighted works without authorization, submitted those screenshots to the United States Patent and Trademark Office (the "USPTO"), as specimens of use in commerce, and represented to the USPTO that the specimens belonged to Defendants. (Doc. No. 118 at ¶¶s 46-52; Doc. No. 129 at ¶¶s 46-52). It is well-established that "[f]alse designation occurs where "[i] goods or services are involved, [ii] interstate commerce is affected, and [iii] there is a false designation of origin or a false description or representation with respect to those goods or services in commerce." *Pulse Creations, Inc. v. Vesture Grp., Inc*., 154 F. Supp.3d 48,56 (S.D.N.Y. 2015). As detailed above, the undisputed evidence establishes that Defendants reproduced Plaintiff's works (comics, merchandise) and passed it off as their own. (Doc. No. 120-2 at 116:4-124:9). Therefore, it cannot be disputed that Defendants are liable for false designation of origin.

**Response to Question No. 4**: It is undisputed that Defendants never used the products allegedly protected under Marks 935 and 281 in commerce, either at the time of registration, nor any time thereafter. The mark "Webcomic Name" has never been placed on any of the products in international classes 016, 025, 028, 041. It is black letter law that when a mark is not used in commerce, it must be cancelled. *See e.g.*, *Chere Amie, Inc. v. Windstar Apparel, Corp*., 2002 WL 31108187, *2 (S.D.N.Y. Sept. 23, 2002). It is undisputed that Defendants have never use the products described in Marks 935 and 281 in commerce because. (Doc. No. 118 at ¶¶s 46-52; Doc. No. 129 at ¶¶s 46-52). Additionally, Defendants did not use the mark "Webcomic Name" to market or sell the guest card, because the card was merely a token or element of a completely different game, Pretending to Grownup. *Id*. Indeed, Defendants do not claim that the mark "Webcomic Name" was emblazoned on a tabletop game, nor do Defendants claim that they separately sold the guest card or other board game cards under the Webcomic Name brand. *Id*. The guest card is simply insufficient to show use in commerce of the trademark Webcomic Name because the mark itself must be used in conjunction with a product. *See e.g.*, *Silberstein v. Fox Ent. Grp., Inc*., 424 F.Supp.2d 616,633 (S.D.N.Y. 2004). Because the only product that Defendants sold is Pretending to Grownup, Defendants have failed to raise a triable issue of fact that Defendants used the Marks 935 and 281 in commerce. Therefore, Marks 935 and 281 should be cancelled.

**Response to Question No. 5**: The evidence demonstrates that Defendants received the "game" files from Plaintiff on October 1, 2018 because Goldner testified at his deposition that he received the "game" files. Specifically, Goldner testified "[Plaintiff] sent sketch black-and-white cards which needed to go through a round of approval." (Doc. No. ¶¶120-2 at 76:22-77:7). Moreover, it is undisputed that the Agreement is silent as to the definition of what constitutes "final" game files. (Doc. No. 118 at ¶ 32; Doc. No. 129 at ¶ 32). Therefore, Goldner's own testimony confirms receipt of the "game" files as early as October 1, 2018.

Respectfully Submitted,

/s/ Francelina M. Perdomo Klukosky, Esq.