**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Alexander Norris,<br><br>                    Plaintiff,<br><br>    - against –<br><br>Marc Goldner, Individually and as Officer of<br>Golden Bell Entertainment, LLC, a California<br>Company and Golden Bell Studios, LLC,<br>Golden Bell Entertainment, LLC, a California<br>Company and Golden Bell Studios, LLC,<br><br>               Defendants. | Civil Action No.: 1:19-cv-05491-PAE-SN |

**Plaintiff Alexander Norris' Memorandum Of Law In Support Of Their Motion For**
**Statutory Damages And Attorneys' Fees Pursuant To The Copyright Act of 1976**

SAUL EWING LLP
Francelina M. Perdomo Klukosky
Christie R. McGuinness
1270 Avenue of the Americas, Suite 2800
New York, New York 10020
T: (212) 980-7200
Francelina.Perdomoklukosky@saul.com
Christie.McGuinness@saul.com


*Attorneys for Plaintiff*
*Alexander Norris*

# TABLE OF CONTENTS

Page

I.    PRELIMINARY STATEMENT: ......................................................................1

II.   STATEMENT OF RELEVANT FACTS: ..........................................................3

    A.    Defendants Induced Plaintiff To Enter Into The Collaboration Agreement:...........3

    B.    Defendants Misappropriated and Copied Plaintiff's Copyrighted Works In Multiple Trademark Submissions: ...........................................................5

        1.    The 934 Application: ..........................................................5

        2.    The 369 Application: ..........................................................6

        3.    The 215 Application: ..........................................................6

        4.    The 795 Application: ..........................................................6

    C.    Plaintiff Registered Their Works With The U.S. Copyright Office: .......................7

    D.    Defendants Send Frivolous Cease and Desist Letters: ...........................................7

    E.    Despite The Summons And Complaint Plaintiff Continued To Submit The Copyrighted Works To The USPTO: ...............................................7

        1.    The 795 Application: ..........................................................8

        2.    The 215 Application: ..........................................................8

        3.    The 369 Application: ..........................................................8

    F.    Defendants Impermissibly Used Confidential Settlement Material In This Action:.................................................................8

    G.    Defendants Filed Frivolous Tag-Along Actions:....................................................9

        1.    Defendants' Lawsuit Against Plaintiff and McMeel (the "Second Lawsuit"): ....................................................9

        2.    The Untimely Appeal To The Second Circuit: .........................................10

    H.    Defendants Forced Plaintiff To Expend Significant Attorneys' Fees: .................10

III.  ARGUMENT:.............................................................................................10

    A.    This Court Should Award Plaintiff $450,000 In Statutory Damages: ..................11

　　　　1.　　Legal Standard: ......................................................................11

　　　　2.　　Defendants Copyright Infringement Was Willful: .................12

　　　　　　(a)　　Defendants' Actual Knowledge:.....................................13

　　　　　　(b)　　Defendants' Constructive Knowledge: ...........................15

　　　　3.　　Plaintiff Is Entitled To $150,000 Per Infringing Act For A Total Of $450,000: ...........................................................................17

　　B.　　Plaintiff Is Entitled To $273,509.49 – Their's Reasonable Attorneys' Fees: ........20

　　　　1.　　Legal Standard: ......................................................................20

　　　　2.　　Defendants Contumacious Conduct Throughout This Action:.................20

IV.　　CONCLUSION:....................................................................................22

<u>**TABLE OF AUTHORITIES**</u>

**FEDERAL CASES**

*Anderson v. Primera Plana NY, Inc.*,
Civ No. 17-cv-7715 (JMF)(KNF), 2019 WL 1936741 (S.D.N.Y. Mar. 29, 2019) ...........11, 20

*Arclightz and Films Pvt. Ltd. v. Video Palace Inc.*,
303 F.Supp.2d 356 (S.D.N.Y. 2003).....................................................................................11

*Bass v. Diversity Inc. Media*,
Civ. No. 19-cv-2261 (AJN), 2020 WL 2765093 (S.D.N.Y. May 28, 2020) .........................12

*Beastie Boys v. Monster Energy Co.*,
66 F.Supp.3d 424 (S.D.N.Y. 2014) ...............................................................................13, 14

*Broadcast Music, Inc. v. Prana Hospitality, Inc.*,
158 F.Supp.3d 184 (S.D.N.Y. 2016)
...................................................................................................................................15, 16, 21

*Farrington v. Sell It Social, LLC*,
Civ. No. 18-cv-11696 (JPC), 2020 WL 7629453 (S.D.N.Y. Dec. 21, 2020) .........................20

*Jordan Mozer and Associates, Ltd. v. Starck*,
Civ. No. 13-cv-1181 (JPO), 2014 WL 1327960 (S.D.N.Y. Apr. 3, 2014) .............................12

*Kepner-Tregoe, Inc. v. Vroom*,
186 F.3d 283 (2d. Cir. 1999)......................................................................................18, 19

*Mattel, Inc. v. 2012SHININGROOM212*,
Civ. No. 18-cv-11648 (PKC), 2020 WL 5743517 (S.D.N.Y. Sept. 25, 2020) ......................11

*McCurry v. Accessory Network Group, LLC*,
Civ. No. 15-cv-9779 (PGG) (KNF), 2016 WL 11620045 (S.D.N.Y. Oct. 5, 2016)...............15

*Mordant v. Citinsider LLC*,
Civ. No. 18-cv-9054 (RA), 2019 WL 3288391 (S.D.N.Y. Jul. 22, 2019)..............................20

*N.A.S. Import, Corp. v. Chenson Enterprises, Inc.*,
968 F.2d 250 (2d. Cir. 1992)...................................................................................................12

*Noble v. Crazetees.com*,
Civ. No. 13-cv-5086 (PAE)(HBP), 2015 WL 5697780 (S.D.N.Y. Sept. 28, 2015)...............17

*Peer Intern. Corp. v. Luna Records, Inc.*,
887 F.Supp. 560 (S.D.N.Y. Apr. 28, 1995) ...........................................................................16

*Prokos v. Mont Morris, LLC*,
Civ. No. 20-cv-2323 (PKC), 2020 WL 5819904 (S.D.N.Y. 2020) ........................................21

*Rauch Industries, Inc. v. David Strand Designs, LLC*,
    Civ. No. 10-cv-5476 (LAK) (JCF), 2011 WL 13383540 (S.D.N.Y. Nov. 21, 2011)........18, 19

*Scafa-Tornabene Art Pub. Co., Inc. v. Pride Products Corp.*,
    Civ. No. 03-cv-8273 (DLC) (MHD), 2007 WL 2469453 (S.D.N.Y. Jun. 4, 2007) ...............13

*Stevens v. Aeonian Press, Inc.*,
    Civ. No. 00-cv-6330 (JSM), 2002 WL 31387334 (S.D.N.Y. Oct. 23, 2022)...................18, 19

*Sygall v. Pitsicalis*,
    Civ. No. 18-cv-02730 (VSB) (SN), 2022 WL 3044773 (S.D.N.Y. May 16, 2022) ...............16

*Tabak v. Lifedaily*,
    Civ. No. 21-cv-04291 (LLS), 2021 WL 5235203 (S.D.N.Y. Nov. 9, 2021)
    ...................................................................................................................................................22

*Viacom Intern. Inc. v. Franzine Intern.*,
    Civ. No. 98-cv-7448 (RCC), 2001 WL 930248 (S.D.N.Y. Aug. 16, 2001) .....................15, 16

## FEDERAL STATUTES

17 U.S.C. § 504(b) .........................................................................................................................10, 11

17 U.S.C. § 504(c)(1)........................................................................................................2, 11, 12, 17, 19

17 U.S.C. § 504(c)(2)....................................................................................................2, 10, 11, 12, 17, 19

17 U.S.C. § 505 ...........................................................................................................................3, 20, 21

28 U.S.C. § 1920..................................................................................................................................20

I.    **PRELIMINARY STATEMENT**:

Plaintiff Alexander Norris ("Plaintiff") is a visual artist who successfully launched "Webcomic Name" in 2015 centered on the main character, the hapless "Blob," and its catchphrase "Oh No." (Doc. No. 118 at ¶¶s 1-5). At its core, "Webcomic Name" is centered around gender positivity, love, equality, inclusion, and humor. (Doc. No. 118 at ¶¶s 1-5). Plaintiff, who self identifies as queer, utilizes the: they/them/their pronouns, and Plaintiff's gender fluidity is encapsulated in the genderless "Blob." (Doc. No. 118 at ¶¶s 1-5). Recognizing Plaintiff's success and social media following, Defendants Marc Goldner ("Goldner") and his company Golden Bell Entertainment, LLC ("Golden Bell Entertainment") (collectively, "Defendants") enticed Plaintiff into entering into a "Collaboration Agreement." (Doc. No. 118 at ¶¶s 12-14). While Plaintiff entered into the Collaboration Agreement with the understanding that Plaintiff and Defendants would be collaborating on two specific items: a table top card game and a plush toy, Defendants entered into the "Collaboration Agreement" with the express intention of arrogating complete rights to Plaintiff's suite of intellectual property. (Doc. No. 118 at ¶ 27).

Emboldened by the purposely poor drafting of the "Collaboration Agreement," Defendants scoured Plaintiff's social media, took screenshots of Plaintiff's intellectual property, and fraudulently passed off those screenshots to the United States Patent and Trademark Office ("USPTO") as Defendants' own intellectual property[1]. (Doc. No. 39-12 at ¶¶s 8-12). What's more, in response to Plaintiff's ***multiple*** notice letters ***and the*** filing of the Summons and Complaint[2],

---

[1] Defendants initial filings before the USPTO infringe upon Plaintiff's foreign copyrighted works resulting in Plaintiff's filing of their initial Summons and Complaint. However, this Motion will primarily discuss Plaintiff's U.S. Copyrighted Works because those are the works for which Plaintiff is entitled to received statutory damages. However, Defendants' willful conduct throughout the entirety of the parties' relationship is at the crux of Plaintiff's damages claim.

[2] For the Court's ease, Plaintiff filed their Supplemental Summons and Supplemental Complaint to address the fact that Defendants continued to file additional specimens of use with the USPTO ***after*** Plaintiff's initial Summons and Complaint. Although Plaintiff is seeking statutory damages for Defendants' unauthorized copying of Plaintiff's Copyrighted Works, Plaintiff consistently warned Defendants that they were blatantly overstepping the rights contained in the Collaboration Agreement, first through the notice letters and later with the filing of the initial

Defendants **doubled down** on their copyright infringement and submitted Plaintiff's Copyrighted Works to the USPTO as additional specimens of use. *See* Exs. 1, 3 and 5.[3] Following **years** of litigation, Plaintiff finally had their rights vindicated. This Court, in a thorough Report and Recommendation **and** Decision and Order, concluded that Defendants infringed upon Plaintiff's Copyrighted Works when they submitted those works to the USPTO. (Doc. Nos. 146 and 150). In response to this Court's Report and Recommendation **and** Decision and Order, Defendants filed a second lawsuit in the Southern District of New York (**without** informing this Court or even attempting to serve Plaintiff) **even though** this Court had already ruled that Defendants had no ability to bring the counterclaims that are now at the center of Defendants' second lawsuit. (Doc. No. 152). Now, Plaintiff comes before this Court seeking compensation for Defendants' willful copyright infringement.

For the foregoing three overarching reasons, Plaintiff is entitled to $450,000 in statutory damages and $273,509.49 in attorneys' fees.

**First**, Defendants' copyright infringement was willful because Defendants had **both** actual and constructive knowledge that their actions constituted copyright infringement because Defendants continued to copy Plaintiff's works and submit them as additional specimens of use to the USPTO **after** Plaintiff commenced this Action. *See* Exs. 2, 4 and 6.

**Second**, pursuant to 17 U.S.C. § 504(c)(1) and (c)(2), because Defendants' copyright infringement was willful, Plaintiff is entitled to the maximum statutory damages of $150,000 per instance of copyright infringement. Here, following Plaintiff receiving their copyright registration from the U.S. Copyright Office, Defendants submitted Plaintiff's copyrighted material to the

---

Summons and Complaint and the Supplemental Pleadings.

[3] Numbered exhibits are annexed to the Declaration of Christie R. McGuinness, Esq.

USPTO in no less than **three** (3) trademark applications. *See* Exs. 1, 3 and 5. Therefore, Plaintiff is entitled to $450,000 in statutory damages.

**Third**, pursuant to 17 U.S.C. § 505, because Defendants' copyright infringement was willful, Plaintiff is entitled to $273,509.49 in attorneys' fees. Those attorneys' fees represent the reasonable attorneys' fees spent prosecuting this Action since the filing of the Supplemental Summons and Supplemental Complaint (the "Supplemental Pleadings").

For these reasons, this Court should grant this Motion in its entirety and award $450,000 in statutory damages and $273,509.49 in attorneys' fees.

II.   <u>**STATEMENT OF RELEVANT FACTS**</u>:

A.   <u>Defendants Induced Plaintiff To Enter Into The Collaboration Agreement:</u>[4]

In early 2017, Plaintiff agreed to collaborate with Jason Wiseman ("Wiseman"), who Plaintiff recognized as a well-known card and table game creator, to create a table top card game based on illustrations and characters of Plaintiff's viral webcomic, "Webcomic Name." (Doc. No. 118 at ¶ 12). On or around February 11, 2017, Wiseman signed an agreement with Golden Bell Entertainment pursuant to which Golden Bell Entertainment agreed to purchase four table card games from Wiseman, three of which were either in their conceptual or development phase. (Doc. No. 118 at ¶ 16). Wiseman recruited Plaintiff to develop one of the table top card games, and ultimately deliver it to Golden Bell Entertainment. (Doc. No. 118 at ¶ 17). In return, Golden Bell Entertainment agreed to handle the publishing, printing and sales of the table top card game. (Doc. No. 118 at ¶ 17).

In the summer of 2017, Plaintiff began work on a book project which would go on to feature

---

[4] Based on the voluminous briefing in this Action, Plaintiff will presume this Court's familiarity with the facts of this Action, and will only detail the facts necessary for this Court to decide this Motion. Further, to avoid the unnecessary filing of duplicative exhibits, Plaintiff will refer this Court to multiple prior filings in this Action.

his most popular "Webcomic Name" comics. (Doc. No. 118 at ¶ 19). In the summer of 2017, Norris and his editor negotiated a publishing agreement with Andrew McMeel Publishing, LLC, a division of Andrews McMeel Universal ("McMeel"). (Doc. No. 118 at ¶ 20). Following the negotiations, Norris signed a publishing agreement with McMeel, and his book, entitled "Oh No," was published on April 2, 2019. (Doc. No. 118 at ¶ 21).

On June 26, 2017, Goldner insisted that Plaintiff execute a separate "Collaboration Agreement" with Golden Bell Entertainment to formally engage Plaintiff to illustrate the table top card game Wiseman pitched. (Doc. No. 118 at ¶ 22). On July 3, 2017, Goldner sent Plaintiff the proposed "Collaboration Agreement." (Doc. No. 118 at ¶ 24). After reviewing it, Plaintiff informed Goldner that they did not want to sign the proposed "Collaboration Agreement" as proposed because Plaintiff had a concern that the proposed "Collaboration Agreement" might jeopardize their existing contract with McMeel for the publication of their book. (Doc. No. 118 at ¶ 25). Plaintiff sent the following email to Goldner:

> The main query I have about the contract is the part about "the artist will retain 0% of the copyright" and similar clauses. Obviously the game will heavily feature elements that are part of Webcomic Name already, and ***I want to make it clear that in no way does [Golden Bell Entertainment] take ownership of any of the characters, images or story content except in its application in a tabletop game***. At the moment the wording is very broad and could apply to Webcomic Name in general, rather than simply in relation to a tabletop game. I will be working with publishers on a book and I am going to send them a copy of the contract before signing to make sure there is no breach of my contract with them. Obviously the book and tabletop game are very separate but will contain the same elements and I don't want signing this contract to come back to bite me in the future!"

(Doc. No. 118 at ¶ 25) (emphasis added).

Goldner responded to Plaintiff's July 3, 2017 inquiry via email on July 11, 2017, in which he stated that Plaintiff was "***in the free*** to and clear to work ***on your property outside of the context of our contract***" and explained that the contract is specifically for the table card game and stuffed

animal. (Doc. No. 118 at ¶ 26). Goldner, to address Plaintiff's concerns, further informed Plaintiff that he included the following language in the "Collaboration Agreement," "***[Plaintiff] has the right to pursue his Comic "Webcomic Name" outside of the context of this agreement***." (Doc. No. 118 at ¶ 26). Relying on Goldner's assurances that Plaintiff was "free and clear" to exploit their property outside the context of the "Collaboration Agreement," Plaintiff executed the "Collaboration Agreement" on August 10, 2017 (the "Collaboration Agreement"). (Doc. No. 118 at ¶ 27).

B. Defendants Misappropriated and Copied Plaintiff's Copyrighted Works In Multiple Trademark Submissions:

Following execution of the Collaboration Agreement, Defendants submitted **four** (4) trademark applications to the USPTO, without Plaintiff's knowledge or consent, seeking to register various aspects of Plaintiff's copyrighted work (collectively, the "Trademark Applications"). *See* Exs. 1, 3 and 5. In **three** (3) of the four Trademark Applications, Defendants submitted Plaintiff's copyrighted work **after** Plaintiff received their copyright registration from the U.S. Copyright Office, misrepresented that Defendants had been using Plaintiff's Copyrighted Works in commerce, and most importantly, misrepresented that Defendants were the rightful owners of Plaintiff's Copyrighted Works. *See* Exs. 2, 4 and 6.

1. The 934 Application:

On November 30, 2017, Goldner, on behalf of Golden Bell Entertainment, filed Application Serial No. 87703934 (the "934 Application") with the USPTO for registration of the trademark "Webcomic Name" in International Class No. 028, and represented that Golden Bell Entertainment is the owner of that trademark. (Doc. No. 118 at ¶ 36-37). Among the specimens filed in support of the 934 Application was a photograph taken of a Golden Bell Entertainment booth at the Keystone Comic-con convention. (Doc. No. 118 at ¶ 39). Ultimately, the USPTO

issued a registration for "Webcomic Name" on December 11, 2018, Registration No. 5629281 in favor of Golden Bell Entertainment (the "281 Mark"). (Doc. No. 119 at ¶ 24).

2. The 369 Application:

On October 9, 2018, Goldner, on behalf of Golden Bell Entertainment, filed Application Serial No. 88147369 (the "369 Application") with the USPTO for registration of the trademark "Webcomic Name" in International Classes 016 (for: comic books, comic strips, comic strips' comic features, comics, and newspaper comic strips) and 025 (for t-shirts). (Doc. No. 118 at ¶ 46). In support of the 369 Application, *without* Plaintiff's permission, Goldner took screenshots of Plaintiff's Facebook page (and Patreon account as purported specimens of Golden Bell Entertainment's use of the trademark, Webcomic Name in commerce.(Doc. No. 118 at ¶ 48-49).

3. The 215 Application:

On November 8, 2018, Goldner, on behalf of Golden Bell Entertainment, filed Application Serial No. 88975215 (the "215 Application") with the USPTO for registration of the trademark "Oh No" in International Classes 16 (for: comic books, comic strips, comic strips' comic features, comics, and newspaper comic strips) and 28. (for: bookmarkers, bookmarks, comic books, comic magazines, comic strips, comic strips' comic features, comics, stickers, newspaper comic strips, t-shirts, graphic t-shirts, short-sleeved or long-sleeved t-shirts, plush toys, stuffed toy animals, stuffed and plush toys, toy stuffed animals) (Doc. No. 118 at ¶ 50). In support of the 215 Application, Golden Bell Entertainment filed screenshots of Plaintiff's Facebook page and website as purported specimens of use of the trademark "Oh No" in commerce. (Doc. No. 118 at ¶ 51).

4. The 795 Application:

Because the 215 Application sought trademark protection under multiple international classes, the USPTO subsequently divided the 215 Application into two separate applications and identified the subsequently divided portion of the 215 Application with Application Serial No.

88185795 (the "795 Application").

C.      Plaintiff Registered Their Works With The U.S. Copyright Office:

In December 2018, Plaintiff copyrighted some of the "Webcomic Name" comic strips and illustrations under Copyright Registration No. VAu 1-337-956 (the "Copyright Registration"). (Doc. No. 118 at ¶ 11). Those copyrighted works included the comic strips: a) Different, b) Imagination, c) Impossible, and d) Procrastination. (Doc. No. 118 at ¶ 11) (collectively, the "Copyrighted Works").

D.      Defendants Send Frivolous Cease and Desist Letters:

On March 28, 2019, Andrea Timpone of Garson, Segal, Steinmetz, Fladgate LLP, as counsel for Defendants, sent a letter to McMeel demanding that McMeel refrain from publishing Plaintiff's "Oh No" book (the "Book") and claiming that the Book infringed upon the 281 Mark. (Doc. No. 118 at ¶ 66). The next day, Ms. Timpone sent a letter to Plaintiff's counsel claiming that Golden Bell Entertainment was the rightful owner of "Webcomic Name," and that Golden Bell Entertainment had also acquired trademark rights over the trademark "Oh No." (Doc. No. 118 at ¶ 67). On April 1, 2019, Plaintiff's counsel responded to Ms. Timpone and informed her that "… [Golden Bell Entertainment] is improperly attempting to use the Collaboration Agreement as a vehicle to misappropriate the intellectual property rights belonging to [Plaintiff]." (Doc. No. 118 at ¶ 68). On April 4, 2019, Ms. Timpone sent a second letter to McMeel threatening legal action if McMeel moved forward with the publication of Plaintiff's Book. (Doc. No. 118 at ¶ 69) (collectively, "the Cease and Desist Correspondence").

E.      Despite The Summons And Complaint Plaintiff Continued To Submit The
        Copyrighted Works To The USPTO:

On June 12, 2019, Plaintiff filed their Summons and Complaint. (Doc. No. 1). On August 6, 2020, Plaintiff filed their's Supplemental Summons and Supplemental Complaint to reflect

Defendants' subsequent filings with the USPTO since the Summons and Complaint. (Doc. No. 39).

       1.     The 795 Application:

On November 18, 2019, ***despite*** the exchanged Cease and Desist Correspondence and Plaintiff's Supplemental Pleadings, Golden Bell Entertainment filed additional specimens of use in support of the 795 Application with the USPTO. *See* Ex. 6. Those additional specimens of use contained portions of the Copyrighted Works, specifically: the comics: Impossible, Procrastination and Imagination. *See* Ex. 5.

       2.     The 215 Application:

On November 18, 2019, ***despite*** the exchanging of the Cease and Desist Correspondence and the Supplemental Pleadings, Golden Bell Entertainment again filed additional specimens of use in support of the 215 Application with the USPTO. *See* Ex. 4. Again, those, additional specimens of use contained portions of the Copyrighted Works, specifically: the comics: Impossible, Procrastination and Imagination. *See* Ex. 3.

       3.     The 369 Application:

On May 18, 2020, ***despite*** the Cease and Desist Correspondence exchanged between the parties, and the Supplemental Pleadings, Golden Bell Entertainment again filed additional specimens of use in support of the 369 Application with the USPTO. *See* Ex. 2. Again, those additional specimens of use contained portions of the Copyrighted Works, specifically: the yellow cat. *See* Ex. 1.

      F.     Defendants Impermissibly Used Confidential Settlement Material In This Action:

On January 31, 2022 (nearly ***two years*** after the Supplemental Pleadings), Judge Netburn conduced a settlement conference, and the parties ultimately reached a settlement agreement in principle. (Doc. No. 74). From January 32, 2022, through July 21, 2022, the parties attempted to

memorialize their settlement, however, settlement discussions collapsed. (Doc. No. 91). Following the collapse of the settlement discussions, on August 12, 2022, Plaintiff wrote to the Court advising that Defendants sought to use confidential materials produced to Defendants *solely* for settlement purposes as discovery in this Action. (Doc. No. 96). On August 17, 2022, Judge Netburn ordered Defendants to Show Cause as to why Defendants *and* Defendants' counsel should not be sanctioned for the impermissible use of confidential settlement material as discovery in this Action. (Doc. No. 98). Ultimately, the Order to Show Cause resolved itself, and the parties proceeded to briefing summary judgment.

       G.     <u>Defendants Filed Frivolous Tag-Along Actions</u>:

          1.     Defendants' Lawsuit Against Plaintiff and McMeel (the "Second Lawsuit"):

On September 7, 2023, Plaintiff wrote to the Court detailing that it had learned from McMeel's counsel that Defendants had filed a second lawsuit in the Southern District of New York claiming that Plaintiff's book deal with McMeel infringed upon Defendants' purported copyright (the "Letter"). (Doc. No. 152). As detailed in the Letter, *after* Defendants received Judge Netburn's Report and Recommendation holding that the Collaboration Agreement ***did not*** provide Defendants with expansive rights to Plaintiff's intellectual property but ***before*** the parties received this Court's Decision and Order affirming that portion of the Report and Recommendation, Defendants filed a second lawsuit in the Southern District of New York alleging claims against Plaintiff (that were ***expressly*** the subject of Judge Netburn's decision denying Defendants' ability to bring those counterclaims) and claims against McMeel that are both time-barred and barred by the doctrines of issue and claim preclusion (the "Second Lawsuit"). (Doc. No. 152.1). To date, Defendants have not voluntarily discontinued the Second Lawsuit.

2.      The Untimely Appeal To The Second Circuit:

Following this Court's Decision and Order predominantly adopting Judge Netburn's Report and Recommendation, Defendants filed a Notice of Interlocutory Appeal with the Second Circuit **even though** this Court's Decision and Order **did not** fully resolve all claims in this Action. (Doc. No. 156). This Court even commented that Defendants' appeal was procedurally improper because this Court had not (and to this day, has not) yet issued a final ruling on Plaintiff's claims in this Action. (Doc. No. 157). Plaintiff has filed a Motion to Dismiss the Appeal and is awaiting a decision from the Second Circuit.

H.      Defendants Forced Plaintiff To Expend Significant Attorneys' Fees:

As a result of Defendants' vexatious conduct throughout the entirety of this Action, Plaintiff has been forced to expend significant money in attorneys' fees to prosecute, attempt to settle and preserve the confidentiality and integrity of the negotiations, and dodge every attempt from Defendants to decimate Plaintiff's intellectual property rights and creative career. In total, Plaintiff has expanded $273,509.49 in attorneys' fees. *See* Exs. A and B. The $273,509.49 represents Plaintiff's incurred attorney's fees prosecuting this Action in the three years since the preparation of and filing of the Supplemental Pleadings. *See* Exs. A and B.

III.   **ARGUMENT**:

In support of this Motion, Plaintiff makes two arguments.

**First**, Plaintiff is entitled to $450,000 in statutory damages, pursuant to 17 U.S.C. § 504(b) and 17 U.S.C. § 504(c)(2), because Defendants' infringement of the Copyrighted Works, in Defendants' three (3) submissions to the USPTO, was willful.

**Second**, because Defendants' infringement of the Copyrighted Works was willful, Plaintiff is entitled to $273,509.49 in attorneys' fees that Plaintiff has paid to date since Plaintiff filed the Supplemental Pleadings.

-10-

A.      This Court Should Award Plaintiff $450,000 In Statutory Damages:

1.      Legal Standard:

"Under the Copyright Act, a copyright owner may elect to receive from an infringer either: (i) the actual damages he suffered as a result of the infringement, and any profits of the infringer attributable to the infringement and not taken into account in computing actual damages, 17 U.S.C. § 504(b), or (ii) statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually in a sum of not less than $750 or more than $30,000 as the court considers just. 17 U.S.C. § 504(c)(1)." *Anderson v. Primera Plana NY, Inc.*, Civ No. 17-cv-7715 (JMF)(KNF), 2019 WL 1936741, *2 (S.D.N.Y. Mar. 29, 2019) (internal citations and quotations omitted). Moreover, "[c]ourts rely on several factors when determining a statutory damages award for copyright infringement and have borrowed and applied those factors in the context of trademark infringement. These factors include (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright or, by analogy, trademark; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant." *Mattel, Inc. v. 2012SHININGROOM212*, Civ. No. 18-cv-11648 (PKC), 2020 WL 5743517, *9 (S.D.N.Y. Sept. 25, 2020). Further, "[w]here a court finds that an infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000. 17 U.S.C. § 504(c)(2)." *Id.* at *3 (internal citations and quotations omitted). Finally, "[t]o prove willfulness, plaintiffs must show that the infringer had actual or constructive knowledge that it was infringing the plaintiff's copyrights or else acted in reckless disregard of the high probability that it was infringing plaintiffs' copyrights." *Arclightz and Films Pvt. Ltd. v. Video Palace Inc.*, 303 F.Supp.2d 356, 361-362 (S.D.N.Y. 2003).

*See also*, *Bass v. Diversity Inc. Media*, Civ. No. 19-cv-2261 (AJN), 2020 WL 2765093, *3 (S.D.N.Y. May 28, 2020) ("Under the Copyright Act, a plaintiff who elects statutory damages is entitled to an award of between $750 and $30,000 per work infringed, as the court considers just. 17 U.S.C. § 504 (c)(1). Where the infringement is willful, the maximum permissible award per infringed work rises to $150,000. *Id*. § 504(c)(2).").

2.   Defendants Copyright Infringement Was Willful:

Defendants infringement of the Copyrighted Works through submission of the Trademark Applications was willful because Defendants had ***actual knowledge*** that Plaintiff claimed that the Collaboration Agreement provided Defendants with no rights to the Copyrighted Works (only rights to the not yet created table top card game and plush toy) and despite that ***actual knowledge***, Defendants deliberately chose to submit the Copyrighted Works to the USPTO through the Trademark Applications misrepresenting that Defendants had rights to the Copyrighted Work. As the Second Circuit articulated: "[w]e have held that for the purpose of awarding enhanced statutory damages under § 504(c)(2), an infringement is willful if the defendant had knowledge that its actions constitute an infringement. This knowledge may be actual or constructive. In other words, it need not be proven directly but may be inferred from the defendant's conduct." *N.A.S. Import, Corp. v. Chenson Enterprises, Inc*., 968 F.2d 250, 252 (2d. Cir. 1992); *See also*, *Jordan Mozer and Associates, Ltd. v. Starck*, Civ. No. 13-cv-1181 (JPO), 2014 WL 1327960, *2 (S.D.N.Y. Apr. 3, 2014). Here, there can be no real dispute that Defendants had both actual and constructive knowledge that Defendants' submission of the Copyrighted Works through the Trademark Applications to the USPTO constituted copyright infringement because Plaintiff wrote to Defendants clearing articulating that the Collaboration Agreement provided Defendants with absolutely no rights to the Copyrighted Works, and, at a minimum, Defendants recklessly disregarded Plaintiff's position by nevertheless submitting the Copyrighted Works to the USPTO

through the Trademark Applications *after* receipt of the Cease and Desist Correspondence, the Summons and Complaint, and the Supplemental Pleadings. *See* Exs. 2, 4, 6. For these reasons, Defendants had *both* actual and constructive knowledge that their copyright infringement was willful (or at a minimum, demonstrated a reckless disregard that their actions might constitute copyright infringement) and, Plaintiff is entitled to maximum statutory damages of $150,000 per infringement for a total of $450,000.

(a)  Defendants' Actual Knowledge:

The Defendants had *actual knowledge* that they infringed upon the Copyrighted Works through the submission of the Trademark Applications because Defendants knew that Plaintiff had a preexisting suite of intellectual property that encompassed their's "Webcomic Name," Defendants represented to Plaintiff that the Collaboration Agreement would not interfere with Plaintiff's preexisting intellectual property, and that the Collaboration Agreement was limited in scope. (Doc. No. 39). All of which was articulated in the Cease and Desist Correspondence, the Summons and Complaint, and the Supplemental Pleadings (Doc. No. 39). In *Beastie Boys v. Monster Energy Co*., this Court commented: "Monster does not dispute that – without seeking or obtaining a license or other form of authorization from the Beastie Boys or their manager – it used excerpts of five Beastie Boys songs as the soundtrack for its recap video." *Beastie Boys v. Monster Energy Co*., 66 F.Supp.3d 424, 437 (S.D.N.Y. 2014). In affirming the jury's finding of willful infringement, this Court held: "[n]otwithstanding this awareness, Phillips did not seek permission from the Beastie Boys or their manager to use their music. Nor did he believe that anyone else at Monster had done so. The jury could thereby have determined that Phillips acted in reckless disregard of the Beastie Boys' rights when he directed Larsen to use their music in Monster's recap video without seeking the Beastie Boy's authorization." *Id*. at 440-41. *See also*, *Scafa-Tornabene Art Pub. Co., Inc. v. Pride Products Corp*., Civ. No. 03-cv-8273 (DLC) (MHD), 2007 WL

2469453, *4 (S.D.N.Y. Jun. 4, 2007) ("The evidence now proffered by plaintiff plainly supports the District Court's earlier finding, in its entry of default against defendant He, that the infringing acts were indeed willful."). In this Action, it is undisputed that Defendants knew (prior to executing the Collaboration Agreement) that Plaintiff possessed an expansive suite of intellectual property, that the Collaboration Agreement only provided rights to a limited scope of intellectual property, and that Defendants did not seek permission from Plaintiff before submitting the Copyrighted Works through the Trademark Applications to the USPTO. (Doc. No. 146 and Doc. No. 150). Indeed, as both Judge Netburn's Report and this Court's Decision and Order make clear, Defendants' had an entirely unfounded belief that the Collaboration Agreement provided Defendants with rights to the entire suite of Plaintiff's intellectual property, and ultimately, authorization to submit the Copyrighted Works through the Trademark Applications to the USPTO. (Doc. No. 146 and Doc. No. 150). Therefore, like *Beastie Boys*, Defendants had ***actual knowledge*** that their actions constituted copyright infringement because Defendants ***knew*** that Plaintiff had a suite of intellectual property that ***was not*** covered by the Collaboration Agreement and nevertheless submitted the Copyrighted Works through the Trademark Applications to the USPTO. (Doc. No. 146 and Doc. No. 150). Defendants undertook these actions ***without*** consulting Plaintiff and deliberately choosing to misrepresent that Golden Bell Entertainment owned the Copyrighted Works. (Doc. No. 146 and Doc. No. 150). What's more, Defendants undertook ***no*** effort to ensure that the Trademark Applications did not conflict with Plaintiff's rights to their's suite of intellectual property. Further, Defendants submitted the Trademark Applications ***after*** Plaintiff had articulated their's position in no less than ***three*** (3) documents, including ***two*** (2) Complaints before this Court. For these reasons, Defendants had actual knowledge that their actions constituted copyright infringement.

(b)     Defendants' Constructive Knowledge:

At a minimum, Defendants had constructive knowledge that their actions likely constitute copyright infringement because Plaintiff articulated as much in the Cease and Desist Correspondence, the Summons and Complaint, and the Supplemental Pleadings, and Defendants nevertheless submitted the Copyrighted Works through the Trademark Applications to the USPTO. (Doc. No. 39). In *Broadcast Music, Inc. v. Prana Hospitality, Inc*., this Court commented: "[h]ere, there is considerable evidence that defendants willfully infringed plaintiffs' copyrights. As noted, plaintiffs have shown that between September 2012 and October 2014, BMI sent 48 letters/emails, and made 42 phone calls and four in-person visits to defendants, first alerting defendants of the need to execute a license agreement if they wished to continue playing songs in BMI's repertoire, and later admonishing them to cease and desist their unlawful conduct. … This conduct easily establishes that defendants, at the least, recklessly disregarded plaintiffs' rights." *Broadcast Music, Inc. v. Prana Hospitality, Inc*., 158 F.Supp.3d 184, 198 (S.D.N.Y. 2016). *See also*, *McCurry v. Accessory Network Group, LLC*, Civ. No. 15-cv-9779 (PGG) (KNF), 2016 WL 11620045, *4 (S.D.N.Y. Oct. 5, 2016) ("The record evidence supports the plaintiff's contention that the defendant's infringement was willful: the defendant failed to respond to the plaintiff's cease and desist letter while continuing to display the Photograph after the date of the initial letter."). Consistently, in *Viacom Intern. Inc. v. Franzine Intern*., the Court held that the defendant's infringement was willful because "… upon becoming aware of Franzine's single-sheet product, Viacom sent Franzine a cease-and-desist letter on September 2, 1998. Franzine responded by letter dated September 8, 1998, claiming that its product constituted fair use and that Nickelodeon intended its publicity materials be published. … Thus, Franzine continued to engage in infringing activities despite having been placed on notice of Viacom's objections." *Viacom Intern. Inc. v. Franzine Intern*., Civ. No. 98-cv-7448 (RCC), 2001 WL 930248, *4 (S.D.N.Y. Aug.

16, 2001). *See also, Sygall v. Pitsicalis*, No. 18-cv-02730 (VSB) (SN), 2022 WL 3044773, *4 (S.D.N.Y. May 16, 2022) ("To show non-innocent infringement, a plaintiff must prove that a defendant had knowledge that its conduct represented infringement or recklessly disregarded the possibility. Sygll has satisfied this standard: the Pitsicalis Defendants (including Hendrix) knew they had no license to use the Copyrighted Photograph and disregarded the possibility that his work was copyrighted despite participating in an industry where copyright is prevalent."); *Peer Intern. Corp. v. Luna Records, Inc*., 887 F.Supp. 560, 568 (S.D.N.Y. Apr. 28, 1995) ("For the same reasons that I reject Abel De Luna's defenses, I find that his infringement of the seven compositions was willful. Plaintiffs have established directly through Abel De Luna's testimony that defendants received the September 1990 notice terminating the licenses at issue unless Luna paid its overdue royalties. Nevertheless, defendant Luna, with Abel De Luna's knowledge, continued to make and distribute the previously licensed and unlicensed phonorecords, even some several months after this action was commenced.").

This Action is on all fours with *Broadcast Music, Inc.,* and *Viacom Intern. Inc.* because Plaintiff wrote to Defendants ***expressly*** objecting to Defendants' submissions of the Copyrighted Works through the Trademark Applications to the USPTO because Defendants were not the rightful owner of the trademarks: "Oh No," and "Webcomic Name." (Doc. No. 118 at ¶ 68). Defendants ***knew*** that this was Plaintiff's position because in Plaintiff's view, the Collaboration Agreement only contemplated Defendants receiving limited rights to the intellectual property contained in the table card game and created the plush toy ***after*** Plaintiff created those items. (Doc. No. 118 at ¶ 68). Despite the Cease and Desist Correspondence, the Summons and Complaint, and the Supplemental Pleadings, Defendants chose to intentionally disregard Plaintiff's position, and nevertheless submitted the Copyrighted Works through the Trademark Applications to the

USPTO. (Doc. No. 118 at ¶ 68). Therefore, consistent with *Broadcast Music, Inc.,* and *Viacom Intern. Inc.*, Defendants had, at a minimum, constructive knowledge that their actions likely constituted copyright infringement because Defendants disregarded Plaintiff's position entirely and made a calculated choice to submit the Copyrighted Works through the Trademark Applications to the USPTO.

Thus, based on the extensive evidence in the record, this Court should find that Defendants willfully infringed upon the Copyrighted Works because Defendants had both actual and constructive knowledge that their actions constituted copyright infringement.

### 3. Plaintiff Is Entitled To $150,000 Per Infringing Act For A Total Of $450,000:

Pursuant to 17 U.S.C. § 504(c)(1) and (c)(2), the Court should award Plaintiff $150,000 per infringing act for a total of $450,000 in statutory damages because Defendants' infringement was willful, and Defendants must be deterred from continued and future interference with Plaintiff's livelihood, "Webcomic Name." It is well settled that: "[i]n making an award of statutory damages, the Court must consider various factors, including the expenses saved and the profits reaped by the infringer, revenues lost by the plaintiffs, the value of the copyright, the deterrent effect of the award on others beside the defendant, whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced, and the potential for discouraging the defendant." *Noble v. Crazetees.com*, Civ. No. 13-cv-5086 (PAE)(HBP), 2015 WL 5697780, *6 (S.D.N.Y. Sept. 28, 2015). Here, a statutory damages award of $450,000 is warranted because Defendants, ***despite*** this Court's rulings, have continued and will continue to hinder Plaintiff's livelihood (creating "Webcomic Name") by continuing to advance meritless claims to Plaintiff's intellectual property, which have the effect of hindering Plaintiff's livelihood. (Doc. No. 152). Therefore, Plaintiff should be awarded no less than $450,000 in

statutory damages pursuant to 17 U.S.C. § 504(c)(1) and (c)(2) based on Defendants' willful copyright infringement, which will act as a deterrent to any additional and future infringement upon Plaintiff's suite of intellectual property.[5]

In *Rauch Industries, Inc. v. David Strand Designs, LLC*, the Court held: "[h]owever, DSD willfully infringed on Rauch's copyrights and evaded the legal process. Indeed, it has yet to remove the infringing ornaments from its website. Because the probability of DSD continuing to infringe on Rauch's copyrighted designs is high, the damages award must be large enough to deter DSD and others from further violating Rauch's copyrights." *Rauch Industries, Inc. v. David Strand Designs, LLC*, Civ. No. 10-cv-5476 (LAK) (JCF), 2011 WL 13383540, *3 (S.D.N.Y. Nov. 21, 2011). Similarly, in *Stevens v. Aeonian Press, Inc*., the Court held: "[i]t also is relevant to the damages award that at trial the Court found Defendant Clauss, who also controls Defendant Amereon, to be evasive and incredible in his testimony regarding his business dealings, and was convinced that Clauss well knew that he was infringing on Plaintiffs' copyrights, and chose to continue to conduct his business in such a way for as long as he could get away with it." *Stevens v. Aeonian Press, Inc*., Civ. No. 00-cv-6330 (JSM), 2002 WL 31387334, *3 (S.D.N.Y. Oct. 23, 2022). Consistently, in *Kepner-Tregoe, Inc. v. Vroom*, the Second Circuit held: "[t]he $100,000 statutory copyright infringement damages were justified in this case since the district court's finding that Dr. Voom willfully violate the agreement was supported by the evidence presented at trial. Dr. Vroom continued to use the MPO program even after a Texas district court and the Fifth

---

[5] It bears repeating that the Collaboration Agreement contemplated that Plaintiff would create a table card game and a plush toy that incorporated elements of Plaintiff's "Webcomic Name." (Doc. No. 118 at ¶ 17). However, the table card game was never completed and only a sample of the plush toy was created. (Doc. No. 146). Therefore, there is no real evidence on the record as to the value of Plaintiff's copyright because Defendants have been prevented Plaintiff from fully protecting their's intellectual property. Simply, because the table-top game and the plush-toy were never created, there is no evidence on the record regarding profits, losses and revenue from Defendants' infringement of the Copyrighted Works.

Circuit found that the MPO program infringed K-T's copyrights and entered an injunction against LSI's use of the MPO program." *Kepner-Tregoe, Inc. v. Vroom*, 186 F.3d 283, 288-289 (2d. Cir. 1999). The same factors are present in this Action.

Like *Rauch Industries, Inc.* and *Kepner-Tregoe, Inc.*, Defendants have already continued to infringe upon Plaintiff's intellectual property by commencing the Second Lawsuit arguing that Plaintiff's contract with McMeel violates the Collaboration Agreement ***despite*** this Court's prior rulings that the Collaboration Agreement ***does not*** provide Defendants with any basis to claim any rights to Plaintiff's book deal with McMeel. (Doc. No. 152.1). Defendants are continuing to assert rights over intellectual property over which this Court has told Defendants they have no basis to do so. (Doc. No. 152.1). In essence, the Second Lawsuit is no different than Dr. Voom's continued use of the MPO program because Defendants are laying claims to Plaintiff's intellectual property to which this Court has already ruled that Defendants have no rights. (Doc. No. 152.1). At base, the Second Lawsuit will require Plaintiff to expend more monies on attorneys' fees vindicating their's rights when ***this*** Court in ***this*** Action has adjudicated the scope of the Collaboration Agreement. (Doc. No. 146 and Doc. No. 150). Like *Stevens*, Defendants' positions in this Action have already been determined to lack credibility because they are without any support grounded in the text of the Collaboration Agreement. (Doc. No. 146 and Doc. No. 150). By way of limited example, when filing the Second Lawsuit, Defendants failed to notify the Court that this Action was pending electing to try and have the Second Lawsuit escape scrutiny by the very judges that have the most familiarity with the subject material. (Doc. No. 152.2). Therefore, Plaintiff should be awarded no less than $450,000 in statutory damages pursuant to 17 U.S.C. § 504(c)(1) and (c)(2) based on Defendants' willful copyright infringement, which will act as a deterrent to any additional and future infringement upon Plaintiff's suite of intellectual property.

B.      <u>Plaintiff Is Entitled To $273,509.49 – Their's Reasonable Attorneys' Fees</u>:

1.      <u>Legal Standard</u>:

"In any civil action under the Copyright Act, the court in its discretion may allow the recovery of full costs by or against any party other than the United or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs. 17 U.S.C. § 505. The phrase "full costs" used in 17 U.S.C. § 505 is commensurate with those allowed under 28 U.S.C. § 1920." *Anderson v. Primera Plana NY, Inc.*, Civ No. 17-cv-7715 (JMF)(KNF), 2019 WL 1936741, *4 (S.D.N.Y. Mar. 29, 2019) (internal citations and quotations omitted). Further, "[i]n determining whether to award attorney's fees, district courts may consider such factors as (1) the frivolousness of the non-prevailing party's claims or defenses; (2) the party's motivation; (3) whether the claims or defenses were objectively reasonable; and (4) compensation and deterrence. The third factor – objective reasonableness – should be given substantial weight." *Farrington v. Sell It Social, LLC*, Civ. No. 18-cv-11696 (JPC), 2020 WL 7629453, *3 (S.D.N.Y. Dec. 21, 2020). *See also*, *Mordant v. Citinsider LLC*, Civ. No. 18-cv-9054 (RA), 2019 WL 3288391, *2 (S.D.N.Y. Jul. 22, 2019) ("As an initial matter, the Court finds it appropriate to compensate Plaintiff's counsel here with reasonable attorney's fees and costs incurred in bringing this action and ultimately obtaining a default judgment. Counsel has submitted contemporaneous billing records reflecting the nature of the work he performed, when, and the number of hours he spent on each task. Such a submission meets the evidentiary threshold for the recovery of attorney's fees.") (internal citations and quotations omitted).

2.      <u>Defendants Contumacious Conduct Throughout This Action</u>:

Plaintiff is entitled to $273,509.49 in attorneys' fees which represents the reasonable value of the services provided to Plaintiff to prosecute this Action and vindicate their's intellectual property. It is well understood that: "[s]ection 505 of the Copyright Act authorizes the Court, a its

discretion, to award costs and reasonable attorneys' fees to the prevailing party. 17 U.S.C. § 505. In exercising this discretion, the Court may consider, *inter alia*, frivolousness, motivation, objective reasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence. The Second Circuit has held that it is appropriate to award attorneys' fees where the infringement was willful." *Broadcast Music, Inc. v. Prana Hospitality, Inc*., 158 F.Supp.3d 184, 199-200 (S.D.N.Y. 2016). *See also*, *Prokos v. Mont Morris, LLC*, Civ. No. 20-cv-2323 (PKC), 2020 WL 5819904, *2 (S.D.N.Y. 2020) ("Lastly, Prokos seeks reimbursement of costs and an attorneys' fees award. The Copyright Act permits an award of full costs and reasonable attorneys' fees to the prevailing party. … He seeks $4,673 in attorneys' fees, which reflect 7.8 hours of attorney time at a rate of $485 per hour and 8.9 hours of paralegal time at a rate of $100 per hour. The Court finds that the costs and attorneys; fees are reasonable, and they will therefore be awarded."). Here, as detailed above, Defendants willfully infringed upon the Copyrighted Works by their submission through the Trademark Applications to the USPTO. Defendants vexatious conduct throughout the entirety of this Action, including but not limited to Defendants' refusal to provide availability for depositions, unsuccessful settlement negotiations that lasted nearly nine months, the filing of the Second Lawsuit, and the Appeal with the Second Circuit necessitated the expenditure of $273,509.49 in attorneys' fees. Therefore, consistent with 17 U.S.C. § 505, Plaintiff is entitled to $273,509.49 in attorneys' fees because of Defendants willful copyright infringement and vexatious conduct.

It is well-understood that "[w]hen determining the reasonableness of the hours expended on the case, courts consider whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures. The plaintiff, as the party seeking attorney's fees, bears the burden of demonstrating that his request is reasonable by submitting

contemporaneous time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Tabak v. Lifedaily*, Civ. No. 21-cv-04291 (LLS), 2021 WL 5235203 (S.D.N.Y. Nov. 9, 2021). As detailed in the Declaration of Francelina Perdomo Klukosky, Plaintiff has provided the Court with contemporaneous time records that specify (for each timekeeper) the hourly rate, the hours expended, and the nature of the work done in prosecuting this Action. *See* Exs. A and B.[6] As this Court is well aware, Plaintiffs has been ready, willing and able to resolve this Action, but Defendants kept moving the goalposts causing this Action to be quite costly to Plaintiff. (Doc. No. 98). Whether it was Defendants' refusal to provide their availability for depositions or their impermissible use of confidential settlement material, Defendants have been unnecessarily vexatious throughout the entirety of this Action. (Doc. No. 98). For these reasons, Plaintiff is entitled to $273,509.49 in attorneys' fees because of Defendants willful copyright infringement and vexatious conduct.

IV.    **<u>CONCLUSION</u>**:

For the reasons set forth above, Plaintiff requests that this Court grant this Motion in its entirety, award Plaintiff $450,000 in statutory damages, award Plaintiff $273,509.49 in attorneys' fees along with whatever other relief this Court deems just and proper.

---

[6] Lettered exhibits are annexed to the Declaration of Francelina M. Perdomo Klukosky.

## CERTIFICATION OF COMPLIANCE

Pursuant to Local Civil Rule 11.1, I, Christie R. McGuinness, hereby certify that this Memorandum of Law complies with the formatting rules, and the total number of words in this Memorandum of Law, excluding the caption, certification of compliance, table of contents, and table of authorities, is 6,889.

This the 22nd day of December, 2023.

*/s/ Christie R. McGuinness*
Christie R. McGuinness

## CERTIFICATE OF SERVICE

I, Christie R. McGuinness, hereby certify that on December 22nd, 2023, the foregoing document was filed electronically with the Clerk of the Court using the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Christie R. McGuinness*
Christie R. McGuinness