# EXHIBIT D

Case 1:19-cv-05491-PAE-SN   Document 184-4   Filed 02/16/24   Page 2 of 7

ALEXANDER NORRIS vs MARC GOLDNER et al.
Alexander Norris on 08/18/2022

```
 1                 UNITED STATES DISTRICT COURT

 2                 SOUTHERN DISTRICT OF NEW YORK

 3   ALEXANDER NORRIS,              )
                                    )
 4        Plaintiffs/Cross-Defendant, )
                                    )   Civil Action No.
 5   v.                             )   1:19-CV-05491 - PAE
                                    )
 6   Marc Goldner, Individually and as )
     Officer of GOLDEN BELL         )
 7   ENTERTAINMENT, LLC, a California )
     company and GOLDEN BELL STUDIOS, )
 8   LLC, GOLDEN BELL ENTERTAINMENT, )
     LLC., a California Company and  )
 9   GOLDEN BELL STUDIOS, LLC.,      )
                                    )
10        Defendants/Cross-Complainant, )
     - - - - - - - - - - - - - - - - - -

11

12                                   CERTIFIED COPY

13

14

15

16

17        VIDEOCONFERENCE DEPOSITION OF ALEXANDER NORRIS

18                 THURSDAY, AUGUST 18, 2022

19                      PAGES 1 - 131

20

21

22

23

24   STENOGRAPHICALLY REPORTED BY:

25   AIMEE EDWARDS-ALTADONNA, RPR, CSR No. 13979
```



1      Q.  We can circle back to that.

2          Mr. Norris, I'm going to upload Exhibit Number

3  5 to the chat so that you can open it and review it.

4          Please let me know when you're ready to answer

5  questions about that.

6          (Exhibit 5 was marked.)

7          THE WITNESS:  Yes, I have it in front of me.

8  BY MR. DOLAN:

9      Q.  Okay.

10         Mr. Norris, do you recognize Exhibit Number 5?

11     A.  It looks like -- yes.

12     Q.  Okay.

13         And have you seen Exhibit Number 5 before?

14     A.  If it's the thing I've seen before, then yes.

15     Q.  And what is Exhibit Number 5?

16     A.  It's titled "Golden Bell and Alex Norris

17 Collaboration Agreement."

18     Q.  And I believe it's the fifth page of the PDF,

19 the document as a whole, there's a signature on the

20 bottom on the right-hand side.

21         Is that your signature?

22     A.  Yes.

23     Q.  Okay.

24         Mr. Norris, after you signed the agreement with

25 Golden Bell, you had phone calls with and meetings with

59

REGAL

1  Marc Goldner and Rachel Korsen regarding how to proceed;

2  is that correct?

3     A.  Could you repeat the question, please?

4     Q.  Did you speak with Marc Goldner and Rachel

5  Korsen after you signed this agreement of how to proceed

6  with the work?

7     A.  Could you specify "speak"?  What do you mean?

8     Q.  Did you communicate with them via email, text

9  message, phone calls, et cetera?

10    A.  There were emails and a -- I believe one phone

11 call after the signing of this.

12    Q.  Okay.

13       And you guys discussed the plans for the

14 projects; is that correct?

15       MS. PERDOMO:  Objection.

16       THE WITNESS:  Could you rephrase "projects,"

17 please?

18 BY MR. DOLAN:

19    Q.  Did you guys discuss the projects identified or

20 related to this agreement?

21       MS. PERDOMO:  Objection.

22       THE WITNESS:  At the time I believed it to be

23 one project, which was the -- you know, I signed this

24 under the assumption it was for a single game and some

25 promotion -- a promotional stuffed toy.

REGAL

```
 1  BY MR. DOLAN:
 2      Q.  Okay.
 3          So -- but you guys did discuss a line of toys?
 4      A.  Marc Goldner --
 5          MS. PERDOMO:  Objection.
 6          THE WITNESS:  -- as you've seen in other
 7  exhibits says hundreds of things at once.  And I -- just
 8  because he said something doesn't mean that I agree with
 9  it.
10  BY MR. DOLAN:
11      Q.  Okay.
12          But did you guys discuss stuffed animals in
13  relation to this agreement?
14          MS. PERDOMO:  Objection.  Mischaracterizes the
15  response.
16          THE WITNESS:  Could you rephrase, please?
17  BY MR. DOLAN:
18      Q.  Did you, Marc, and Rachel ever discuss stuffed
19  animals in relationship to this agreement?
20      A.  You mean after the agreement was -- after this
21  point?
22      Q.  At any point did the three of you discuss
23  developing stuffed animals?
24      A.  Yes.  Although I believe at the time I was
25  under the impression it was one stuffed promotional toy.
```

61

REGAL

1    Q.  Give me just one moment, Mr. Norris.  I'm ...

2         Mr. Norris, on the phone calls with Marc and

3    Rachel, do you recall discussing Golden Bell publishing

4    a calendar of Webcomic Name comics?

5    A.  I believe it was one phone call.

6    Q.  Okay.

7         But do you recall discussing a -- Golden Bell

8    producing a calendar?

9    A.  Could you rephrase the question, please?

10   Q.  Do you recall speaking with Marc and Rachel

11   about a calendar for Webcomic Name comics?

12   A.  I recall Marc Goldner and Rachel talking about

13   a calendar, yes.

14   Q.  Do you recall saying anything about the

15   calendar?

16   A.  The phone call you're referencing was the first

17   time I ever spoke to them, and I'm quite a agreeable

18   person.  I think that my responses to that would be

19   trying to be polite in that moment and they didn't

20   actually indicate what we were making -- I think we were

21   supposed to be making a game; so ...

22   Q.  Okay.

23        So do you or do you not recall responding to

24   them regarding a calendar and what you said to them?

25   A.  I don't recall what I said.

REGAL

ALEXANDER NORRIS vs MARC GOLDNER et al.
Alexander Norris on 08/18/2022

1        CERTIFICATE OF STENOGRAPHIC REPORTER

2        I certify that the witness in the foregoing remote

3    deposition, ALEXANDER NORRIS, was by me duly sworn in

4    remotely to testify in the within-entitled cause; that

5    said deposition was taken remotely at the time therein

6    named; that the testimony of said witness was

7    stenographically reported by me, a duly Certified

8    Shorthand Reporter of the State of California authorized

9    to administer oaths and affirmations, and said testimony

10   was thereafter transcribed into typewriting to the best

11   of my ability via remote teleconferencing.

12       I further certify that I am not of counsel or

13   attorney for either or any of the parties to said

14   deposition, nor in any way interested in the outcome of

15   the cause named in said deposition.

16       The dismantling, unsealing, or unbinding of the

17   original transcript will render the Reporter's

18   Certificate null and void.

19       IN WITNESS WHEREOF, I have hereunto set my hand this

20   1st day of September, 2022.

21

22

23   *Aimee Edwards Altadonna*

24   AIMEE EDWARDS-ALTADONNA, RPR
     Certified Shorthand Reporter
25   Certification No. 13979

131

REGAL