UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ALEXANDER NORRIS d/b/a WEBCOMIC NAME, | Case No. 19-cv-5491 (PAE) (SN) |
| Plaintiff, | |
| -against- | |
| MARC GOLDNER, GOLDEN BELL ENTERTAINMENT, LLC, and GOLDEN BELL STUDIOS, LLC, | |
| Defendants. | |

**MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF ALEXANDER NORRIS'S MOTION FOR
<u>STATUTORY DAMAGES AND ATTORNEY'S FEES</u>**

MITCHELL SILBERBERG & KNUPP LLP

Eleanor M. Lackman (eml@msk.com)
437 Madison Ave., 25th Floor
New York, New York 10022-7001
Telephone: (212) 509-3900
Facsimile: (212) 509-7239

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................... 1

SUMMARY OF RELEVANT FACTUAL BACKGROUND AND STANDARDS ................... 3

ARGUMENT ................................................................ 7

I.   SECTION 412 OF THE COPYRIGHT ACT ENTIRELY BARS PLAINTIFF'S
     ELIGIBILITY FOR STATUTORY DAMAGES AND ATTORNEY'S FEES ............... 7

     A.   Plaintiff's Registration Was Made Too Late, After the Commencement of Alleged
          Infringement ................................................... 7

     B.   Plaintiff's Registration Is Not Valid in the First Place ....... 9

II.  EVEN IF, *ARGUENDO*, PLAINTIFF'S WORKS ARE ELIGIBLE FOR STATUTORY
     DAMAGES, HE HAS FAILED TO MEET HIS BURDEN OF SUPPORTING THE
     AMOUNT HE SEEKS .................................................. 10

     A.   Plaintiff Mischaracterizes the Applicable Legal Standards ...... 10

     B.   Plaintiff Provides No Evidence to Support His Claimed Damages Amount ... 13

III. PLAINTIFF DOES NOT MEET THE THRESHOLD FOR RECOVERY OF FEES AND
     COSTS UNDER THE COPYRIGHT ACT .................................... 18

     A.   The Facts of This Case Do Not Merit an Award of Fees or Costs .. 18

     B.   Plaintiff Has Failed to Properly Justify and Substantiate the Fee and Cost Request .. 22

CONCLUSION ............................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Am. Inst. of Physics v. Schwegman, Lundberg & Woessner, P.A.*,
No. 12-528, 2013 WL 4666330 (D. Minn. Aug. 30, 2013)....................................................15

*Am. Inst. of Physics v. Winstead PC*,
No. 3:12-CV-1230, 2013 WL 6242843 (N.D. Tex. Dec. 3, 2013)..........................................14

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,
522 F.3d 182 (2d Cir. 2008)...........................................................................................23, 24

*Baker v. Urban Outfitters, Inc.*,
254 F. Supp. 2d 346 (S.D.N.Y. 2003)..................................................................................13

*Barcroft Media, Ltd. v. Coed Media Grp., LLC*,
No. 16-CV-7634(JMF), 2018 WL 357298 (S.D.N.Y. Jan. 10, 2018) ..............................17, 21

*Beastie Boys v. Monster Energy Co.*,
66 F. Supp. 3d 424 (S.D.N.Y. 2014)....................................................................................16

*Broad. Music Inc. v. Prana Hospitality, Inc.*,
158 F. Supp. 3d 184 (S.D.N.Y. 2016)...................................................................................17

*Bryant v. Media Right Prods., Inc.*,
603 F.3d 135 (2d Cir. 2010)..........................................................................................12, 17

*Cablevision Sys. New York City Corp. v. Diaz*,
No. 01 CIV. 4340(GEL), 2002 WL 31045855 (S.D.N.Y. July 10, 2002).............................22

*Creazoni Artistiche Musicali, S.r.l. v. Carlin Am., Inc.*,
No. 14-CV-9270 (RJS), 2017 WL 3393850 (S.D.N.Y. Aug. 4, 2017)...................................20

*Crescent Publ'g Grp., Inc. v. Playboy Enterprises, Inc.*,
246 F.3d 142 (2d Cir. 2001).................................................................................................24

*Cruz v. Loc. Union No. 3 of Int'l Bhd. of Elec. Workers*,
34 F.3d 1148 (2d Cir. 1994).................................................................................................22

*Design Pics Inc. v. PBH Networks, Inc.*,
No. 20-CV-1096(MKB), 2021 WL 74088 (E.D.N.Y. Jan. 8, 2021) ......................................12

*Elsevier B.V. v. UnitedHealth Group, Inc.*,
No. 09 Civ. 2124(WHP), 2010 WL 150167 (S.D.N.Y. Jan. 14, 2010) ...................................7

*Farberware Licensing Co. LLC v. Meyer Mktg. Co.*,
No. 09 CIV. 2570 (HB), 2009 WL 5173787 (S.D.N.Y. Dec. 30, 2009) ...............................25

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Feltner v. Columbia Pictures Television, Inc.*,
  523 U.S. 340 (1998)............................................................................................3

*Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*,
  670 F. Supp. 1133 (E.D.N.Y. 1987) .................................................................13

*Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*,
  807 F.2d 1110 (2d Cir. 1986)...........................................................................13

*Fogerty v. Fantasy Inc.*,
  510 U.S. 517 (1994)....................................................................................19, 20

*Fourth Estate Public Benefit Corp. v. Wall-Street.com*,
  139 S. Ct. 881 (2019)........................................................................................10

*Hartmann v. Google LLC*,
  No. 20 Civ. 5578(JPC), 2022 WL 684137 (S.D.N.Y. Mar. 8, 2022) ....................10

*Hennessy v. 194 Bedford Ave Rest Corp.*,
  No. 21 CV 5434(FB), 2022 WL 4134502 (E.D.N.Y. Aug. 8, 2022)................23, 24

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)..........................................................................................19

*Inst. For Dev. of Earth Awareness v. People for Ethical Treatment of Animals*,
  No. 08 Civ. 6195(PKC), 2009 WL 2850230 (S.D.N.Y. Aug. 28, 2009)................8

*Irwin v. ZDF Enterprises GmbH*,
  No. 04 Civ. 8027(RWS), 2006 WL 374960 (S.D.N.Y. Feb. 16, 2006)..................8

*Kirtsaeng v. John Wiley & Sons, Inc.*,
  579 U.S. 197 (2016)..........................................................................................20

*Knitwaves, Inc. v. Lollytogs LTD. (Inc.)*,
  71 F.3d 996 (2d Cir. 1995)................................................................................23

*Mango v. BuzzFeed, Inc.*,
  316 F. Supp. 3d 811 (S.D.N.Y. 2018)...............................................................12

*May v. Sony Music Ent'm't*,
  399 F. Supp. 3d 169 (S.D.N.Y. 2019)................................................................8

*McCurry v. Accessory Network Group, LLC*,
  No. 15-CIV-9779(PGG), 2016 WL 11620045 (S.D.N.Y. Oct. 5, 2016)................18

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*MyWebGrocer, Inc. v. Adlife Mktg. & Communications Co., Inc.*,
    No. 5:16-cv-310, 2019 WL 13177905 (D. Vt. Aug. 27, 2019) ................................17

*On Davis v. The Gap, Inc.*,
    246 F.3d 152 (2d Cir. 2001) ................................................................13

*Otto v. Hearst Commc'ns, Inc.*,
    No. 17-CV-4712-GHW, 2020 WL 377479 (S.D.N.Y. Jan. 23, 2020) .............................21, 22

*Peer Intern. Corp. v. Luna Records, Inc.*,
    887 F. Supp. 560 (S.D.N.Y. 1995) .........................................................17

*Rimini Street, Inc. v. Oracle USA, Inc.*,
    139 S. Ct. 873 (2019) ....................................................................25

*Scafa-Tornabene Art Publ'g Co., Inc. v. Pride Prods. Corp.*,
    No. 03-CIV-8273(DLC), 2007 WL 2469453 (S.D.N.Y. 2007) ...................................18

*Sleepy's LLC v. Select Comfort Wholesale Corp.*,
    909 F.3d 519 (2d Cir. 2018) ..............................................................19

*Steele v. Bell*,
    No. 11 Civ. 9343(RA), 2014 WL 1979227 (S.D.N.Y. Mar. 28, 2014) ...........................8

*Stern v. Lavender*,
    319 F. Supp. 3d 650 (S.D.N.Y. 2018) ......................................................15

*Sygall v. Pitsicalis*,
    No. 18-CV-02730 (VSB) (SN), 2022 WL 3044773 (S.D.N.Y. May 16, 2022) .....................17

*Troll Co. v. Uneeda Doll Co.*,
    483 F.3d 150 (2d Cir. 2007) ...............................................................8

*Twin Peaks Productions, Inc. v. Publications Int'l, Inc.*,
    996 F.2d 1366 (2d Cir. 1993) .............................................................23

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*,
    142 S. Ct. 941 (2022) ....................................................................10

*Viacom Intern. Inc. v. Fanzine Intern. Inc.*,
    No. 98-CIV-7448 (RCC), 2001 WL 930248 (S.D.N.Y. Aug. 16, 2001) ..........................18

*Yang v. Mic Network, Inc.*,
    No. 18-CV-7628 (AJN), 2020 WL 6562403 (S.D.N.Y. Nov. 9, 2020) ..........................20

iv

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

### STATUTES

15 U.S.C. § 1117(a) ...................................................................................................19

17 U.S.C.
  § 101 .................................................................................................................10
  § 411(a) ..........................................................................................................7, 10
  § 412(c)(1) .........................................................................................................11
  § 412(c)(1) .........................................................................................................11
  § 412(c)(2) .........................................................................................................11
  § 504(c)(2) .........................................................................................................13

28 U.S.C. § 1920 ......................................................................................................25

U.S. Copyright Act
  § 107 .................................................................................................................14
  § 411 ..............................................................................................................7, 10
  § 412 ...........................................................................................1, 7, 8, 18, 19
  § 504 ............................................................................................................11, 13
  § 505 ..............................................................................................................1, 19

### OTHER AUTHORITIES

Black's Law Dictionary (10th ed. 2014) .................................................................22

Fed. R. Civ. P.
  41.........................................................................................................................7
  60.......................................................................................................................10

U.S. Copyright Office, Compendium of Copyright Office Practices § 1107.2 (3d
  ed. 2021) ..............................................................................................................9

## PRELIMINARY STATEMENT

The crux of plaintiff Alexander Norris's ("Plaintiff") case concerns a narrow issue: the submission, to the U.S. Patent & Trademark Office ("USPTO"), of copies of certain images relating to Plaintiff's works falling within the general scope of an agreement between Plaintiff and defendant Golden Bell Entertainment, LLC (with defendants Marc Goldner and Golden Bell Studios, LLC, collectively, "Golden Bell"). This Court previously found that the submission of the images as part of multiple specimens for two trademark applications fell outside the scope of that agreement. For this minor technicality, Plaintiff seeks no less than three times the maximum amount of statutory damages, plus all of Plaintiff's attorney's fees and costs.

Plaintiff's expansive approach fails from the start and continues to miss the mark repeatedly. As a threshold matter, Plaintiff's works are not subject to statutory damages under Section 412 or attorney's fees under Section 505 of the Copyright Act, because even if the registration were valid (which it is not), Plaintiff admits that the infringing acts he[1] complained about commenced before the effective date of registration. Even so, there are many other problems with Plaintiff's motion. Plaintiff fails to recognize that statutory damages are awarded "per work," not "per infringement." Plaintiff has failed to justify the amount, too, ignoring not just how statutory damages are calculated in all cases, but that he has failed entirely to meet his burden to prove willfulness necessary for enhanced recovery. Indeed, Golden Bell ordinarily would have prevailed on a defense of fair use, had anyone raised it. Further, Golden Bell's intentions in filing the trademark applications were driven by good practice, an understanding of the parties' agreement, and other collaborative discussions the parties had. As Plaintiff cannot

---

[1] Despite operating under two different names, Plaintiff has never settled on the pronouns Plaintiff prefers to use. Accordingly, for the sake of convenience, Golden Bell uses "he/him/his."

dispute, the submissions unquestionably were designed to protect Plaintiff's own work from infringers. None of this can be reconciled with a finding of willfulness. And of course, neither law nor common sense supports Plaintiff's suggestion that partial success on a claim automatically leads to receipt of all of that party's fees.

Even if Plaintiff could recover attorney's fees, which he cannot as a matter of law or proof, Plaintiff also has failed to submit the required argument and documentation for justifying a fee award—much less one for ***100% of the fees*** in a case where as to most of his claims, Plaintiff either ***lost on the merits or dismissed them*** after summary judgment was denied. This demand just underscores the unmoored nature of this lawsuit and Plaintiff's blinkered approach to it. Plaintiff ran up fees for both sides and burdened this Court, not because of massive piracy or usurpation of a market, but because he purportedly was upset that, despite abandoning his challenges against Golden Bell generally, Plaintiff was outraged about a technicality. Specifically, everyone has spent resources and assets on a small matter, and now Plaintiff has the gall to assert that he is entitled to a windfall because there are three specimens at the USPTO containing publicly available material that he claims he did not approve being submitted to the USPTO—even though he was aware of them, did not contest them for over a year (until execution of his plan to try to undo the deal), and identified them and other material as permissible to use as part of the parties' agreement and subsequent discussions pertaining thereto. Disingenuously, he has not sought an injunction against the USPTO, and he has not made any effort to demonstrate financial damage either. To the contrary, he has profited handsomely from the publicity about this lawsuit, generating roughly $350,000 in donations from his "GoFundMe" page, which has been used to disparage Golden Bell and its owners. What is really going on is very clear, and it is not behavior that should be condoned in any way.

For numerous reasons, as detailed below, neither the policies of the Copyright Act nor the work counsel performed justifies a fee award. Plaintiff also does not even cite much less follow the proper standard on costs, which similarly are discretionary and unwarranted here. Instead, Plaintiff foists entire bills onto the Court and presumes that the Court is supposed to do the allocation and reduction work to weed out plainly inapplicable charges such as time on unviable claims, as well as cab fare, Westlaw charges, and other inappropriate expenses.

Moreover, far from warranting any judgment against Golden Bell Entertainment (or any other defendant who has not been proven to be liable), Plaintiff's motion confirms that he has suffered no actual damages. He not only has evidently elected statutory damages and placed this question with the Court, but his failure to allege much less prove any injury on summary judgment warrants a finding that Plaintiff should recover nothing in this action. This Court should enter judgment for Golden Bell and against Plaintiff accordingly.

## SUMMARY OF RELEVANT FACTUAL BACKGROUND AND STANDARDS

Without identifying the procedural rule under which he files the motion, Plaintiff simply asks the Court to decide that statutory damages and fees should be awarded "Pursuant to the Copyright Act of 1976" with a Notice of Motion based solely on considering the Memorandum of Law. To the extent there are fact questions to be resolved by the factfinder in conjunction with the motion for statutory damages, Plaintiff has waived his right to seek summary judgment by virtue of failing to provide the required Local Rule 56.1 statement or otherwise, and he has placed all questions before the Court notwithstanding both parties' Seventh Amendment right to have factual questions pertaining to statutory damages decided by a jury.[2] As Golden Bell believes that Plaintiff's motion for statutory damages fails as a matter of law under any standard,

---

[2] *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998).

it respectfully submits this opposition fully without waiver of its rights on fact questions that

may remain after review and be implicated on the statutory damages category of remedy that

Plaintiff apparently has elected under Section 504 of the Copyright Act.[3]

The facts, in brief, are as follows. In February 2017, defendant Golden Bell

Entertainment, LLC, then a young start-up company, entered into an agreement with Plaintiff's

collaborator and agent, Jason Wiseman, for multiple board games relating to Plaintiff's comics,

with a grant of ownership rights as well as an agreement relating to derivative works and future

uses. *See* Opinion & Order, ECF No. 150 ("Opinion") at 4; *see also* Declaration of Marc Goldner

("Goldner Decl.") ¶¶ 2-4 & Ex. A at 2(B).[4] In August 2017, Plaintiff and Golden Bell entered

into an agreement directly pertaining to the social media account for "Webcomic Name," games

and stuffed animals pertaining thereto, and a wide array of derivative works (encompassing, *inter*

*alia*, comic book rights, graphic rights, publication rights, merchandising rights, digital rights,

and multiple options, including on the next book-length work and other works), with 100% of

the copyright and 100% of the trademark belonging to Golden Bell Entertainment, LLC; this was

in exchange for an up-front fee and strong running royalty, not to mention the enhanced social

media presence that Plaintiff still exclusively enjoys. Opinion at 5-6; Goldner Decl. ¶¶ 5 & Ex. B

at 2(B) (the "Agreement"). Additionally, in October of 2018, Plaintiff gave Golden Bell an

option pertaining to the forthcoming book called "Animals," further expanding the granted

rights. *See* Goldner Decl. ¶ 5 & Ex. C. As part of the permissions, Plaintiff consented to Golden

---

[3] As explained below, the question of attorney's fees and costs always lies within the discretion of the Court.

[4] Rather than citing the Court's findings of fact, Plaintiff continues to seek to litigate the case by citing to its prior submissions. For the sake of this motion, and while Golden Bell disagrees with some of the findings in the Court's Opinion, Golden Bell relies on the Opinion for the sake of this Motion (reserving its right to challenge them elsewhere), except where relevant facts are not contained in the Opinion.

Bell pulling any images it wanted to from Plaintiff's comics, and Golden Bell reasonably understood that such permission was broad enough to include not just in its marketing and creation of products, but also in Golden Bell's submission to the USPTO. *Id*. ¶ 5. After all, as Plaintiff testified, he was an "agreeable person." *Id.* & Ex. D at 62:17-18.

In late November 2017, and early October and November 2018, Golden Bell Entertainment, LLC filed applications with the USPTO to register the marks WEBCOMIC NAME and the "Oh No" design in order to protect the associated products from unauthorized infringements. *See id.* at ¶¶ 7-8; *see also* Ex. B at 1(F). Golden Bell has been aware of infringements on online platforms, and the trademark applications would help with that enforcement. *See id*. Plaintiff was aware that Golden Bell Entertainment, LLC filed trademark applications as early as February 2018, and he continued sending images for use without any suggestion of any violation. *See id.* ¶ 9.

Subsequent to these USPTO filings that included the objected-to images, on December 4, 2018, Plaintiff applied to register at the U.S. Copyright Office a purportedly "unpublished" "collection" of five visual works (comic strips) called "Different," "Dog," "Imagination," "Impossible," and "Procrastination" under the title "Webcomic Name Collection Volume 1." *Id.* ¶ 10, Ex. F. He did so notwithstanding that some of the works were very much published, and in the United States, too. *See id.* ¶ 11 & Ex. G. The application was assigned Registration Number VAu 1-337-956. *Id.*, Ex. F. Plaintiff also attached as Exhibit 15 of his initial Complaint five images that are not included as part of the copyright registration and appear to never have been subject to any ruling or registration despite being raised in the proceedings. *See* ECF No. 1, Ex.

15 & ECF No. 167 ("McGuinness Decl.") Exs. 3, 5.[5]

In around early 2019, after stonewalling and otherwise failing to perform on the Agreement, *see* Goldner Decl. ¶ 12, Plaintiff decided that he could get out of the Agreement by going on a vicious attack against Golden Bell. *Id.* ¶¶ 13-15 & Exs. H-J. Plaintiff did not care about the consequences of his vengeful strategy: Plaintiff's decisions were simply someone else's fault, and those people should suffer for it. Plaintiff pursued Golden Bell not only at the USPTO and in the courts, but also in the "court of public opinion," using his aggressive litigation as a hook to ambush Golden Bell with slander, disparagement, and other falsehoods designed to help Plaintiff raise hundreds of thousands of dollars to use as a means to force Golden Bell to let Plaintiff out of the Agreement. *See id*. In a nutshell, rather than approaching the matter rationally, *see* Goldner Decl., ¶ 16, Plaintiff filed a federal case over Golden Bell's submission of screenshots of publicly available material, claiming it was copyright infringement, claiming that Plaintiff did not actually agree to grant trademark rights in WEBCOMIC NAME and the "Oh No" design to Golden Bell, and seeking to get out of the contract he signed via Plaintiff's scorched-earth tactics. *See* ECF Nos. 1, 39.

On August 24, 2023, the Court granted Plaintiff's motion for summary judgment as to copyright infringement in two of the trademark applications, and to cancel the third, but evidently without a finding of copyright infringement as to that application. *See generally* Opinion.[6] The Court granted Golden Bell's motion for summary judgment on Plaintiff's trademark infringement claim and otherwise denied Plaintiff's motion. *Id.* On October 30, 2023,

---

[5] The Complaint references a copyright Reg. No. VA 2-128-773. ECF No. 1 at ¶ 44. Plaintiff has never provided any proof that any registration exists, other than Reg. No. VAu 1-337-956.

[6] It is unclear why Plaintiff claims that there should be trebling of damages given the findings by the Court as to only two trademark applications and the existence of only one copyright registration.

Plaintiff dismissed Counts 4 and 5 of his Complaint without express consent from Golden Bell or

leave of court. ECF No. 159; Goldner Decl. ¶ 17; *see* Fed. R. Civ. P. 41.[7]

## ARGUMENT

**I.     SECTION 412 OF THE COPYRIGHT ACT ENTIRELY BARS PLAINTIFF'S
       ELIGIBILITY FOR STATUTORY DAMAGES AND ATTORNEY'S FEES**

### A.     Plaintiff's Registration Was Made Too Late, After the Commencement of Alleged Infringement

Plaintiff presumes that he is entitled to fees, but he is barred by the statute from doing so.

In relevant part, section 412 of the Copyright Act, 17 U.S.C. § 412, provides: "In any action

under this title[8] . . . no award of statutory damages or of attorney's fees, as provided by sections

504 or 505, shall be made for . . .(1) any infringement of copyright in an unpublished work

commenced before the effective date of registration; or (2) any infringement of copyright

commenced after first publication of the work and before the effective date of its registration. . .

---

[7] Paragraph 91 of the Amended Complaint, and points elsewhere including Exhibit 15 to the Complaint, referenced other types of copyright infringement. The McGuinness Declaration (Exs. 3, 5) identifies other depictions but does not suggest they are a problem other than what the declaration identifies. To the extent there is any question as to what Plaintiff does or does not claim, the Court should find that Plaintiff has abandoned any such further copyright claim mentioned in the Amended Complaint or elsewhere in the proceedings (including but not limited to the photographs of the "plushies," art associated with the game for Webcomic Name such as the game box cover, or comics in the catalog and banner that were used for marketing and promotional purposes, and all of which Plaintiff ***expressly authorized Golden Bell to create*** as part of the product creation and promotion, *see* Goldner Decl. ¶ 8), for failure to argue the issue or put forth any evidence in support of it, not to mention the dismissal of the remainder of the case to get to final judgment.

[8] The language of this provision is without regard to whether the work is a foreign work that does not need to be registered prior to suit, as provided in Section 411(a). Accordingly, the question of whether Plaintiff's works are foreign or U.S. works is irrelevant to Section 412. *See Elsevier B.V. v. UnitedHealth Group, Inc.*, No. 09 Civ. 2124(WHP), 2010 WL 150167, *2 (S.D.N.Y. Jan. 14, 2010) (distinguishing Section 411 from Section 412 in the context of foreign works and statutory damages and attorney's fees).

.".[9]  The alleged infringement—involving submitting screenshots of Plaintiff's publicly available social media and Patreon accounts—commenced on November 30, 2017, before the effective date of registration on December 4, 2018. *See* Pl. Br. at 5-6. Accordingly, regardless of what vague and uncited allusions to screenshots from the same online store that Plaintiff points to at that time or subsequently, Plaintiff cannot recover statutory damages or fees as a matter of well-settled law. *See Troll Co. v. Uneeda Doll Co.*, 483 F.3d 150, 158-59 (2d Cir. 2007) (where series of infringing acts commences before effective date of registration, no fees can be recovered, even where acts continue post-registration); *see also*, *e.g.*, *May v. Sony Music Ent'm't*, 399 F. Supp. 3d 169, 174 (S.D.N.Y. 2019); *Steele v. Bell*, No. 11 Civ. 9343(RA), 2014 WL 1979227, *8 (S.D.N.Y. Mar. 28, 2014) (describing "bright-line rule, barring the recovery of statutory damages for infringement occurring after registration if that infringement is part of an ongoing series of infringing acts and the first act occurred before registration.") (citing cases); *Inst. For Dev. of Earth Awareness v. People for Ethical Treatment of Animals*, No. 08 Civ. 6195(PKC), 2009 WL 2850230, at *3 (S.D.N.Y. Aug. 28, 2009) (same, where works were alleged to have been infringed in a different way post-registration); *Irwin v. ZDF Enterprises GmbH*, No. 04 Civ. 8027(RWS), 2006 WL 374960, at **2, 6 (S.D.N.Y. Feb. 16, 2006) (statutory damages relating to newly configured version of television program with different title issued post-registration remained barred by Section 412).

Plaintiff cites no authority supporting its oft-rejected theory that submitting additional materials in pre-existing applications circumvents the Section 412 bar; Plaintiff's papers do not suggest that they even acknowledge that this is a fatal problem, which it is. Plaintiff cites nothing

---

[9] The three-month grace period referenced in the Section does not apply here, because Plaintiff contends the works were unpublished, but even if they were published (and indeed some were), the gap of time is too large to implicate Section 412.

to suggest divergence from the Circuit's "bright-line rule" that the courts have repeatedly reaffirmed regardless of whatever characterization a later filer tries to apply. And as to Golden Bell's use of an image of the sticker sheet for "Animals," which appears to be cited at ¶ 6 of the McGuinness Declaration (and which was subject to an option exercised by Golden Bell on October 31, 2018, *see* Goldner Decl. ¶ 5 & Ex. C), it is not listed in Plaintiff's copyright registration (and neither are the other images included in Exhibit 15 of Plaintiff's Complaint or the exhibits to the McGuinness Declaration). Suffice it to say that Plaintiff cannot possibly claim statutory damages (or attorney's fees) given that the work was never registered at any time.

### B.    Plaintiff's Registration Is Not Valid in the First Place

In addition to the issue noted above, recently discovered evidence from the "Wayback Machine" suggests that Plaintiff's registration was never valid. This is critical in the context of the McGuinness Declaration, which identifies the two other works (other than "Animals") at Paragraphs 9 and 12. Plaintiff's December 4, 2018 registration claims that the works are all unpublished and part of the same collection. However, they are not, and they were not even published in the same year. *See* U.S. Copyright Office, Compendium of Copyright Office Practices § 1107.2 (3d ed. 2021) (a "collection" requires publication in the same year); Goldner Decl. ¶ 11 & Ex. G (showing "Imagination," "Impossible," and "Different" sold as prints as early as October 27, 2017, showing "Procrastination" sold as a print as early as July 22, 2018, on Plaintiff's webstore; sales of "Impossible" and "Imagination" as of December 3, 2017; and selling at least "Impossible" as prints at an April 2017 comic convention in Kansas City). Further, at least one of them was published—and importantly, first published in the United States, as well as on a U.S.-based website called GoComics that is owned by U.S. publisher Andrews McMeel. *See id.* These facts recently came to light as part of Golden Bell's own

9

diligence and were never disclosed to Golden Bell in discovery. *Id.*[10]

These errors could not be inadvertent or accidental, and the destruction of the evidence of the prior publication is a classic "smoking gun." Plaintiff, and the counsel assisting him (*cf. Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 142 S. Ct. 941, 948 (2022)), had a good reason to conceal these uses: it would destroy the ability to avail himself of the foreign-works exception to registration as required for standing to sue for copyright infringement. *See* 17 U.S.C. § 411(a); *Fourth Estate Public Benefit Corp. v. Wall-Street.com*, 139 S. Ct. 881 (2019). Under Section 411 of the U.S. Copyright Act, copyright registration is a "precondition to filing a claim" for copyright infringement for any "United States work." *Hartmann v. Google LLC*, No. 20 Civ. 5578(JPC), 2022 WL 684137, at *5 (S.D.N.Y. Mar. 8, 2022) (citing *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010)). But not only is the commingling of works an issue with respect to correctness, it also causes the registration to fail due to the presence of a work first published in the United States, or published simultaneously in the United States and another treaty party. 17 U.S.C. § 101. Accordingly, the registration is not just untimely, it is unviable and thus—because Plaintiff has no standing to sue for infringement—prevents the availability of statutory damages or attorney's fees for this separate reason as well.[11]

## II. EVEN IF, *ARGUENDO*, PLAINTIFF'S WORKS ARE ELIGIBLE FOR STATUTORY DAMAGES, HE HAS FAILED TO MEET HIS BURDEN OF SUPPORTING THE AMOUNT HE SEEKS

### A. Plaintiff Mischaracterizes the Applicable Legal Standards

Plaintiff's presumptive demands for windfall damages are, to put it mildly, meritless

---

[10] As noted above, any reliance on works that are *not* in the copyright registration, e.g., the "Animals" sticker sheet identified in the McGuinness Declaration, cannot support a statutory damage award.

[11] As the lack of standing would require dismissal of Plaintiff's copyright infringement claim on the merits, Golden Bell intends to request to reopen discovery pursuant to Fed. R. Civ. P. 60.

conjecture. Plaintiff demands "no less" than $450,000 in statutory damages, but such a number cannot be found within the facts of this case under applicable law—not even on Plaintiff's best day in court. In plain terms, section 504 of the Copyright Act states with respect to statutory damages that in lieu of actual damages and profits, statutory damages may be awarded with respect to "any one work," "in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 412(c)(1). Where a copyright owner "sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." *Id.* at § 412(c)(2). Notably, where the court finds that the infringer had no reason to believe that the acts constituted infringement (and, notably, the Agreement between the parties shows that Golden Bell had no such reason to believe it was engaging in infringement), the court in its discretion may lower the amount to not less than $200. *Id.*

Plaintiff's submission in general not only fails to give more than lip service to the range in the statute, but it reflects a palpable failure of candor to the Court regarding the basis for his sky-high demand: indeed, the statute could not be clearer about what Plaintiff must show, and what limits exist regardless of what he shows. For example, Plaintiff considers none of the above ranges or burdens, perfunctorily asserting that he is entitled to not just the maximum number, but three times as much. In doing so, Plaintiff says (at 17) that pursuant to the statute, he is entitled to $150,000 "per infringing act" despite the fact that the statute *does not say anything about an award "per act."* To the contrary, the statute says in plain English that damages are awarded "*per work*" and, "[f]or the purposes of this subsection, all the parts of a compilation or derivative work constitute *one work*." *Id.* at § 412(c)(1) (emphases added). Further, not only is $150,000 the absolute ceiling that Plaintiff could ever hope to reach given his registration as a compilation, but

he fully fails to meet his burden to demonstrate all of the prerequisites for *any* number, much less one at the very top of the range.

Remarkably, Plaintiff fails to apply *any* of the relevant required factors to the case. As the Second Circuit has held, in determining the amount of statutory damages, a court considers: "(1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties." *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010). To show non-innocent infringement, a *plaintiff must prove* that the defendant "had knowledge that its conduct represented infringement or . . . recklessly disregarded the possibility." *Bryant*, 603 F.3d at 143.

Proclaiming "actual knowledge" without support, as Plaintiff does here, does not automatically allow a plaintiff to check a box and claim a windfall. Indeed, "Second Circuit case law . . . reflects that courts in this Circuit commonly award, in cases of non-innocent infringement, statutory damages of between three and five times the cost of the licensing fees the defendant would have paid." *Mango v. BuzzFeed, Inc.*, 316 F. Supp. 3d 811, 814 (S.D.N.Y. 2018) (cleaned up; citing cases); *see also Design Pics Inc. v. PBH Networks, Inc.*, No. 20-CV-1096(MKB), 2021 WL 74088, at *3 (E.D.N.Y. Jan. 8, 2021) ("Where infringement is willful but not 'truly egregious,' courts . . . frequently award statutory damages of between three and five times the cost of the licensing fees the defendant would have paid."). Even assuming that the Agreement was a license rather than an assignment (which it was not), ***and*** even assuming that Plaintiff completed the work (which, despite initial claims, he did not), Plaintiff would have been entitled to $5625 under Section 1(G) of the Agreement, which is a far cry from the $450,000

Plaintiff demands from thin air. But he did not perform, and he cites nothing "egregious."

### B. Plaintiff Provides No Evidence to Support His Claimed Damages Amount

When viewed through the proper legal lens that applies in this District, it becomes readily apparent that Plaintiff has not met his burden on any of the relevant tests and parameters identified above. For instance, Plaintiff has not established any arms-length rate for submission of copies of works to the USPTO, much less that any licensing market even exists. *Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 670 F. Supp. 1133, 1140 (E.D.N.Y. 1987) ("Undoubtedly these [statutory] damages should bear some relation to the actual damages suffered"). This means that applying any multiple to zero will yield zero dollars, which at best for Plaintiff resolves to the minimum $200 or $750 under Section 504. Plaintiff's excuse that he cannot show damages because certain items have not been sold (Pl. Br. at n.5), falls wide of the mark, as the claim for infringement relates not to sales, but solely to the submission of images to the USPTO. Indeed, it is apparent that this suit was motivated not by injury but by a technicality, used as a predicate for a public attack in order to get out of an agreement that Plaintiff regretted signing.[12]

Further, Plaintiff also has not satisfied its burden of establishing Golden Bell's mental state as the prerequisite to receiving any sort of multiple either. *See* 17 U.S.C. § 504(c)(2)

---

[12] Plaintiff vaguely refers (at 17) to some speculative "injury" in the form of "hinder[ing] Plaintiff's livelihood by continuing to advance meritless claims as to [Plaintiff's] intellectual property, which will have the effect of hindering Plaintiff's livelihood." This circular argument says that Plaintiff is injured because Golden Bell defended itself by making reasonable arguments. This is not the standard. *See Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1118 (2d Cir. 1986) (measurement of damages based on market value); *Baker v. Urban Outfitters, Inc.*, 254 F. Supp. 2d 346, 356 (S.D.N.Y. 2003). Nor is his burden satisfied by claiming that his IP rights and creative career were "decimated" by the filing of three trademark applications at the USPTO. Mov. Br. at 10. Any damages amounts should be based on "factual basis" and not "undue speculation." *On Davis v. The Gap, Inc.*, 246 F.3d 152, 163 (2d Cir. 2001). To the contrary, despite pleading poverty to get the public to give him over $342,000 for his lawsuit against Golden Bell, Plaintiff boasts of having repeatedly sold out a wide variety of merchandise bearing his "Webcomic Name" IP. Goldner Decl. ¶ 13 & Ex. H.

(enhanced damages only where "the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully"). In none of Plaintiff's facially inapposite cited cases (at 18) did a party face a situation where a third party (much less a governmental entity) continued to host on its site a copy of works that were already available online; indeed, all of those cases involved findings of willful violations or even infringement in a violation of a court order. The effort to tie their arguments to the unrelated suit against the book publisher (which has nothing to do with Plaintiff's suit over submission of screenshots to the USPTO) is unexplained and well outside of the scope of this case—particularly where in the other case, *Plaintiff* is the one who is accused of infringement and other torts.

When stripping back the rhetoric and looking at the facts of this case, at least two reasons exist that demonstrate Golden Bell's good-faith belief that its actions were proper and not willful; indeed, it was either not a violation or was of an innocent nature. *First*, the submission of the works to the USPTO was a well-intended fair use. Golden Bell, like many parties that have rights to properties that will be made into merchandise, seeks to use trademark registrations to help prevent against infringement and counterfeiting. Goldner Decl. ¶ 7. Indeed, this is typically what both parties want. *See id*. And when an applicant for protection at the USPTO submits copies of copyrighted works—even without any express or implied authorization—such use is a fair use under section 107 of the Copyright Act, much as it would be if another party submitted the declaration at ECF No. 167 (showing three images).[13] *See, e.g.*, *Am. Inst. of Physics v. Winstead PC*, No. 3:12-CV-1230, 2013 WL 6242843, at *5 (N.D. Tex. Dec. 3, 2013)

---

[13] The Opinion concludes that the admission that copies of materials were submitted to the USPTO automatically means that there would be infringement without authorization. *See* Opinion at 17. However, as explained in this Part II.B., not all copying without express authorization is actionable generally: the Opinion overlooks fair use, for example.

("Defendants' copying of NPL does not 'supersede' the use of Plaintiffs' original works, but has the different purpose of providing a background context for patent examiners in their analysis of patent applications. . . . The USPTO encourages—and sometimes requires—firms to analyze and submit NPL in order to establish a background against which a final determination on a pending patent can be made.") (summary judgment motion granted on fair use grounds); *Am. Inst. of Physics v. Schwegman, Lundberg & Woessner, P.A.*, No. 12-528, 2013 WL 4666330, *19 (D. Minn. Aug. 30, 2013) (same, noting USPTO argument supporting fair use). As this Court noted in *Stern v. Lavender*, the use of copies of materials for a different purpose than the original and incident to another goal (here, for example, as required by the USPTO as part of a trademark application) is fair use. 319 F. Supp. 3d 650, 681 (S.D.N.Y. 2018) (Engelmayer, J.) (posting photographs of prints on internet marketplaces incident to sale of same prints qualified as fair use). Nobody claims that Golden Bell sold the images at the center of Plaintiff's copyright claim, because Golden Bell did not sell them. So it should have been here, had prior counsel argued the defense (or had Plaintiff's experienced IP counsel, ECF No. 174 at ¶ 8, identified the issue as counsel should have), including the fourth factor on market value and harm as relevant here.[14]

*Second*, putting words in double emphasis does not make them true, and Plaintiff cites nothing to support his rhetoric. As the Agreement itself states, Golden Bell was to receive all copyright and trademark rights associated with the works in the Agreement. Far from having "***actual knowledge***" of some sort of violation, the record shows that Golden Bell reasonably believed that it had the right to make these submissions because they included protection not only for the board games and toys—which Plaintiff has *conceded* Golden Bell had the right to

---

[14] Regrettably, Golden Bell's prior counsel also failed to raise other fundamental points, such as putting Plaintiff to his required proof on piercing the corporate veil to get to Mr. Goldner or demonstrating that Golden Bell Studios, LLC has anything to do with the case.

do, and which the Court found Golden Bell has the right to do (Opinion at 17)—but other products that may be derivative works of the games and toys. The exception was that Plaintiff retained rights to continue publishing the "Webcomic Name" comic (*i.e.*, the comic strips published online) itself (not to mention all of Plaintiff's other works such as "Hello World!," "Dorris McComics," and "How To Live,") while Plaintiff would receive an up-front payment and a strong royalty from Golden Bell's sales. Goldner Decl. ¶ 5. Tellingly, Plaintiff has not challenged certain other USPTO records pertaining to his IP covered by the Agreement.

Despite that the Court did not agree that the Agreement was as broad as Golden Bell believes, the scope that Golden Bell followed was consistent with (a) what Wiseman had raised initially by virtue of his agreement with Plaintiff *and* his contract with Golden Bell Entertainment, LLC, and (b) the language of the agreement, even if Plaintiff had "seller's remorse" about it. *Id.* & Ex. B (referring to 100% of the trademark rights). Further, the submitted specimens—prepared by non-lawyers and taken from publicly available websites—had been intended to show the characters generally. *Id.* ¶ 8. Indeed, as Plaintiff admits, none of the objections came until after the trademark applications were filed, making any lawyer demands wholly irrelevant to mental state. To the contrary, Plaintiff was aware for over a year prior to filing suit that Golden Bell was filing trademark applications and seemed to have no issue with Golden Bell's use of images for purpose of their Agreement. *See id.* ¶¶ 8-9.[15]

This relationship—regardless of how the merits ultimately turned out—makes all of Plaintiff's cited cases inapposite. For instance, in *Beastie Boys v. Monster Energy Co.*, 66 F.

---

[15] Plaintiff claims that the Court ruled that Golden Bell had an "entirely unfounded belief" (Br. at 14) that the Agreement permitted referential use of websites *as part of a trademark application*, but the Court's holding never makes this statement. Tellingly, Plaintiff cites nothing but the entire ruling—with no pin cite—for this representation.

Supp. 3d 424, 437 (S.D.N.Y. 2014), there was *no relationship at all* between the parties. Monster Energy (a sophisticated party) simply took someone else's music for commercial purposes. Here, Golden Bell *did* seek permission: there was an Agreement covering their relationship. Yet Plaintiff cites no example of a significant award where the parties had a prior relationship, much less a signed agreement.[16]

None of the other authorities cited applies here, and certainly none is on "all fours" with the facts, where the parties had an agreement that covered the general scope implicated in the case—here, trademark rights as well as a verbal agreement to permit use of the images submitted in support of protecting those rights. *See Bryant*, 603 F.3d at 143 (no willfulness where party relied on its understanding of scope of agreement); *MyWebGrocer, Inc. v. Adlife Mktg. & Communications Co., Inc.*, No. 5:16-cv-310, 2019 WL 13177905, *3 (D. Vt. Aug. 27, 2019) (similar); *see also Barcroft Media, Ltd. v. Coed Media Grp., LLC*, No. 16-CV-7634(JMF), 2018 WL 357298, *2 (S.D.N.Y. Jan. 10, 2018) (no enhanced damages where defendant relied on fair use theory). While Plaintiff ultimately objected due to "seller's remorse," even his complaints in his April 2019 demand letter—which simply sought to terminate the Agreement and did not mention the trademark applications in any event—were nothing like the *48* communications and *42* phone calls that the plaintiff submitted to a party engaging in unauthorized public performance of music in *Broad. Music Inc. v. Prana Hospitality, Inc.*, 158 F. Supp. 3d 184, 198

---

[16] In *Sygall v. Pitsicalis*, No. 18-CV-02730 (VSB) (SN), 2022 WL 3044773, *1 (S.D.N.Y. May 16, 2022), the defendants had some negotiations but never entered into any agreement and acknowledged as much in writing; in *Peer Intern. Corp. v. Luna Records, Inc.*, 887 F. Supp. 560, 562 (S.D.N.Y. 1995), the defendant engaged in new acts after having been told that the agreement was terminated, whereas here, Plaintiff's notice came after the use, and Plaintiff has abandoned its attempt to terminate the Agreement. Further, Golden Bell sent Plaintiff a demand letter, too. *See* Goldner Decl. ¶ 9.

(S.D.N.Y. 2016), a case that Plaintiff facetiously and incorrectly contends is analogous.[17]

Plaintiff does not even identify what Golden Bell could or should do with respect to materials

hosted by the USPTO website, which Golden Bell does not control. Rather, the way Plaintiff

handled the matter was to go on a campaign of disparagement and defamation that led him to

raise £293,711.56 (or $345,432.99 in today's dollars)—non-refundable money that came from

his falsely premised fundraising campaign, not from his own pocket—for his prosecution of his

claims for something as benign as the submission of a few images to the USPTO, which Golden

Bell understandably believed it could do.[18] This scenario is far from anything Plaintiff has cited

or could cite in support of a finding of willfulness, much less a finding of the maximum

damages, improperly trebled.

## III.   PLAINTIFF DOES NOT MEET THE THRESHOLD FOR RECOVERY OF FEES AND COSTS UNDER THE COPYRIGHT ACT

### A.   The Facts of This Case Do Not Merit an Award of Fees or Costs

Putting aside the Section 412 absolute bar on attorney's fee recovery entirely due to the

late and/or improper registration, *see* Part I, *supra*, Plaintiff is unable to recover attorney's fees

---

[17] Cases on default, such as *Scafa-Tornabene Art Publ'g Co., Inc. v. Pride Prods. Corp.*, No. 03-CIV-8273(DLC), 2007 WL 2469453 (S.D.N.Y. 2007), and *McCurry v. Accessory Network Group, LLC*, No. 15-CIV-9779(PGG), 2016 WL 11620045 (S.D.N.Y. Oct. 5, 2016), or where a party did not challenge the inference that its activity was willful, *see Viacom Intern. Inc. v. Fanzine Intern. Inc.*, No. 98-CIV-7448 (RCC), 2001 WL 930248, *3 (S.D.N.Y. Aug. 16, 2001), are not persuasive. *See* Pl. Br. 14 ,15.

[18] Plaintiff's online request for money (sought in violation of the then-applicable GoFundMe rules) says it is to help him get *all* of his intellectual property (IP) rights (of whatever comic, category or title) back. *See* Goldner Decl. ¶ 13, & Ex. H (claiming falsely that "the publishing company has used this as an opportunity to take *all* of my intellectual property, and has even claimed ownership of Webcomic Name.") (emphasis added). He has never sought *all* his IP back, nor could he have given that much of this IP is not part of the Agreement, nor has Golden Bell *ever* claimed ownership to *all* of Plaintiff's other IP outside of Webcomic Name. It is very telling that he has abandoned any efforts to undo the Agreement that exists. *See* ECF No. 159 (abandoning contract claims after losing efforts to win on such claims on summary judgment).

for several additional, independent reasons. Section 505 says that, "the court in its discretion may allow the recovery of full costs" and, except as otherwise provided by the Copyright Act (such as under Section 412 that applies here), "the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. Plaintiff's perfunctory request skirts past the burden of demonstrating that the Court, in its discretion, should award fees here (again, to the extent that Section 412 does not bar it, which the plain text shows it does).

As the language indicates, Plaintiff must be a "prevailing party." By all objective measures, he is not. He prevailed on a single claim for copyright infringement but identified no recovery that he received: Plaintiff did not receive injunctive relief nor will he recover damages—which he has not identified in any case. He lost on most of his Lanham Act claims which, notably, also allow for fee-shifting under standards similar to those that apply under the Copyright Act and suggest that Golden Bell should receive some part of its fees. *See* 15 U.S.C. § 1117(a); *Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519, 530 (2d Cir. 2018). Plaintiff even dismissed one of his claims with prejudice and another without prejudice, albeit without affirmative permission. Plaintiff evidently did not seek injunctive relief relating to the one claim on which Plaintiff prevailed, and he proved no damages. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (to qualify as a "prevailing party," the plaintiff must succeed on a significant issue in the litigation that achieves some benefit in instigating the lawsuit).

However, even if his win on liability on one claim is enough to open the door to fees (again, assuming that the registration issues described above somehow are not a bar), the Court should exercise its discretion to award them. *See Fogerty v. Fantasy Inc.*, 510 U.S. 517, 533-34 (1994) (fee awards are not "automatic" or granted "as a matter of course," but rather are committed to the discretion of the court."). As a threshold matter, again, notably absent is any

reference to, much less discussion of, the well-established test that applies to guide the Court's discretion, including the recent governing case *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197 (2016), or to the foundational case, *Fogerty v. Fantasy*, *supra*. This militates in favor of dismissal of the request for fees and costs in full for failure to properly brief the issue.

Moreover, once the proper legal standards are identified and applied, it becomes clear that fees are not warranted. While Plaintiff says (at 19) that filing or defending against a civil action is a financially punishable offense, this is not the law—or at least not the law of the United States. In determining whether fees should be awarded, district courts should be guided by several principles and criteria. *See Kirtsaeng*, 579 U.S. at 202. These include several non-exclusive factors, such as frivolousness, motivation, objective unreasonableness, and the need in particular circumstances to advance considerations of compensation and deterrence. *Id.* Objective reasonableness is an important but not controlling factor. *Id.* at 208. Further, "[l]ack of success on the merits, without more, does not establish that the non-prevailing party's position was objectively unreasonable." *Yang v. Mic Network, Inc.*, No. 18-CV-7628 (AJN), 2020 WL 6562403, *3 (S.D.N.Y. Nov. 9, 2020). Rather, "the legal support for plaintiff's position" must be "so lacking as to render its claim . . . objectively unreasonable." *See Creazoni Artistiche Musicali, S.r.l. v. Carlin Am., Inc.*, No. 14-CV-9270 (RJS), 2017 WL 3393850, at *2 (S.D.N.Y. Aug. 4, 2017). As argued in the motion and as noted above, there are ample reasons supporting Golden Bell's positions, and Golden Bell—having acquired certain broad Webcomic Name IP rights and committed to pay Plaintiff a flat fee (upon delivery of the "final files" for the game) and royalty payments, under which deal Golden Bell reasonably believed gave it the ability to file trademark applications and otherwise pursue trademark protection for the acquired asset— was properly motivated to defend against Plaintiff's current demand for money in the high six

figures over the mere submission of three images (of 12 submitted) in batches in two trademark applications, where Plaintiff does not even dispute that nine of the images did not infringe.

Particularly given the issues identified with registration and fair use, Golden Bell should have won the claim as falling within fair use, if the actions were not within the scope of the agreement. The Copyright Act should not encourage plaintiffs to interfere with trademark protection by bringing scorched-earth lawsuits over clear fair uses. Nor is there any need for deterrence: not only should Golden Bell have prevailed, but it was dragged through a lawsuit for several years over something as relatively minor as Plaintiff's indignation that, in order to help protect *Plaintiff's* creative brand, some images were submitted by a legitimate owner of the rights. The reputational harm, financial (including attorney's fees) and emotional turmoil of the parties affiliated with Golden Bell, and the abandonment of three of the trademark applications (which Plaintiff never had a basis to challenge), is more than enough draconian punishment for the mere act of submitting screenshots approved images and public pages to the USPTO.[19]

Plaintiff's arguments about prevailing and purported "willfulness" read strikingly similarly to those that Judge Furman rejected in *Barcroft Media*, 2018 WL 357298 at **2-3 (denying motion for fees and costs), and those that Judge Woods rejected in *Otto v. Hearst Commc'ns, Inc.*, No. 17-CV-4712-GHW, 2020 WL 377479, **2-4 (S.D.N.Y. Jan. 23, 2020). Specifically, Plaintiff suggests that he should get fees because he prevailed, and he also makes vague allusions to deterrence when these boilerplate arguments do not hold water. *See*, *e.g.*, *id.* at 2 (a "lack of success on the merits, without more, does not establish that the non-prevailing

---

[19] There are no identified reasons why a party (such as Golden Bell) that has acquired certain copyright or trademark rights cannot submit specimens to the USPTO. Accordingly, there is nothing inherently wrong with what was done by Golden Bell Entertainment, LLC or by anyone on its behalf.

party's position was objectively unreasonable.") (cleaned up); *id.* at *3 (rejecting presumptive entitlement). Such arguments should be rejected here, too, on the same grounds.

Earlier in the briefing, Plaintiff also makes much of an interlocutory appeal (*see* Pl. Br. at 10), presumably to show some sort of impropriety. Plaintiff is wrong. Not only is that appeal not this proceeding, but it fails to recognize that what Plaintiff complains about ("this Court's Decision and Order **did not** fully resolve all claims" (double emphasis in original)) is *exactly* what an interlocutory appeal is: an appeal from an order that does not constitute a final judgment on the merits. *See* Black's Law Dictionary (10th ed. 2014) (defining "interlocutory" as "interim or temporary; not constituting a final resolution of the whole controversy").[20] As noted, Plaintiff also is upset that Golden Bell has sued Plaintiff's publisher—contrary to what Plaintiff says, *before* the Court's report and recommendation. But that again is irrelevant and remains at the early stages—notably in a context where Plaintiff dismissed the contract claims here.

### B.   Plaintiff Has Failed to Properly Justify and Substantiate the Fee and Cost Request

The fee applicant "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Cruz v. Loc. Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994). Not only must the fees be "reasonable" as provided by the statute, but in this Circuit, a party seeking an award of attorneys' fees must support that request with contemporaneous time records that clearly document for each attorney the nature of the work done, the hours expended, and the date. *Cablevision Sys. New York City Corp. v. Diaz*, No. 01 CIV. 4340(GEL), 2002 WL 31045855, *5 (S.D.N.Y. July 10, 2002). When counsel has supported the request with time and expense records, the court must

---

[20] The sideshow about "settlement materials" (at 9) is irrelevant given the admission that it resolved itself, but Plaintiff fails to tie it to the legal standards anyway.

also determine the reasonableness of the hourly rate and the number of hours billed in this case. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183-84 (2d Cir. 2008); *Hennessy v. 194 Bedford Ave Rest Corp.*, No. 21 CV 5434(FB), 2022 WL 4134502, *6 (E.D.N.Y. Aug. 8, 2022). Further, as the Second Circuit has repeatedly stated, Plaintiff cannot seek fees pertaining to claims on which he lost or as to which fee-shifting is not available (e.g., his contract claims). *See, e.g.*, *Knitwaves, Inc. v. Lollytogs LTD. (Inc.)*, 71 F.3d 996, 1012 (2d Cir. 1995) (fees not available for time spent on non-prevailing claims); *Twin Peaks Productions, Inc. v. Publications Int'l, Inc.*, 996 F.2d 1366, 1383 (2d Cir. 1993) (apportionment of fees required where plaintiff prevailed on copyright but not trademark claims).

$273,509.49 is certainly an outsized amount for achieving a ruling that three internet images or screenshots submitted to the USPTO, which Plaintiff authorized Golden Bell to use as part of their business relationship, should not have been so submitted. Indeed, and quite troublingly given the clear instructions by the Circuit, Plaintiff makes *no effort at all* to allocate hours relating to the copyright claims he prevailed on (which were not all that were initially raised): he simply asks for everything, *including fees pertaining to claims he dismissed or where Golden Bell prevailed*. This is plainly improper. Certainly, it is not the Court's job to review all of the bills and identify which entries might relate to the claims where Plaintiff prevailed.

A cursory review of the submitted bills shows that the bills not only commingle work relating to a variety of claims, most of which Plaintiff either lost or abandoned after losing an attempt to win on those claims summary judgment, but they also include time relating to other cases and T.T.A.B. proceedings as well as a settlement agreement that does not reflect a "prevailing" position. They also demonstrate extensive amounts of block-billing and churning, as well as get-up-to-speed time, not to mention redactions of descriptions but not their

corresponding fee amounts. Just picking a few pages of invoices at random reveals a rash of problems. *See*, *e.g.*, ECF No. 174, Ex. A at 17, 22, 23 (extensive time on settlement drafts and participation by multiple lawyers, block-billed hours for evidently minor edits), 27 (4.5 hours for "[c]ontinue my review of the proposed settlement agreement and my comments to client"), 29 (5.3 block-billed hours relating to settlement agreement drafting), 31 (similar); 41 (7.8 hours for "[r]evise opposition to motion for summary judgment"); Ex. B at 9 (approximately 25 block-billed hours for "Draft/Revise Memorandum of Law"), 19 (5.6 block-billed hours for unspecified work; work relating to TTAB procedure and appeal; calls regarding "background and strategy"), 20 (references to "McMeel" case). The extremely cursory affidavit submitted (ECF No. 174) does not justify the rate charged or the number of hours billed on this case; not only does Plaintiff's lead counsel fail to justify her rate with comparable rates, but the submission also includes at least half a dozen additional timekeepers with unidentified experience (and in some cases, without identified names) at rates up to $790 per hour. *See e.g.*, *id.* Ex. A (generally), Ex. B at 13, 21. *See Hennessy*, *supra*. The memorandum of law (at 21), which is insufficient in any event, cites one case (again, on default judgment) and mentions an hourly rate of $485 for a lawyer and $100 for a paralegal without any other context, much less any effort to tie those rates to the lawyers and work performed here.

The affidavit does not even represent that Plaintiff actually paid the bills at these rates, which is the most impactful type of evidence on the multi-variable test that courts in this Circuit are to consider. *See Crescent Publ'g Grp., Inc. v. Playboy Enterprises, Inc.*, 246 F.3d 142, 151 (2d Cir. 2001); *Arbor Hill*, 522 F.3d at 184, 186 n.3 (citation omitted). Indeed, the money spent was not even Plaintiff's own money: it was raised from a "GoFundMe" campaign that enriched Plaintiff by far more than the fees he claims. *See* Goldner Decl., Ex. J (noting that "the amount

raised so far will cover my legal fee debts and a bit more!").

Finally, not only should costs not be granted, but Plaintiff's calculation of those costs is wrong. While Plaintiff does not clearly separate out the costs and falsely calls them "attorneys' fees" (ECF No. 174 at ¶ 6), those that appear on the bills fall out of line with the law. Here, Plaintiff yet again ignores a leading Supreme Court case on the core issue on this topic: the determination of costs under the Copyright Act. *Rimini Street, Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873 (2019). *Rimini Street* makes clear that only the costs specified in the general costs statute (*i.e.*, 28 U.S.C. § 1920) are recoverable. *See id.*; *see also Farberware Licensing Co. LLC v. Meyer Mktg. Co.*, No. 09 CIV. 2570 (HB), 2009 WL 5173787, *5 (S.D.N.Y. Dec. 30, 2009) (rejecting extraneous deposition charges). Accordingly, Plaintiff's request for items such as cab fare, court reporter fees without specification of scope, fees payable to maintain trademarks at the USPTO, "Pacer Services" and Westlaw charges (*see, e.g.,* ECF No. 174, Ex. A at 37 ($4,615.03 in miscellaneous charges), 43 (fees payable to USPTO, duplication expenses, etc.); Ex. B at 3 (cab fare), 21 ($2,4811.11 in Westlaw research)) is improper.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion should be denied in its entirety. Indeed, Golden Bell respectfully submits that the Court should award sanctions against Plaintiff's counsel for filing a motion that ignores governing law, and which could never succeed had Plaintiff's counsel candidly considered the law rather than seeking to take advantage of Golden Bell's issues with its departing counsel. Further, as Plaintiff has elected statutory damages and thereby waived any claim to actual damages, in addition to failing to provide evidence as to such damages on summary judgment, the Court should dismiss Plaintiff's monetary claims in full.

Respectfully submitted,

Dated: New York, New York
        February 16, 2024

MITCHELL SILBERBERG & KNUPP LLP

By:   /s/ Eleanor M. Lackman
        Eleanor M. Lackman (eml@msk.com)
        437 Madison Avenue, 25th Floor
        New York, New York 10022
        Tel.: (212) 509-3900
        Fax: (212) 509-7239
        eml@msk.com

*Attorneys for Defendants*