**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Alexander Norris,<br><br>               Plaintiff,<br><br>  - against –<br><br>Marc Goldner, Individually and as Officer of Golden Bell Entertainment, LLC, a California Company and Golden Bell Studios, LLC, Golden Bell Entertainment, LLC, a California Company and Golden Bell Studios, LLC,<br><br>               Defendants. | Civil Action No.: 1:19-cv-05491-PAE-SN |

**Plaintiff Alexander Norris' Supplemental Memorandum Of Law In Further Support Of Their Motion For Statutory Damages And Attorneys' Fees Pursuant To The Copyright Act**

SAUL EWING LLP
Francelina M. Perdomo Klukosky
Christie R. McGuinness
1270 Avenue of the Americas, Suite 2800
New York, New York 10020
T: (212) 980-7200
Francelina.Perdomoklukosky@saul.com
Christie.McGuinness@saul.com

*Attorneys for Plaintiff*
*Alexander Norris*

Dated: August 9, 2024.

## TABLE OF CONTENTS

**PAGE(S)**

I.     PRELIMINARY STATEMENT: ............................................................................... 1

II.    STATEMENT OF RELEVANT FACTS: ............................................................. 3

    A.     Defendants Misappropriated and Copied Plaintiff's Works In Multiple
        Trademark Submissions: ............................................................................. 3

    B.     Pertinent Portions Of This Court's Opinion & Order: ............................... 6

III.   ARGUMENT: ......................................................................................................... 7

    A.     The Opinion & Order Clearly Held That All Specimens Of Use Submitted
        To The USPTO In The Second and Third Applications Are Subject To
        The Copyright Infringement Decision: ..................................................... 7

    B.     Defendants Infringed Upon Multiple Of Plaintiff's Works and Plaintiff
        Only Seeks Statutory Damages For Defendants' Infringement That
        Occurred Post Registration: ....................................................................... 8

IV.    CONCLUSION: .................................................................................................... 11

**TABLE OF AUTHORITIES**

**PAGE(S)**

**FEDERAL CASES**

*Craig v. UMG Recordings, Inc.*,
   380 F.Supp.3d 324 (S.D.N.Y. 2019)..................................................................................3, 8, 9

*Getty Images (U.S.), Inc. v. Microsoft Corp.*,
   61 F.Supp.3d 301 (S.D.N.Y. 2014) ...........................................................................................9

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
   127 F. Supp. 3d 156 (S.D.N.Y. 2015)........................................................................................8

**FEDERAL STATUTES**

Fed. R. Evid. 201(b)(2)(d) ...........................................................................................................8

I.    **PRELIMINARY STATEMENT**:

This Court's Opinion & Order[1] is clear: Defendants committed willful copyright infringement when they submitted multiple, distinct portions of Plaintiff's intellectual property to the USPTO as specimens of use in support of the Second and Third Trademark Applications.[2] *See* Doc. No. 150 at 16 – 17. Specifically, the Court in the Opinion & Order held: "***It is undisputed that, in both the Second Application (for the trademark "Webcomic Name") and the Third Application (for the trademark "Oh No"), Goldner copied Norris's work***." Doc. No. 150 at 16 – 17. Applying the Opinion & Order's clear holding, it follows that ***every*** specimen of use that Goldner copied and submitted in furtherance of the Second and Third Trademark Applications falls within the Opinion & Order's finding of copyright infringement. Further, this Court can take judicial notice of the filings before the USPTO in furtherance of the Second and Third Trademark Applications, including the specific works copied and the submission dates. As explained during oral argument before this Court, the timeline of Defendants' willful infringing actions is dispositive of this Motion.

Undeterred by Defendants attempts to complicate the facts, the record in this case supports Plaintiff's statutory damages claim. On December 4, 2018, Plaintiff effectively registered five comics: "Different", "Dog", "Imagination," "Impossible", and "Procrastination" and received Copyright Registration, No. VAu1-337-956. (the "Registered Comics"). *See* Doc. No. 119.3 *See also*, Doc. No. 150 at 8. On November 18, 2019, ***eleven months*** after the effective date of the Copyright Registration, Defendant Goldner submitted, ***for the first time***, Plaintiff's comic strips, "***Impossible", "Procrastination*" *"Imagination*", *"Different"*** as specimens of Defendants' alleged use in commerce of the trademark "Oh No" in response to the USPTO's Final Office

---

[1] Defined terms have the same meaning as contained in Plaintiff's prior briefs on statutory damages.
[2] For the Court's ease, the terms "Second and Third Applications" are defined in the Decision and Order at 6 – 8.

Action dated July 23, 2020 (the "Final Office Action")..[3] Goldner's submission of the Registered

Comics in response to the Final Office Action the USPTO issued in connection to the Third

Application is the precisely this infringement act forming the basis of Plaintiff's entitlement to

statutory damages in this case.

Now, attempting to avoid the inevitable, Defendants raise two last Hail Mary arguments.

*First*, Defendants attempt to persuade this Court that Plaintiff's Foreign Works and the

Registered Comics are one and the same. Specifically, Defendants would have this Court believe

that Plaintiff's comics "New Life" and "Invasive" are the same as the five comic strips subject to

the Copyright Registration: "Different", "Dog", "Imagination," "Impossible", and

"Procrastination." Importantly, as the Opinion & Order recognized, Plaintiff is a multifaceted

visual artist with a wide variety of intellectual property ranging from comic strips to stickers. *See*

Doc. No. 150 at 6 – 8. Indeed, the Registered Comics are an ***entirely different*** works of Plaintiff's

intellectual property than the Foreign Works,[4] which are comprised of multiple independent

images of Plaintiff's Facebook Page, Plaintiff's Patreon Page, and Plaintiff's Facebook Shop page,

which Defendants willfully copied and uploaded to the USPTO on November 30, 2017 and

October 9, 2018 – prior to the effective date of the Copyright Registration protecting the Registered

Comics. *See* Doc. No. 150 at 6 – 7.

*Second*, Defendants argue that because all of Plaintiff's intellectual property works are the

same, which they are not, Defendants' multiple acts of willful infringement stem from the same

act and the same copyright. This argument is wrong because it would permit a party to infringe

upon one work and subsequently infringe upon an entirely different work of the same owner

---

[3] All referenced exhibits are annexed to the Declaration of Christie R. McGuinness, Esq. submitted with this Motion.
[4] The Foreign Works refer to the portion of Plaintiff's intellectual property that Defendants first submitted to the USPTO. Doc. No. 146 at 9, n.10.

disregarding the type of work, its registration status, the infringer's intent, knowledge and culpable conduct. What's more, the premise of Defendants' argument is not supported by the law. Indeed, even the cases Defendants cite recognize that for their principle of law to apply, an infringer must infringe upon the same work, *i.e.*, the same album cover art (as was the case in *Craig v. UMG Recordings, Inc.* on which Defendants rely).

For these reasons and for the reasons detailed in Plaintiff's prior briefing, Plaintiff is entitled to statutory damages.

II.    **<u>STATEMENT OF RELEVANT FACTS</u>**:[5]

      A.     Defendants Misappropriated and Copied Plaintiff's Works In <u>Multiple Trademark Submissions</u>:

Following execution of the Collaboration Agreement, Defendants submitted the ***four*** (4) Trademark Applications to the USPTO, without Plaintiff's knowledge or consent, seeking trademark protection for "Webcomic Name" and "Oh No" in various international classes by copying Plaintiff's copyrighted work as specimens of Defendants' alleged use in commerce. *See* Doc. Nos. 119.7, 119.9, 119.10. *See also*, Doc. No. 150 at 6 – 8. *See also*, Exs. 1, 4, 13 and 25. In ***two*** (2) of the four Trademark Applications, Defendants submitted Plaintiff's copyrighted work ***after*** Plaintiff received their copyright registration from the U.S. Copyright Office. *See* Doc. No. 120.3 at ¶¶s 50-73. *See also*, Exs. 20 at 8 and 32 at 8.

      1.     <u>The '934 Application or "First Application"</u>:

On November 30, 2017, Goldner filed Application Serial No. 87703934 (the "'934 Application" or "First Application") with the USPTO for registration of the trademark "Webcomic Name" in International Class No. 028. *See* Doc. No. 119.7. *See* Doc. No. 120.3 at ¶¶s 50-73. *See*

---

[5] Plaintiff assumes the Court's familiarity with the facts and issues raised in this Action, and only addresses those facts pertinent to addressing the Court's July 26th, 2024 Order. *See* Doc. No. 194.

*also*, Doc. No. 150 at 6 – 8. *See also*, Ex. 1. Among the specimens filed in support of the '934 Application was a photograph taken of a Golden Bell Entertainment booth at the Keystone Comic-con convention, two (2) prototypes of the plush-toy and banners depicting the Blob. *See* Doc. No. 119.7. *See also*, Doc. No. 120.3 at ¶¶s 50-73. *See also*, Doc. No. 150 at 6 – 8. *See also*, Ex. 2. Ultimately, the USPTO issued a registration for "Webcomic Name" in Class No. 028 on December 11, 2018, Registration No. 5629281 in favor of Golden Bell Entertainment (the "281 Mark"). *See* Doc. No. 119.8. *See also*, Doc. No. 150 at 6 – 7. *See also*, Ex. 3. The Registered Comics were not submitted as specimens of use in relation with the '934 Application.

2.      The '369 Application or "Second Application":

On October 9, 2018, Goldner filed Application Serial No. 88147369 (the "'369 Application" or "Second Application") with the USPTO for registration of the trademark "Webcomic Name" in International Classes 016 (for: comic books, comic strips, comic strips' comic features, comics, and newspaper comic strips) and 025 (for t-shirts). *See* Doc. No. 119.9. *See also*, Doc. No. 120.2 at 158:3 – 171:25. *See also*, Doc. No. 120.3 at ¶¶s 50-73. *See also*, Doc. No. 150 at 6 – 8. *See also*, Ex. 4. In support of the '369 Application, Goldner submitted screenshots of Plaintiff's Facebook page, Patreon account and Plaintiff's Facebook shop as purported specimens of Defendants' use of the trademark, Webcomic Name in commerce. *See* Doc. No. 119.9. *See also*, Doc. No. 120.3 at ¶¶s 50-73. *See also*, Doc. No. 150 at 6 – 8. *See also*, Ex. 5. The Registered Comics were not submitted as specimens of use in relation with the '369 Application.

3.      The '795 Application or "Third Application":

On November 8, 2018, Defendant Goldner submitted Trademark Application No. 88185795 (the "'795 Application" or "Third Application") to register the trademark "Oh No" with the USPTO on an ***in-use basis*** in International Classes 16 (for: comic books, comic strips, comic strips' comic features, comics, and newspaper comic strips) and 28 (for: bookmarkers, bookmarks,

comic books, comic magazines, comic strips, comic strips' comic features, comics, stickers, newspaper comic strips, t-shirts, graphic t-shirts, short-sleeved or long-sleeved t-shirts, plush toys, stuffed toy animals, stuffed and plush toys, toy stuffed animals). *See* Doc. No. 119.10. *See also*, Doc. No. 120.2 at 158:3 – 171:25. *See also*, Doc. No. 120.3 at ¶¶s 50-73. *See also*, Doc. No. 150 at 6 – 8. *See also*, Ex. 13. In support of the '795 Application, on November 8, 2018, Goldner initially filed screenshots of Plaintiff's Facebook page (which shows Plaintiffs' comics: "New Life" and "Invasive") and Plaintiff's website, www.theohnoshop.com as purported specimens of Defendants' use of the trademark "Oh No" in commerce. *See* Doc. No. 119.10. *See also*, Doc. No. 120.2 at 158:3 – 171:25. *See also*, Doc. No. 120.3 at ¶¶s 50-73. *See also*, Doc. No. 150 at 6 – 8. *See also*, Ex. 14. On March 23, 2019, Defendants filed a request to split the '795 Application into two applications – the '795 Application would be for the International Class No. 16 on **an intent to use basis**, and the new '215 Application would be for International Classes Nos. 25 and 28 on an **in-use basis**. *See* Exs. 16 and 17. In response to the USPTO's Final Office Action[6], on November 18, 2019, Defendants submitted additional specimens of use to the USPTO. *See* Exs. 19 and 20. Those specimens of use included, **for the first time**, the Registered Comics - "Different," "Contract," "Imagination," "Impossible," and "Procrastination." *See* Doc. No. 119.3. *See also*, Doc. No. 120.2 at 158:3 – 171:25. *See also*, Doc. 150 at 8. *See also*, Ex. 20. Importantly, Defendants did not submit the Registered Comics to the USPTO until November 18, 2019 – **eleven months** after the Copyright Registration and **five months** after Plaintiff commenced this Action. *Compare* Exs. 14 at 3 - 4 and 20 at 8. *See also*, Doc. No. 120.2 at 158:3 – 171:25.

4.    The '215 Application or Fourth Application:

On April 25, 2019, in response to Defendants' request to divide the '795 Application, the

_____

[6] On April 25, 2019, the USPTO directed Defendants to submit additional specimens of use. *See* Ex. 17.

USPTO created Application Serial No. 88975215 (the "'215 Application" or "Fourth Application") with the USPTO for registration of the trademark "Oh No" in International Classes No. 25 (for: t-shirts, graphic t-shirts, short-sleeved or long-sleeved t-shirts) and 28 (for: plush toys, stuffed toy animals, stuffed and plush toys, toy stuffed animals). *Compare* Doc. No. 119.10. and Ex. 29. *See also*, Doc. No. 120.2 at 158:3 – 171:25. *See also*, Doc. No. 120.3 at ¶¶s 50-73. *See also*, Doc. No. 150 at 6 – 8. *See also*, Ex. 25. Initially, in support of the '215 Application (which, at the time, was the same as the '795 Application), Defendants filed screenshots of Plaintiff's Facebook page (which shows Plaintiffs' comic strips: "New Life" and "Invasive") and website as purported specimens of use of the trademark "Oh No" in commerce. *See* Doc. No. 119.10. *See also*, Doc. No. 120.2 at 158:3 – 171:25. *See also*, Doc. No. 120.3 at ¶¶s 50-73. *See also*, Doc. No. 150 at 6 – 8. *See also*, Ex. 26. On November 18, 2019, in response to a Final Office Action from the USPTO in connection to the '215 Application, Defendants submitted additional specimens of use, which (again) included ***for the first time*** the Registered Comics – "Different," "Contract," "Imagination," "Impossible," and "Procrastination." *See* Doc. No. 119.3. *See also*, Doc. No. 120.2 at 158:3 – 171:25. *See also*, Doc. No. 120.3 at ¶¶s 50-73. *See also*, Doc. 150 at 8. *See also*, Ex. 32. Again, Defendants did not submit the Registered Comics to the USPTO until November 18, 2019 – ***eleven months*** after the Copyright Registration. *Compare* Exs. 26 and 20. *See also*, Doc. No. 120.3 at ¶¶s 50-73.

    B.    <u>Pertinent Portions Of This Court's Opinion & Order:</u>

This Court held:

> ***It is undisputed that, in both the Second Application (to trademark "Webcomic Name" for comic strips) and the Third Application (to trademark "Oh No"), Goldner copied Norris's work***. *See* Pl. 56.1 ¶¶ 48, 52; Def. Counter 56.1 ¶¶ 48, 52; *see also*, Goldner Dep. Tr. at 123, 125. The Second Application included, as "specimens … showing the mark as used in commerce," screenshots of: (1) Webcomic Name's Facebook page with two sketches of Blob and a stylized logo: (2) Norris's Patreon account with a partially obscured three-panel comic of Blob;

and (3) the home page for Webcomic Name's Facebook shop, which featured a t-shirt with Blob's likeness (the "oh no t-shirt"). *See* Second Application at 6 – 9. And the Third Application included screenshots of: (1) the product page for the "oh no t-shirt" on Webcomic Name's Facebook shop; (2) Webcomic Name's Facebook page; (3) two three-panel Blob comics ("Invasive and "New Life") on Norris's website; and (4)n the banner image of Blob on Norris's website. *See* Third Application at 8 – 12. ***All agree, too, that this use of Norris's artwork without authorization would infringe Norris's copyright***. *See e.g*., Report at 10 – 11. Def. Br. at 8 (asserting that "the alleged 'copying' of material actually involves materials lawfully licensed'").

*See* Doc. No. 150 at 16 – 17. *See also*, Doc. No. 120.2 at 158:3 – 171:25.[7]

III.    **ARGUMENT**:

A.    The Opinion & Order Clearly Held That All Specimens Of Use Submitted To The USPTO In The Second and Third Applications Are Subject To The Copyright Infringement Decision:

As detailed above, this Court's Opinion & Order clearly held that the mere act of submitting specimens of use to the USPTO in furtherance of the Second and Third Applications constituted copyright infringement. *See* Doc. No. 150 at 16 – 17. Therefore, it must follow that all specimens of use submitted to the USPTO in the Second and Third Applications are subject to the Opinion & Order. As this Court's Opinion & Order recognized, because Defendants did not have rights to any of the works Defendants submitted to the USPTO, all specimens of use submitted to the USPTO in connection with the Second and Third Application must fall within the Opinion & Order's copyright infringement decision. *See* Doc. No. 150 at 16 – 17. What's more, through detailing Defendants' submissions to the USPTO, the Opinion & Order also implicitly held that the Registered Comics ***were not*** part of Defendants' initial submissions to the USPTO. *See* Doc. No. 150 at 16 – 17. Fundamentally, to the extent there is any ambiguity in the dates of Defendants' submissions to the USPTO or what precise works were submitted to the USPTO, the Opinion &

---

[7] For the avoidance of doubt, during his deposition testimony, Goldner admitted to copying from the www.ohnoshop.com and submitting the screenshots to the USPTO. Plaintiff submitted the complete deposition transcript in support of the summary judgment briefing. *See e.g*., Doc. No. 120.2 at 164:17 – 165:3.

Order recognized that this Court can take judicial notice of filings with the USPTO. Footnote four (4) of the Opinion & Order held: "[b]ut a court may take judicial notice of any fact "that is not subject to reasonable dispute because … it can be accurately and readily determined from the sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2), (d). Government records are such sources. *See e.g.*, *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015)." Once this Court takes the Opinion & Order's core holding, that the mere act of submitting specimens of use to the USPTO in furtherance of the Second and Third Applications constituted copyright infringement, and take judicial notice of the fact that the Registered Comics were not infringed upon until November 18, 2019 (*eleven months* after the Copyright Registration), Plaintiff has established their entitlement to statutory damages for Defendants' willful infringement upon the Registered Comics.

B.    Defendants Infringed Upon Multiple Of Plaintiff's Works and Plaintiff Only Seeks Statutory Damages For Defendants' Infringement That Occurred Post Registration:

As argued during oral argument and consistent with this Court's prior findings, Plaintiff is entitled to statutory damages because Defendants infringed upon the Registered Comics *after* the effective date of the Registration. *Compare* Exs. 14 and 20. It is established that "[w]hen the same defendant infringes *on the same protected work* in the same manner as it did prior to the work's registration, the post-registration infringement constitutes the continuation of a series of ongoing infringements." *Craig v. UMG Recordings, Inc.*, 380 F.Supp.3d 324, 336 (S.D.N.Y. 2019) (emphasis added). Here, as discussed at oral argument, Defendants misapply this foundational rule, and its ultimate premise because Defendants infringed on different works of Plaintiff's intellectual property: the Foreign Works *and* the Registered Comics. *Compare* Exs. 14 and 20. Because Defendants' infringement of the Registered Comics occurred nearly a year *after* the effective date of the Copyright Registration, Plaintiff is entitled to statutory damages resulting from Defendants'

infringement of the Registered Comics. *Compare* Exs. 14 at 3 – 4 and 20 at 8.

At oral argument and in the Opposition, Defendants seemed to suggest that because the comics "New Life" and "Invasive" were submitted as part of the initial submissions with the '795 and '215 Applications, Plaintiff is not entitled to statutory damages because Defendants' infringing actions occurred before the effective date of the Copyright Registration. Opposition at 7. Defendants' argument fails for two fundamental reasons.

One, the premise of Defendants' argument is factually inaccurate. The comics "New Life" and "Invasive" are separate, independent works that are not part of the Copyright Registration in the Registered Comics. *Compare* Doc. No. 119.3 and Exs. 14 and 20. Moreover, the Copyright Registration is comprised by five independently conceived comics strips: "Different," "Contract," "Imagination," "Impossible," and "Procrastination." *See* Doc. No. 119.3.

Second, Defendants' prior infringement upon the Foreign Works does not excuse Defendants' subsequent, separate act of infringement upon the Registered Comics. Although statutory damages were unavailable in *Craig*, the Court's reasoning is illustrative in understanding why Defendants are misapplying the above-mentioned foundational rule. In *Craig*, the Court commented: "[t]he record clearly demonstrates that the 2015 Album is part of the ongoing infringement that commenced with the release of the 2012 Album. The 2015 Album has the *same* front cover and back cover as the 2012 Album, uses the *same* four photographs that appeared in the 2012 Album … ." *Craig*, 380 F.Supp.3d at 336. *Compare Getty Images (U.S.), Inc. v. Microsoft Corp.*, 61 F.Supp.3d 301, 304 (S.D.N.Y. 2014) (recognizing that statutory damages were available for fifty out of the sixty-two works at issue because the infringement upon the fifty works occurred after registration and the works were all separate, independent works). Consistent with *Getty Images (U.S.), Inc.*, there are ***multiple*** works comprising Plaintiff's intellectual property that

Defendants infringed upon, and Plaintiff is entitled to statutory damages for Defendants' infringement of the Registered Comics because Defendants did not infringe on Plaintiff's Registered Comics before November 18, 2019.[8] *See* Exs. 14 and 20. Defendants glance over this important distinction and provide a sweeping misapplication of the above-articulated principle of law.[9] Taking Defendants' position to the extreme, it would mean that Defendants would be able to infringe upon all the Harry Potter federally registered copyrighted books after infringing upon, for example, "Harry Potter and the Sorcerer's Stone" simply because, in this hypothetical, "Harry Potter and the Sorcerer's Stone" was not federally registered in the U.S.[10] Such an outcome is nonsensical because each Harry Potter book would be deemed a completely different work. As a result, Defendants' subsequent (hypothetical) infringement upon the "Chambers of Secret" (assuming is a U.S. federally registered work) would be deemed to relate back to the first infringement of the Sorcerer's Stone and not result in the imposition of statutory damages. The hypothetical exercise shows that Defendants' interpretation of the law departs from basic principles of justice and fairness to copyright owners.

Because Defendants committed multiple, distinct instances of copyright infringement, of both the Foreign Works and Registered Comics, Plaintiff is entitled to statutory damages for Defendants' infringement upon the Registered Comics because that infringement occurred after the effective date of the Copyright Registration.

---

[8] As mentioned in Plaintiff's Reply Memorandum, the cases the Opposition relies upon are inapposite because the infringer, in those cases, infringed upon the ***exact same*** piece of intellectual property prior to and after the copyright registration. Therefore, Plaintiff will not address them in this Motion because the Opposition misapplies the foundational holdings from those cases.

[9] This sweeping application of the law is not all to dissimilar from Defendants' sweeping application of the Collaboration Agreement.

[10] In this analogy, we assume that all facts in the hypothesis are accurate.

-11-

IV.    **<u>CONCLUSION</u>**:

For the reasons detailed in the Motion and above, Plaintiff is entitled to their attorneys'

fees, and authorized costs along with whatever other relief the Court deems just and proper.

## CERTIFICATION OF COMPLIANCE

Pursuant to Local Civil Rule 11.1, I, Christie R. McGuinness, hereby certify that this Memorandum of Law complies with the formatting rules, and the total number of words in this Memorandum of Law, excluding the caption, certification of compliance, table of contents, and table of authorities, is 3,362.

This the 9th day of August, 2024.

*/s/ Christie R. McGuinness*
Christie R. McGuinness

## CERTIFICATE OF SERVICE

I, Christie R. McGuinness, hereby certify that on August 9th, 2024, the foregoing document was filed electronically with the Clerk of the Court using the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Christie R. McGuinness*
Christie R. McGuinness