UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALEXANDER NORRIS d/b/a WEBCOMIC NAME,<br><br>        Plaintiff,<br><br>    -against-<br><br>MARC GOLDNER, GOLDEN BELL ENTERTAINMENT, LLC, and GOLDEN BELL STUDIOS, LLC,<br><br>        Defendants. | Case No. 19-cv-5491 (PAE) (SN) |

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW IN RESPONSE TO PLAINTIFF'S SUPPLEMENTAL MEMORANDUM**
<u>**ON STATUTORY DAMAGES AND ATTORNEY'S FEES**</u>

                       MITCHELL SILBERBERG & KNUPP LLP

                       Eleanor M. Lackman (eml@msk.com)
                       437 Madison Ave., 25th Floor
                       New York, New York 10022-7001
                       Telephone: (212) 509-3900
                       Facsimile: (212) 509-7239

                       *Attorneys for Defendants*

## **INTRODUCTION**

By its order (ECF No. 194), this Court asked a simple question: what works are the subject of Judge Engelmayer's August 24, 2023 ruling (hereinafter, the "Opinion")? The Opinion itself identifies them. Plaintiff tries to bootstrap other works into the Opinion, but the simple fact is that the registered work (the comic strip "collection") (the "Work") was not part of the relief plaintiff Alexander Norris ("Plaintiff") sought or within the images the Court identified. Consequently, as a matter of law, no fees or statutory damages are attributable to the work done or the result achieved. To the extent Judge Engelmayer or this Court overlooked evidence of any such submissions, Plaintiff failed to move for reconsideration before seeking statutory damages. Key is that Plaintiff cites nothing in the Opinion that refers to the post-registration submissions, and the Opinion is very specific as to what it includes.

Plaintiff's overlength efforts to disregard the Court's instructions, including using the opportunity to include redundant and surreply argument, are misplaced. At times, such efforts misrepresent the record, unjustly so, given that the registered works indisputably were used before the registration date. If Plaintiff wishes to obtain a remedy that is premised on statutory requirements, Plaintiff cannot simply file for a small handful of works, improperly and belatedly, and then attack Defendants for their well-founded argument that the Court should follow the contours of substantive and procedural law. Indeed, contrary to Plaintiff's rhetoric, there is nothing offensive that arises from Defendants' recitation of binding law. As Plaintiff must recognize, if the Court proceeds ***in accordance with the law*** based on ***the factual record in this case***, the Court will find that no registered works are subject to Judge Engelmayer's order, and even if they somehow could have been (which they were not), Plaintiff has failed to satisfy the elements necessary to establish the remedies Plaintiff demands.

**ARGUMENT**

    **I.    Only Unregistered Works Are the Subject of the District Court's Ruling**

    The answer to the Court's question is simple. The works at issue in the Opinion (ECF No. 150) are identified at pp. 16-17 thereof. That portion of the Opinion not only lists the specific uses at issue and the specific pages of the two applications (*see id.*), but the Opinion also identifies such works as Exhibits 9 and 10 to the Norris Declaration, which exhibits **do not contain** the 2019 submissions that Plaintiff contends trigger statutory damages and attorney's fees. The use in this scope admittedly all occurred before December 4, 2018, before registration. Plaintiff uses terms like "it must follow" and "implicitly" but refuses to admit the truth: the Work was not part of the prior Opinion.

    Plaintiff's refusal to answer the Court's question with truth and candor is particularly notable given that Plaintiff previously conceded in Plaintiff's reply brief that the registered works "are an entirely different work" than the unregistered works submitted to the USPTO. *See* ECF No. 186 at 1. Meanwhile, Plaintiff's supplemental declaration notes that the specimens submitted in 2019 as part of the '215 application were not part of the Opinion at all. *See id.* (referring to '281 application not mentioned in Opinion); *see also* ECF No. 196 at ¶¶ 6-7, 16 (noting absence of submission of the Work as part of applications). The declaration mentions the Fourth Application, *id.* at ¶ 35, and a component of the Third Application, *id.*, at ¶ 26, but the Fourth Application makes no appearance in the ruling or in the argument. The Third Application as described in the Opinion does not include any of the Work; the only comic panels included therein are "Invasive" and "New Life," neither of which are registered. The Opinion states clearly that the decisive issue is whether Defendant "GB Entertainment was authorized to use ***these*** images in its trademark applications." Opinion at 17 (emphasis added). Not some other images, but the images Judge Engelmayer lists. *See id.* The record is what it is, and it leaves no

room for doubt.

Per this Court's recent order, Plaintiff was required to identify where in the Opinion the Court ruled on these images. Plaintiff did not because Plaintiff cannot: there is no such ruling. Therefore, because there was no ruling that post-registration infringement took place (much less post-registration infringement unrelated to the pre-registration infringement), statutory damages and attorney's fees are unavailable in this posture.[1]

Plaintiff's smokescreens are unavailing, and Plaintiff cannot now revise the scope of Plaintiff's prior motions, particularly where the damages and fees motion pertains to a request for relief for which Plaintiff is ineligible as a matter of law under Section 412 of the Copyright Act. Plaintiff fails to identify where in the summary judgment submissions the argument as to the 2019 submissions was made, such that Plaintiff might plausibly argue that Plaintiff advocated for liability pertaining thereto. Instead, Plaintiff tellingly—and without citing any proper standards therefor—advocates for the Court to take "judicial notice" of works not previously submitted, as well as the mental state pertaining thereto. *See* ECF No. 195 at 8; *see also* ECF No. 185 at 15-16, 17-18 (discussing various authorizations). Moreover, Plaintiff now indicates that a work called "Contract" was in the registration (ECF No. 195 at 5, 6, 9), yet that title does not appear anywhere within the collection named "Different," "Dog," "Imagination," "Impossible," and "Procrastination."[2] Simply put, the Court asked a straightforward question, and Plaintiff's submission only creates more unnecessary confusion. If this effort was designed to conceal Plaintiff's failure to meet Plaintiff's burden on summary judgment as the predicate for the

---

[1] As noted previously, while the Berne Convention gives standing to unregistered works first published outside of the United States, statutory damages and attorney's fees are not available as to any work without registration prior to the date of commencement of the adjudged infringement.

[2] See Declaration of Marc Goldner ("Goldner Decl."), Ex. C. There is no evidence that the comic, by whatever title, was ever used by Defendants anyway. *See id.* at ¶ 11.

expansive statutory damages and fees request that Plaintiff made months ago, it fails.[3]

Indeed, not only did the purported infringement of the Work not appear in the Opinion, Plaintiff never even made such alleged infringement of the registered work part of the summary judgment motion. The McGuinness Declaration cites no briefing at all. It refers to materials submitted on summary judgment as part of their voluminous 22-exhibit submission (*see* ECF No. 196 at ¶¶ 4, 5, 8, 17, 18, 25, 26 & 34), but these exhibits consist of: (1) the copyright registration and deposits; (2) citations to a few paragraphs in a 150-plus paragraph "Supplemental Complaint," most of which paragraphs relate to the pre-registration submissions, and only around four of which pertain to the post-registration activity; and (3) a 218-page deposition transcript, from which Plaintiff refers to a portion discussing unidentified materials relating to Plaintiff selling a book and advice from counsel. Even the most thorough reviewer would not discern from this material that Plaintiff sought a ruling regarding the 2019 submission.

The record is clear that it was only ***after*** the ruling on summary judgment, when Plaintiff made his election of statutory (in lieu of actual) damages and attorney's fees, that the November 18, 2019 submissions became so important to Plaintiff. Why Plaintiff failed to advocate on this topic at the right time is a mystery, but there is no doubt that, as a matter of procedure, Plaintiff's request comes far too late. Plaintiff is simply not entitled to seek remedies as to activity that has never been adjudged, and Plaintiff waived the issue as a matter of law and procedure alike.

II. **Plaintiff's Reargument Does Not Salvage Plaintiff's Failures of Proof**

In their supplemental submission, Plaintiff offers a series of myriad and unrequested arguments in an effort to salvage Plaintiff's insufficiently supported damages and fees request.

---

[3] While Plaintiff's counsel's entire copyright experience seems to consist of lawsuits against the Defendants here, there is no excuse at this point for an experienced litigator to ignore Section 412, or the significant binding case law on elections of statutory damages and requests for attorney's fees.

To the extent the Court might consider such arguments notwithstanding the Court's Order, Defendants will briefly address them, as none of them is availing.

First, Plaintiff's reargument claims repeatedly (at 1, 2, 8) that Judge Engelmayer found that the works (and, by implication, works submitted a long time later) were submitted willfully. Not so. Not only was such a finding impossible because of Plaintiff's failure to obtain relief for the 2019 uses, but Plaintiff tellingly omits *any* citation to the record for Plaintiff's argument. That is because there was no such finding. Indeed, the word "willful"—as required for enhanced statutory damages—, does not appear *anywhere* in the Order. Moreover, Plaintiff's evident concession that Defendants were "lawful owners" of at least the right to sell stuffed animals, ECF No. 150 at 28, not to mention the Opinion's observation that the parties' contract—which remains live today following Plaintiff's abandonment of the breach claim—authorized Golden Bell to make at least the game and plush (Opinion at 17), further corroborate that Defendants did not act in bad faith in seeking to protect the Webcomic Name intellectual property. Pleas to judicial notice do not plug this hole in Plaintiff's deficient submission, and Plaintiff's arguments now underscore that Plaintiff waived the chance to argue mental state as a prerequisite for enhanced damages under 17 U.S.C. § 504(c).[4]

Next, to the extent that the Court elects to reopen the case despite its finality on the scope of liability as reflected in part by the dismissals filed by the Plaintiff (*see* ECF No. 159), Defendants should be permitted to address liability and mental state pertaining to these acts, and any other issues relating thereto, as the Seventh Amendment requires. Because the Work and the

---

[4] Even if that were so, which it is not, Plaintiff fails to identify mental state imputed to the party held liable, *i.e.*, Golden Bell Entertainment, LLC, the party that filed the trademark applications. As is clear from the Opinion, there was no liability finding as to Mr. Goldner individually at all, much less as to his mental state. General allegations of mental state are insufficient to show that the corporate entity acted willfully. To the extent statutory damages are not available, the issue is irrelevant given that mental state does not impact the actual damages analysis. *See* 17 U.S.C. § 504(b).

2019 uses were not part of the motion, Defendants had no opportunity (much less an obligation) to address them. Of course, the record previews how any such analysis would resolve. The deposition testimony Plaintiff cites here shows, for example, that the November 2019 submissions were made at a time when Defendants had and relied on counsel. And, as detailed previously, all of the USPTO submissions were made in good faith. ECF No. 185 at 13-16 (noting, *inter alia*, perceived obligation to **protect Plaintiff's works** from infringement via strong trademark protection). Plaintiff's frustration relating to Defendants' entitlement to defend themselves as to infringement claims is a problem of Plaintiff's own making: Plaintiff had an opportunity to raise foundational facts relating to the sole form of relief Plaintiff now seeks, and they cannot expect Defendants should be held liable due to Plaintiff's unnoticed bootstrapping of matters that Plaintiff waived.

That said, Defendants respectfully submit that the additional exercise of delving into another round of briefing is unnecessary and would cause undue prejudice to Defendants. Defendants have already spent enormous time and effort litigating what Plaintiff represented was Plaintiff's one and only statutory damages and fees motion. Plaintiff (at 8-9) offers a surreply on the issue of "commencement," but Plaintiff ultimately concedes that the principle in Plaintiff's cited case, made at a different procedural phase than here and involving just one work, is *dicta*. ECF No. 195 at 9 (citing *Craig v. UMG Recordings, Inc.*, 380 F. Supp. 3d 324, 336 (S.D.N.Y. 2019) and noting that statutory damages were unavailable in the case).[5] Plaintiff's unpermitted surreply proffers an illogical policy argument based on an inapposite hypothetical, but tellingly

---

[5] *Getty Images (U.S.), Inc. v. Microsoft Corp.*, 61 F. Supp. 3d 301, 304 (S.D.N.Y. 2014), not only does not make the conclusions that Plaintiff claims it does, but it is factually distinguishable. There, the works used were standalone images from a stock photo agency, which images were entirely unrelated to each other and all used in a single act, at which time some were registered and others were not. Here, the images were from a collection from the same creator, used over time, with registration of some of them occurring in the interim.

fails to address Defendants' cited controlling and persuasive law that is on all fours with the scenario here. *See* ECF No. 185 at 8 (citing cases involving, *inter alia*, acts in a "series" as well as various portions and variations of works and underscoring "continuing infringement doctrine"); *id.* at 9 (noting efforts to commingle registered and unregistered works as part of general scope of alleged acts).[6]

If anything, Plaintiff's kitchen-sink approach to its submission, made with the benefit of hindsight, confirms that the submission of a portion of the registered Work was part of the ***same series of acts*** relating to Defendants' desired protection of the works from infringers via protection at the Trademark Office. *See* ECF No. 185 at 14. Plaintiff does not explain why the Court should simply lump together all works for purposes of finding that the Work was part of the Opinion, but yet at the same time, Plaintiff should receive a strict view of the bright-line rules on commencement of infringement. Indeed, while the works and acts taken relating thereto were not examined in the Opinion, Plaintiff fails to dispute that the 2019 submissions related to ***supplements*** to the ***same applications' filings*** that were made pre-registration. *See* Goldner Decl., ¶¶ 7-10. This is a prime illustration of a series of actions "commencing" pre-registration.[7]

Furthermore, the record shows that the use of the registered Work ***itself*** commenced before December 4, 2018. As shown in Exhibits A and B to the accompanying Goldner

---

[6] Contrary to Plaintiff's suggestion, this issue pertaining to the nature of pre-registration infringement relating to different but similar works was not "discussed at oral argument." ECF No. 195 at 8. Plaintiff mentioned the *Craig* case in response to Defendant's citations regarding apportionment.

[7] This is not the first instance of overreach from Plaintiff. For example, Plaintiff sought $450,000; on reply, Plaintiff backtracked to $150,000, which also is not appropriate where the plaintiff admits no actual injury and concedes it cannot prove actual damages. *See* ECF No. 185 at 13 & n.17; ECF No. 166 at 18 n.5. Despite the plain text of Section 412 of the Copyright Act, Plaintiff now suggests (at 8-10) that ***all*** used works are subject to statutory damages, but this is frivolous. *See, e.g.,* ECF No. 185 at 7-9, 10-12. If Plaintiff wanted statutory damages and fees in an action, Plaintiff was obligated to register all such works ***before*** the use, not put in an erroneous registration for a mere five random comic strips after Plaintiff launched its now-abandoned effort to get out of Plaintiff's contract.

Declaration,[8] significant portions of the registered work appeared on a variety of advertising and marketing materials for products such as stuffed animals, a game, and a calendar. Goldner Decl. at ¶¶ 3-5 & Exs. A, B. These materials were distributed to wholesale buyers and individual consumers at trade shows and comic conventions, as Plaintiff was aware given his approvals. *See id.* at ¶ 6. A portion of the Work even appeared in the pre-registration submission to the USPTO that forms the sole basis of the statutory damages and fees motion; the 2019 submission provided a clearer picture of the submitted material. *Id.* at ¶¶ 8-10.[9] Therefore, Plaintiff's reasserted arguments (at 8-10) in their supplemental brief fail fully.

There is yet another reason not to consider Plaintiff's belated arguments, and that is the second issue the Court raised prior to the hearing that led to this supplemental briefing. In particular, despite trying to reargue the motion, Plaintiff does not challenge the observation that the prevailing party is obligated to: (1) take into account the appropriate weights and measures of statutory damages for registered and unregistered works, and (2) to apportion work done toward seeking a ruling on registered copyrighted works versus unregistered (or not timely registered) copyrighted works, as well as other claims under different theories, some of which Plaintiff lost on and others of which were dismissed. *See* ECF No. 185 at 22-23 (citing, *e.g., Knitwaves, Inc. v. Lollytogs, LTD (Inc.)*, 71 F.3d 996, 1012 (2d Cir. 1995)); *see also* 17 U.S.C. § 412 (no statutory

---

[8] Had Plaintiff made the arguments Plaintiff now makes regarding the 2019 submissions and registered Work, these materials would have been cited in response. Defendants are not expected to be required to speculate and then to document on summary judgment their additional activities, as to which Plaintiff never expressed any issue until after the motion was closed.

[9] Defendants continue to take issue with the veracity and accuracy of several aspects of the registration, and therefore standing and damages availability, given admitted prior publication in the United States of four of five works (one with improper titling), including as part of Plaintiff's own sworn submissions to the USPTO. *See* ECF No. 185 at 4-6, 9; ECF No. 119-3 at 1, 4; U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 1106 (3d ed. 2021) and Circular 24, available at https://www.copyright.gov/circs/circ24.pdf; *see also* Declaration of Eleanor M. Lackman, at ¶¶ 2-4 & Exs. A at 2, 8-10 & B at 2.

damages or attorney's fees may be recovered for infringements of works prior to their date of registration). This is not to mention that Plaintiff seems to be claiming that only three of 12 images were infringing, and where Plaintiff notes that scarcely any of the images submitted included the registered works. *See generally* ECF No. 196 (describing submissions).

Particularly given the minute percentage of registered versus unregistered works, Plaintiff was tasked heavily to explain why it was entitled to the maximum when hardly anything was registered when willfulness under 17 U.S.C. § 504(c)(2) was not even proven, and how any of Plaintiff's fees were attributable to the registered works when the bulk of the case involved breach of contract. Yet, Plaintiff did not do so. *See Ritchie v. Gano*, 754 F. Supp. 2d 605 (S.D.N.Y. 2010) (fees must be apportioned); *Scanlon v. Kessler*, 23 F.Supp.2d 413, 417 (S.D.N.Y. 1998) (same); *Odegard v. Costikyan Classic Carpets, Inc.*, 1997 WL 391214, *3 (S.D.N.Y. July 11, 1997) (apportionment of statutory damages for registered and unregistered works); *see also Manufacturers Technologies, Inc. v. Cams, Inc.*, 728 F. Supp. 75 (D. Conn. 1989) (copyright versus trademark infringement (not cancellation) claims); *Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1383 (2d Cir. 1993) (if the court awards attorney's fees under the Copyright Act but not the Lanham Act, "an appropriate apportionment of fees will be required"). Certainly, Plaintiff is also not a prevailing party on claims that Plaintiff dismissed, yet Plaintiff has requested remedies as to these, too, improperly. *Beer v. John Hancock Life Ins. Co.*, 211 F.R.D. 67, 70 (N.D.N.Y. 2002) (fees may be awarded to party on other side of dismissal with prejudice); *see also Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999) (Courts should exclude "hours dedicated to severable unsuccessful claims."); *see also Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 47, 50 (S.D.N.Y. 2015) (Engelmayer, J.) (detailing movant's obligations and burdens). *See also* ECF 185 at 22-25.

In sum, Plaintiff's submission has fallen far short of the baseline requirements that a claimant must make in a context like this one. Despite the Court's generous opportunity to give Plaintiff another chance to explain their case, Plaintiff's submissions only confirm that they either cannot support their monetary demand, or will not follow basic requirements that the law mandates. The motion must be denied accordingly.[10]

## CONCLUSION

Plaintiff was obligated to prove their eligibility for statutory damages and attorney's fees, as well as an appropriate allocation pertaining thereto. Plaintiff's perfunctory approach, involving belated factual and legal arguments that skirt past the core question here regarding liability findings, is misplaced. While this lawsuit became a profitable business venture for Plaintiff, netting them over $400,000 in "Go Fund Me" donations, the notable omissions in the supplemental briefing confirm that Plaintiff has waived their ability to seek further riches from the concededly harmless act of submitting images to satisfy the USPTO examiner's requests.

The simple fact is that the Opinion does not adjudicate post-registration liability or anything pertaining thereto. For this Court to award statutory damages or fees at any level, Plaintiff must follow the burdens of proof and argument to overcome the high threshold that comes into play when the task involves seeking statutory damages for use of a belatedly registered work. Defendants respectfully submit that as Plaintiff has never done so, and has waived the chance both on summary judgment and in their damages and fees motion, Plaintiff's motion must be denied in full.

---

[10] Additional issues exist regarding Plaintiff's statutory damages and fees arguments, which Defendants will not reassert here per the Court's instructions. *See* ECF No. 185. Further, given the failure by Plaintiffs to cite to the summary judgment motion on liability as the Court's order (ECF No. 194) requires, arguments on other aspects are rendered academic at this stage.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: New York, New York<br>September 6, 2024 | MITCHELL SILBERBERG & KNUPP LLP<br><br>By: <u>/s/ Eleanor M. Lackman</u><br>Eleanor M. Lackman (eml@msk.com)<br>437 Madison Avenue, 25th Floor<br>New York, New York 10022<br>Tel.: (212) 509-3900<br>Fax: (212) 509-7239<br>eml@msk.com<br><br>*Attorneys for Defendants* |